1  Diana Cline Ebron, Esq.
   Nevada Bar No. 10580
2  E-mail: diana@KGELegal.com
   Jacqueline A. Gilbert, Esq.
3  Nevada Bar No. 10593
   E-mail: jackie@KGELegal.com
4  Karen L. Hanks, Esq.
   Nevada Bar No. 9578
5  E-mail: karen@KGELegal.com
   Kim Gilbert Ebron
6  7625 Dean Martin Drive, Suite 110
   Las Vegas, Nevada 89139
7  Telephone: (702) 485-3300
   Facsimile: (702) 485-3301
8  *Attorneys for SFR Investments Pool 1, LLC*

9              **UNITED STATES DISTRICT COURT**

10                    **DISTRICT OF NEVADA**

11

12  CARRINGTON MORTGAGE SERVICES,        Case No. 2:15-cv-01377-JCM-NJK
    LLC,
13
                        Plaintiff,
14                                        **SFR INVESTMENTS POOL 1, LLC'S**
    v.                                    **MOTION FOR SUMMARY JUDGMENT**
15  SFR INVESTMENTS POOL 1, LLC; OAK
    PARK HOMEOWNERS ASSOCIATION;
16  NEVADA ASSOCIATION SERVICES,
    INC.,
17
                        Defendants.
18  _____

19  SFR INVESTMENTS POOL 1, LLC, a
    Nevada limited liability company,
20
                   Counter-Claimant,
21
    v.
22
    CARRINGTON MORTGAGE SERVICES,
23  LLC, a Delaware limited liability company;
    BANK OF AMERICA, N.A., a national
24  association; and SAMUEL RAYMOND
    JUERGENS, an individual,
25
               Counter-Defendant/Cross-Defendants.
26  _____
27

28

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

- 1 -

1       SFR Investments Pool 1, LLC ("SFR") hereby moves for summary judgment against

2  CARRINGTON MORTGAGE SERVICES, LLC ("Carrington" or the "Bank"); BANK OF

3  AMERICA, N.A ("BANA") and SAMUEL RAYMOND JUERGENS ("Juergens") pursuant to

4  FRCP 56(c).  This Motion is based on the papers and pleadings on file herein, the following points

5  and authorities, the Declaration of Jacqueline A. Gilbert, Esq. ("Gilbert Decl."), attached as

6  **Exhibit 1**, the Declaration of Christopher Hardin ("Hardin Decl."), attached as **Exhibit 2**, and such

7  evidence and oral argument as may be presented at the time of the hearing on this matter.

8  <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

9  I.     <u>INTRODUCTION</u>

10       This case arises from Oak Park Homeowners Association's (the "Association") foreclosure

11  of real property commonly referred to as 909 Veranda View Avenue, Las Vegas, Nevada 89123;

12  Parcel No. 177-15-714-072 (the "Property"). Specifically, on December 28, 2012, the Association

13  held a public auction of the Property based on unpaid monthly assessments.  Despite receiving the

14  notice of default and two notices of sale, the then-holder of the First Deed of Trust and Carrington's

15  purported[1] predecessors in interest, Taylor, Bean & Whitaker Mortgage Corp. ("TBW") and BAC

16  Home Loans Servicing, LP fka Countrywide Home Loans Servicing LP ('BAC")[2], failed to

17  properly protect their interest in the Property.  At the foreclosure sale, SFR made the highest bid.

18       On August 20, 2015, SFR filed its Answer, Counterclaim and Cross-Claim against

19  Carrington, BANA and Juergens for quiet title and injunctive relief, and also against Carrington

20  and BANA (collectively "the Bank") for slander of title.  Juergens did not appear in this case, and

21  default has been entered with the Court [see Dkt. 42].

22       Nevada law is clear: the First Deed of Trust was extinguished by the Association's non-

23  judicial foreclosure sale.  See <u>SFR Investments Pool I, LLC v. U.S. Bank, N.A.</u>, 334 P.3d 408, 419

24  (Nev. 2014). The recitals in the Foreclosure Deed provided conclusive proof that TBW and BAC

25  were given notice of the sale and failed to properly protect their interest. SFR is entitled to

26

27  [1] Assignment of purported interest in the First Deed of Trust to Carrington did not occur until after the Association non-judicial foreclosure sale.

28  [2] Predecessor by merger to BANA.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

summary judgment on its own claims for quiet title, permanent injunction and slander of title, and against Carrington on Carrington's claim for unjust enrichment.

## II.   STATEMENT OF UNDISPUTED FACTS

The following contains facts undisputed by either party and is supported by documents disclosed by the parties, publicly recorded with the Clark County Recorder, produced by third-parties via subpoena or provided via deposition testimony:

| DATE | FACTS |
|---|---|
| 1991 | Nevada adopted Uniform Common Interest Ownership Act as NRS 116, including NRS 116.3116(2). |
| October 2, 1997 | Association perfected and gave notice of its lien by recording its Declaration of Covenants, Conditions and Restrictions ("CC&Rs") as Instrument No. 01633 in Book No. 971002.[3] |
| November 3, 2008 | Grant Bargain Sale Deed, transferring the Property from Federal Home Loan Mortgage Corporation to Harry Juergens and Samuel Juergens (Defendant "Juergens"), recorded as Instrument No. 200811030004545.[4] |
| November 3, 2008 | First Deed of Trust in favor of TBW recorded as Instrument No. 200811030004546.[5]  The lender prepared, and Harry Juergens and Samuel Juergens signed, a Planned Unit Development Rider as part of the First Deed of Trust, recognizing the need to pay assessments to the Association and the ability of the lender to pay the assessments should Harry Juergens and Samuel Juergens default. |
| April 14, 2010 | Association recorded Notice of Delinquent Assessment (Lien) as Instrument No. 201004140002146.[6]

Association mailed the Lien to Harry Juergens and Samuel Juergens.[7] |
| December 1, 2010 | Association recorded Notice of Default and Election to Sell Under Homeowners Association Lien as Instrument No. 201012010001250.[8] |

---

[3]  See excerpts from Carrington's Rule 26(a) Initial Disclosure of Witnesses and Documents, attached to Gilbert Decl. as **Exhibit 1-A**.  See specifically, first and last pages of CC&R's [CMS041 and CMS120].

[4]  See Ex. 1-A, at [CMS001-004].

[5]  See Ex. 1-A, at [CMS005-017].

[6]  Ex. 1-A, at [CMS024].

[7]  See excerpts from BANA's Initial Disclosures Under FRCP 26(a)(1), attached to Gilbert Decl. as **Exhibit 1-B**.  See specifically, Association proof of mailing of Lien [BANA (Juergens) 200-206].

[8]  See Ex. 1-A, at [CMS025-026].

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

| | |
|---|---|
| | Association mailed the Notice of Default to Harry Juergens, Samuel Juergens, TBW and Mortgage Electronic Registration Systems, Inc., nominee beneficiary under the First Deed of Trust ("MERS").[9]<br><br>TBW, BANA, BAC and MERS received the Notice of Default several times.[10][11][12] |
| May 25, 2011 | Quitclaim Deed, quitclaiming interest in the Property, from Harry and Samuel Juergens, to Samuel Juergens (Defendant "Juergens"), recorded as Instrument No. 201105250003045.[13] |
| August 1, 2011 | Assignment of First Deed of Trust, from MERS to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing LP ("BAC"), recorded as Instrument No. 201108010002340.[14] |
| September 30, 2011 | After more than 90 days elapsed from the date of the mailing of the Notice of Default, the Association recorded a Notice of Foreclosure Sale ("First Notice of Sale").[15]<br><br>Association mailed the First Notice of Sale to several parties, incuding but not limited to Harry Juergens, Samuel Juergens, TBW, MERS and the Ombudsman's office.[16]<br><br>TBW and MERS received the First Notice of Sale.[17][18][19] |
| August 27, 2012 | After more than 90 days elapsed from the date of the mailing of the Notice of Default, the Association recorded a Notice of Foreclosure Sale ("Second Notice of Sale").[20]<br><br>Prior to recordation, on August 23, 2012, Association mailed the Second Notice of Sale to several parties, including but not limited to … |

[9] See Ex. 1-B, at [BANA (Juergens) 242-248].

[10] See excerpts from Chris Lechtanski's deposition, the FRCP 30(b)(6) designee of Carrington, attached to Gilbert Decl. as **Exhibit 1-C**.  See specifically, 43:23-44:23.

[11] See excerpts from Carrington's Responses to Requests for Admissions ("RFA"), attached to Gilbert Decl. as **Exhibit 1-D**.  See specifically, Response to RFA #5.

[12] See excerpts from Carrington's Responses to Requests for Production of Documents ("RPD"), attached to Gilbert Decl. as **Exhibit 1-E**.  See specifically, Response to RPD #5, 11 and 17, [CMS142-150] and [CMS153-160].

[13] See Ex. 1-A, at [CMS032-034].

[14] See Ex. 1-A, at [CMS018-019].

[15] See Ex. 1-A, at [CMS027-028].

[16] See Ex. 1-B, at [BANA (Juergens) 301-309].

[17] See Ex. 1-B, at [BANA (Juergens) 305-307].

[18] See Ex. 1-C, at 45:9-47:15, Deposition Exhs. 7 & 8.

[19] See Ex. 1-D, at Response to RFA #8.

[20] See Ex. 1-A, at [CMS029-030].

| | |
|---|---|
| | Harry Juergens, Samuel Juergens, BAC, TBW, MERS and the Ombudsman's office.[21]<br><br>TBW, BAC, BANA and MERS received the Second Notice of Sale.[22] [23] [24] |
| August 24, 2012 | After attempting personal service on Juergens, the Second Notice of Sale was posted on the Property.  The Notice of Sale was thereafter posted at three public places within Clark County for 20 consecutive days. [25] |
| August 31, 2012 | The Second Notice of Sale was published in the Nevada Legal News for three consecutive weeks.[26] |
| December 28, 2012 | Association foreclosure sale took place and SFR placed winning bid of $7,400.00.[27] [28]  This amount was paid by SFR. [29] [30]<br><br>There was more than one bidder in attendance at the sale.[31] [32]<br><br>No one acting on behalf of Carrington attended the sale.[33] |
| January 3, 2013 | Foreclosure Deed vesting title in SFR recorded as Instrument No. 201301030000832.[34]<br><br>As recited in the Foreclosure Deed, the Association foreclosure sale complied with all requirements of law regarding the elapsing of 90 days, mailing of copies of the Lien and Notice of Default, and the posting and publication of the Notice of Sale. |

[21] See Ex. 1-B, at [BANA (Juergens) 339-345].

[22] See Ex. 1-B, at [BANA (Juergens) 343-347].

[23] See Ex. 1-C, at 48:22-52:16, 77:1-10, Deposition Exh. 10.

[24] See Ex. 1-E, at Response to RPD #5 and [CMS135-139].

[25] See Ex. 1-B, Affidavit of Service and Affidavit of Posting, at [BANA (Juergens) 354-356].

[26] See Ex. 1-B, Affidavit of Publication, at [BANA (Juergens) 353].

[27] See Ex. 1-A, Association's Foreclosure Deed [CMS038-040]; see also Foreclosure Deed, attached to Hardin Decl. as **Exhibit 2-A**.

[28] See Hardin Decl., **Exhibit 2**, ¶ 7.

[29] Id.

[30] See Ex. 1-B, Receipt of Funds and Instructions, Cashier's Check and Certificate of Sale, at [BANA (Juergens) 388-390].

[31] See Ex. 1-B, at [BANA (Juergens) 387].

[32] See Ex. 2, ¶ 8.

[33] See Ex. 1-D, at Response to RFA #3.

[34] See Ex. 1-A, at [CMS038-040]; see also Ex. 2-A.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

| | |
|---|---|
| | SFR has no reason to doubt the recitals in the Foreclosure Deed.[35]  If there were any issues with delinquency or noticing, none of these were communicated to SFR.[36]<br><br>Further, neither SFR, nor its manager, have any relationship with the Association besides owning property within the community and bidding on properties at auction.[37]<br><br>Similarly, neither SFR, nor its manager, have any relationship with Nevada Association Services, Inc. ("NAS"), the Association's agent, beyond attending auctions and bidding on properties.[38] |
| Prior to December 28, 2012 | No release of the super-priority lien was recorded by BANA/BAC.[39]<br><br>No lis pendens was recorded by BANA/BAC.[40]<br><br>BANA/BAC did not challenge the foreclosure sale in any civil or administrative proceeding.[41] |
| September 5, 2014 | BAC recorded a Request for Notice as Instrument No. 201409050002479.[42] |
| September 18, 2014 | Nevada Supreme Court issues SFR Investments Pool 1, LLC v. U.S. Bank, N.A., opinion holding that a properly held association foreclosure sale pursuant to NRS 116.31162-116.31168 extinguishes a first deed of trust.[43] |
| December 4, 2014 | Carrington recorded a Request for Notifications of Default as Instrument No. 201412040000511.[44] [45] |
| January 29, 2015 | After the Association foreclosure sale occurred and the Foreclosure Deed vesting title in SFR was recorded, BANA, as successor by merger to BAC, purported to assign interest in the First Deed of Trust to Carrington, recorded as Instrument No. 201501290000322.[46] |
| July 20, 2015 | Carrington filed its Complaint against SFR for quiet title, injunctive |

---

[35] See Ex. 2, at ¶ 9.

[36] See Ex. 2, at ¶ 10.

[37] Id. at ¶ 11.

[38] Id. at ¶ 12.

[39] Id.  at ¶ 13.

[40] Id. at ¶ 14.

[41] See Ex. 1-C, at 55:22-56:11 and 56:13-19.

[42] See Ex. 1-B, at [BANA (Juergens) 141-142].

[43] 130 Nev. ___, ___, 334 P.3d 408, 419 (2014).

[44] See Ex. 1-B, at [BANA (Juergens) 143].

[45] No assignment of interest in the First Deed of Trust to Carrington had yet been recorded.

[46] See Ex. 1-B, at [BANA (Juergens) 148-149].

**KIM GILBERT EBRON**
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

| | |
|---|---|
| | relief and unjust enrichment.[47] |
| July 30, 2015 | Carrington recorded a Notice of Lis Pendens regarding the Property as Instrument No. 201507300001519.[48] |
| August 20, 2015 | SFR filed its Answer, Counterclaim and Cross-Claim for quiet title and injunctive relief against Carrington, BANA and Juergens, and also against Carrington and BANA for slander of title.[49] |
| August 24, 2015 | SFR recorded a Notice of Lis Pendens regarding the Property as Instrument No. 201508240002023.[50] |
| August 4, 2015 | SFR filed its Answer, Counterclaim and Cross-Claim for quiet title and injunctive relief against Carrington, BANA, HSBC Household Finance and Parr, and also against Carrington, BANA and HSBC for slander of title.[51] |
| September 18, 2015 | Carrington filed its Answer to SFR's Counterclaim.[52] |
| November 23, 2015 | BANA filed its Answer to SFR's Cross-Claim.[53] |
| February 29, 2016 | Carrington filed its Amended Complaint. It added the Association and NAS as parties, and included additional causes of action pertaining only to those parties.[54] |
| March 14, 2016 | Default entered against Cross-Defendant Juergens and in favor of SFR.[55] |
| March 14, 2016 | SFR filed its Answer to Carrington's Amended Complaint.[56] |
| March 16, 2016 | SFR has been paying periodic assessments to the Association since it acquired the Property. The account is current as of the date of this Declaration.[57] |

### III.   LEGAL ARGUMENT

---

[47] See Complaint on file herein [Dkt. 1].

[48] See 1-B, at [BANA (Juergens) 150-155].

[49] See Answer, Counterclaim and Cross-Claim on file herein [Dkt. 12].

[50] See excerpts from SFR's 26(a) Disclosure of Witnesses and Documents, attached to Gilbert Decl. as **Exhibit 1-F**. See specifically, SFR's Notice of Lis Pendens, [SFR80-83].

[51] See Answer, Counterclaim and Cross-Claim on file herein [Dkt. 13].

[52] See Answer on file herein [Dkt. 20].

[53] See Answer [Dkt. 27].

[54] See Amended Complaint on file herein [Dkt. 37].

[55] See Default on file herein [Dkt. 42].

[56] See Answer on file herein [Dkt. 43].

[57] See Ex. 2, ¶ 15.

**A.    Motion for Summary Judgment Standard.**

Summary judgment is appropriate when the pleadings and other evidence on file demonstrate that no genuine issue as to any material fact remains and that the moving party is entitled to a judgment as a matter of law.'" FRCP 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). A principle purpose of summary judgment is "to isolate and dispose of factually unsupported claims." <u>Id.</u> at 323-24 (1986). The moving party beards the initial burden of "informing the district court of the basis for its motion" and identifying the evidence and affidavits which demonstrate the absence of a genuine issue of material fact" for trial. <u>Id.</u> at 323. No genuine issue of material facts exists for trial when there is insufficient evidence to support the position of the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  The non-moving party must go beyond the assertions and allegations in the pleadings and set forth specific facts by producing competent evidence showing a genuine issue for trial.  <u>See</u> Fed. R. Civ. P. 56(e); <u>Celotex Corp.</u>, 477 U.S. at 324. SFR is entitled to summary judgment because there is no genuine issue of material fact as to SFR's valid title. As set forth below, there is no admissible evidence to rebut the factual presumptions which underlie SFR's quiet title.

**B.    SFR is Entitled to Summary Judgment on its Claim for Quiet Title Because the First Deed of Trust Was Extinguished by the Association's Non-Judicial Foreclosure Sale.**

Pursuant to NRS 116.3116(2) a homeowners association lien for delinquent assessments is prior to even a first deed of trust to the extent of the super-priority portion of the association lien. <u>SFR</u>, 334 P.3d at 419. Thus, the Association's lien in this case was prior to the first deed of trust. Further, an association foreclosure sale will extinguish all junior liens, including a first deed of trust. <u>Id.</u>

In Nevada, while the party seeking to quiet title must prove good title in his name,[58] the following presumptions apply:

---

[58] <u>Breliant v. Preferred Equities Corp.</u>, 918 P.2d 314, 319 (Nev. 1996).

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1.   Recorded title is presumed valid. See Breliant, 918 P.2d at 319 ("[T]here is a presumption in favor of the record titleholder.")

2.   Foreclosure sales and the resulting deeds are presumed valid. NRS 47.250(16)-(18) (stating that there are disputable presumptions "that the law has been obeyed"; "that a trustee or other person, whose duty it was to convey real property to a particular person, has actually conveyed to that person, when such presumption is necessary to perfect the title of such person or a successor in interest"; "that private transactions have been fair and regular"; and "that the ordinary course of business has been followed.");

3.   A foreclosure deed issued pursuant to NRS 116.31164 that "recit[es] compliance with notice provisions of NRS 116.31162 through NRS 116.31168 "is conclusive" as to the recitals "against the unit's former owner, his or her heirs and assigns and all other persons." SFR, 334 P.3d at 411-12 (citing NRS 116.31166(2)).

These presumptions "not only fix[] the burden of going forward with evidence, but it also shifts the burden of proof." Yeager v. Harrah's Club, Inc., 897 P.2d 1093, 1095 (Nev. 1995) (citing Vancheri v. GNLV Corp., 777 P.2d 366, 368 (Nev. 1989).)  "These presumptions impose on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence." Id. (citing NRS 47.180.).  Thus, SFR need only present the foreclosure deed for the presumption to apply. Then, the Bank bears the burden of production and proof. It must show that it is more probable than not that the Association foreclosure sale and the resulting foreclosure deed conveying title to SFR are invalid. Yet the Bank has not produced any admissible evidence to prove such an allegation that would allow the sale to be set aside.[59]  To overcome the presumption of validity, The Bank must plead and prove a claim for fraud with particularity or allege some unfairness or oppression that is not overshadowed by its own bad acts.  The Bank has waived any right to challenge the sale.

"If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

[59] Infra; see also Sections III(E) and III(F) herein.

1   the sale has been conducted regularly and properly; this presumption is **conclusive** as to a bona

2   fide purchaser." <u>Moeller v. Lien</u>, 30 Cal.Rptr.2d 777, 783 (1994) (emphasis added); <u>see also</u>, 4

3   Miller & Starr, Cal. Real Estate (3d ed. 2000) Deeds of Trust and Mortgages § 10:211, pp. 647-

4   652; 2 Bernhardt, Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 2d ed. 1990) § 7:59,

5   pp. 476-477).   This conclusive proof is key because "[t]he conclusive presumption precludes an

6   attack by the trustor on the trustee's sale to a bona fide purchaser **even where the trustee**

7   **wrongfully rejected a proper tender of reinstatement** by the trustor[,]" and even where "the

8   sale price was only 25 percent of the value of the property. . ." <u>Moeller</u>, 30 Cal.Rptr.2d at 783

9   (emphasis added).   Put simply, where there were no irregularities in the proceedings of the sale,

10  the sale cannot be set aside. <u>Id.</u> at 783.   Further, in Nevada, unlike California, the conclusive proof

11  does not require that the purchaser be a bonafide purchaser ("BFP") to rely on the recitals. <u>See</u>

12  <u>Pro-Max Corp. v. Feenstra</u>, 16 P.3d 1074, 1077-78 (Nev. 2001), opinion reinstated on reh'g (Jan.

13  31, 2001) (holding that no limitation of bonafide purchaser can be read into a statute providing a

14  conclusive presumption).[60]   There needs to be finality to a foreclosure sale, so that buyers will

15  attend and bid, without the continued threat of lawsuits challenging their title. There is a sanctity

16  and finality to foreclosure sales where the deed contains the conclusive recitals. Cf. <u>Moeller</u>, 30

17  Cal.Rptr.2d at 784.

18          The Bank has the burden to overcome the conclusive presumption of the foreclosure deed

19  recitals with evidence of fraud, unfairness and oppression. <u>Shadow Wood Homeowners</u>

20  <u>Association, Inc. v. New York Community Bancorp, Inc.</u>, 132 Nev. Adv. Op. 5, ___ P.3d ___,

21  2016 WL 347979 at *5-8 (Jan. 28, 2016).   This is consistent with the Hon. Philip Pro's holding

22  in <u>Bourne Valley Court Trust v. Wells Fargo Bank, N.A.</u>, where he granted summary judgment

23  in favor of a purchaser at an association sale. <u>See</u> <u>Bourne Valley</u>, 80 F.Supp.3d 1131 (D.Nev.

24  2015). When faced with almost identical recitals as those in this case, the <u>Bourne Valley</u> court

25  recognized the recitals in the foreclosure deed, i.e. "that there was a default, the proper notices

26  were given, the appropriate amount of time ha[d] elapsed . . . and notice of the sale was given,"

27

28  _____
    [60] Although, as set forth more fully below, Sec. III(F), SFR is a bonafide purchaser for value.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1   met the burden of showing the required notices were sent to the lender. Id. at 1135. The court

2   continued that the lender was then "required to come forward with evidence that a genuine issue

3   of material fact remains for trial as to notice." Id.

4          Here, like the lender in Bourne Valley, the Bank cannot dispute notice because TBW and

5   BAC, the then-holders of the first deed of trust, actually received the Notice of Default and **two**

6   Notices of Sale. Ex. 1-B, at [BANA (Juergens) 305-307], [BANA (Juergens) 343-347]; Ex. 1-C,

7   at 43:23-44:23, 45:9-47:15, 48:22-52:16, 77:1-10, Deposition Exhs. 7, 8 and 10; Ex. 1-D, at

8   Responses to RFA #5, #8; Ex. 1-E, at Response to RPD #5, 11 and 17, [CMS142-150], [CMS153-

9   160], [CMS135-139].  Furthermore, there is no evidence of any procedural irregularities related

10  to the sale that would explain TBW and BAC's failure to pay the lien.  Bourne Valley, 30

11  F.Supp.3d at 1135; see also Moeller, 30 Cal.Rptr.2d at 783.  Therefore, ". . . no issue of fact

12  remains as to whether the required statutory notices were provided." Bourne Valley, 30 F.Supp.3d

13  at 1135.

14         Further, this Court need not rely solely on the presumption that the Association complied

15  with the other matters contained in the deed recitals,[61] it can rely on the evidentiary proof thereof.

16  Ex. 1-A, at [CMS025-026], [CMS027-028], [CMS029-030]; Ex. 1-B, at [BANA (Juergens) 200-

17  206], [BANA (Juergens) 242-248], [BANA (Juergens) 301-309], [BANA (Juergens) 339-345],

18  [BANA (Juergens) 353], [BANA (Juergens) 354-356].

19          Balancing the equities, on the other hand,[62] Carrington's purported predecessors in

20  interest did not protect their interest, despite receiving notice.[63] See Shadow Wood, 2016 WL

21

22  [61] These presumptions include (i) the mailing of the Notice of Delinquent Assessment (Lien); (ii) the recording and mailing of the Notice of Default on all required parties; (iii) the elapsing of 90 days between the mailing of the Notice of Default and the giving of Notice of Sale; and (iv) the giving of notice of sale, including mailing on all required parties, and publishing/posting of same.

24  [62] While, as explained in Section III(C) below, an equitable remedy is not available to the Bank as a lienholder, should the Court nonetheless be inclined to consider the balancing of equities as set forth in Shadow Wood, SFR discusses this balancing of equities throughout its Motion for Summary Judgment where applicable.

26  [63] Undoubtedly, the Bank will unpersuasively attempt to claim that BAC/BANA tendered the super-priority portion of the lien.  But, *assuming arguendo* that this were true, NAS and the Association likely rejected the payment because it was the incorrect amount and was accompanied by restrictive, conditional language. Nonetheless, the Bank did **nothing else** to protect its interest.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

347979 at *8.  Specifically, they did not file an action to enjoin the Association foreclosure sale, record a document putting the world on notice that it disputed the superpriority amount or the Association sale, record a release of the super priority portion of the lien, nor attend the sale.  Ex. 1-C, at 55:22-56:11, 56:13-19; Ex. 1-D, at Response to RFA #3; Ex. 2, at ¶¶ 13, 14.  As such, according to the Nevada Supreme Court's binding interpretation of NRS 116.3116(2), because the Bank did not cure the deficiency after notice of the properly conducted Association foreclosure sale, the first deed of trust was extinguished.

### C.    The Bank, as a Lienholder, is Not Entitled to an Equitable Remedy.

Undoubtedly, the Bank will argue that the Nevada Supreme Court recently found that while the deed recitals contained in NRS 116.31166 are generally conclusive as to those matters asserted, the court may still set aside a defective foreclosure sale on equitable grounds. Shadow Wood, 2016 WL 347979 at *5-8.  But Shadow Wood is distinguishable from this case in one key aspect: the bank in Shadow Wood was the homeowner of the Property which the Association foreclosed. Id. at *1. In other words, it was the **homeowner** who challenged the validity of the sale, not a lienholder, and unlike a lienholder, a homeowner's remedy is solely equitable. In contrast, here the Bank simply had a collateral interest in the Property, and as such, its remedy at law, if one is even triggered, is money damages.  Munger v. Moore, 89 Cal.Rptr. 323 (Ct. App. 1970).

It is well-settled that, in Nevada, district courts lack authority to grant equitable relief when an adequate remedy at law exists. Las Vegas Valley Water Dist. V. Curtis Park Manor Water Users Ass'n, 646 P.2d 549, 551 (Nev. 1982). Because the Bank has an adequate remedy at law, should they be able to prove some irregularity with the sale, equitable relief is not available to the Bank. To the extent the Bank suggests, even by inference, that taking title subject to the first deed of trust is an option, the statute does not provide such an option. Unless the Bank can demonstrate actual fraud, unfairness, or oppression **by the purchaser** at the publically advertised and held auction, the purchaser should not be subject to any acts that would set aside its unencumbered deed.  As is established herein, the Bank cannot demonstrate such acts, and therefore summary judgment in favor of SFR is appropriate.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

**D.**    **SFR is Entitled to Summary Judgment on its Claim for Quiet Title and Permanent Injunction Because the Non-Judicial Foreclosure Sale Vested Title in SFR Without Equity or Right of Redemption.**

The association foreclosure sale vested title in SFR "without equity or right of redemption," in other words, absolute title.[64] <u>SFR</u>, 334 P.3d at 419 (<u>citing</u> NRS 116.31166(3)). As the dissent in <u>SFR</u> explained, "the owner, as well as the first security, will have no right to redeem the property under the majority's holding." <u>Id.</u> (<u>citing</u> NRS 116.31166(3) and <u>Bldg. Energetix Corp. v. EHE, LP</u>, 294 P.3d 1228, 1233 (Nev. 2013) (recognizing that there is no right to redeem after a Chapter 107 non-judicial foreclosure sale because a sale under that chapter 'vests in the purchaser the title of the grantor and any successors in interest without equity or right of redemption" (<u>quoting</u> NRS 107.080(5)).)   This is consistent with long-standing Nevada non-judicial foreclosure law that "[i]f the sale is properly, lawfully and fairly carried out, [the bank] cannot unilaterally create a right of redemption in [itself]." <u>Golden v. Tomiyasu</u>, 387 P.2d 989, 997 (Nev. 1963).

Nevada law does not allow the Bank or the Court to create a redemption period to save the holder of the first deed of trust from its own failure to protect its interest. As such, SFR is entitled to a declaration from this Court that the deed of trust was extinguished by the Association foreclosure sale, and SFR should have title quieted in its name.

///

///

///

///

---

[64] According to the Nevada Supreme Court,

> **sales <u>without equity or right of redemption</u> vest the purchaser with absolute title**:
>
> > [T]he law authorizing the mortgagee to sell is, in our opinion, so thoroughly settled that it cannot now admit of a question. Such being the right of the mortgagee, it follows as a necessary consequence that the purchaser from him obtains an absolute legal title as complete, perfect and indefeasible as can exist or be acquired by purchase; and a sale, upon due notice to the mortgagor, whether at public or private sale, forecloses all equity of redemption as completely as a decree of court.

<u>In re Grant</u>, 303 B.R. 205, 209 (Bankr. D. Nev 2003) (<u>quoting</u> <u>Bryant v. Carson River Lumbering Co.</u>, 3 Nev. 313, 317–18 (1867)) (emphasis added).

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

E.     **SFR is Entitled to Summary Judgment on its Claim for Quiet Title Because the Foreclosure Sale Was Commercially Reasonable.**

SFR is entitled to quiet title because the price paid by the Association was commercially reasonable, and there is no evidence that fraud, oppression or unfairness caused the low price.

1.     *The price paid at auction was commercially reasonable.*

First, there is no requirement in NRS 116.3116 through 116.31168 that the foreclosure sale price be commercially reasonable.  The Nevada Supreme Court has held when interpreting a statute: "where the language of a statute is plain and unambiguous, and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself." Pro-Max, 16 P.3d at 1077 (interpreting NRS §106.240).  In Pro-Max, the district court read the statute as providing protection for bona fide purchasers.[65] The Nevada Supreme Court held that the statute was clear and unambiguous and the addition of a requirement of bona fide purchaser status before the application of the statute was an improper limitation. Id. at 96-97.  The court stated that at the time of the statute's enactment the legislature could have added language limiting the application of the statute to bona fide purchaser, but it did not. Thus, the Nevada Supreme Court held that there could be no addition to the statute of a bona fide purchaser requirement. Id. at 1078.  Similarly, NRS §116.31164 and §116.31166 are clear and unambiguous. Neither contain a requirement that the sale be "commercially reasonable" nor that the purchaser at the sale satisfy the requirements of a "bona fide purchaser."

Second, fair market value has no applicability to a forced sale situation. Bourne Valley, 80 F.Supp.3d at 1136; BFP v. Resolution Trust Corporation, 511 U.S. 531 (1994). As the Bourne Valley Court recognized, when assessing commercial reasonableness of an association sale, the material facts affecting the specific market at that time must be considered, including the split in the courts as to the interpretation of NRS 116.3116(2), and whether there was evidence of fraud, oppression or unfairness:

> The commercial reasonableness here must be assessed as of the time the sale occurred. Wells Fargo's argument that the HOA foreclosure sale was commercially

---

[65] As discussed in Section III(F) below, SFR is a BFP.

unreasonable due to the discrepancy between the sale price and the assessed value of the property ignores the practical reality that confronted the purchaser at the sale. Before the Nevada Supreme Court issued <u>SFR Investments</u>, purchasing property at an HOA foreclosure sale was a risky investment, akin to purchasing a lawsuit. Nevada state trial courts and decisions from the United States District Court for the District of Nevada were divided on the issue of whether HOA liens are true priority liens such that their foreclosure extinguishes the first deed of trust on the property. <u>SFR Investments</u>, 334 P.3d at 412. Thus, a purchaser at an HOA foreclosure sale risked purchasing merely a possessory interest in the property subject to the first deed of trust. This risk is illustrated by the fact that title insurance companies refused to issue title insurance policies on titles received from foreclosures of HOA super priority liens absent a court order quieting title. (Mot. to Remand to State Court (Doc. #6, Decl. of Ron Bloecker.) Given these risks, a large discrepancy between the purchase price a buyer would be willing to pay and the assessed value of the property is to be expected.

<u>Bourne Valley</u>, 80 F.Supp.3d at 1136.

Likewise, in <u>BFP</u>, the United States Supreme Court was analyzing whether the price received at a mortgage foreclosure sale was less than "reasonably equivalent value" under the bankruptcy code. Just like the Bank in this case, the Chapter 11 debtor argued that because the property sold for a fraction of its fair market value, the price paid was not reasonable. The Court held that "a 'reasonably equivalent value' for foreclosed real property is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." <u>BFP</u>, 511 U.S. at 545. The Court explained that in a forced sale situation, "fair market value cannot—or at least cannot always—be the benchmark[]' used to determine reasonably equivalent value. <u>Id.</u> at 537.  This is so because the market conditions that generally lead to "fair market value" do not exists in the forced sale context, where sales take place with significant restrictions:

> [M]arket value, as it is commonly understood, has no applicability in the forced-sale context; indeed, it is the very antithesis of forced-sale value. 'The market value of ... a piece of property is the price which it might be expected to bring if offered for sale in a fair market; not the price which might be obtained on a sale at public auction or a sale forced by the necessities of the owner, but such a price as would be fixed by negotiation and mutual agreement, after ample time to find a purchaser, as between a vendor who is willing (but not compelled) to sell and a purchaser who desires to buy but is not compelled to take the particular ... piece of property.' In short, 'fair market value' presumes market conditions that, by definition, simply do not obtain in the context of a forced sale.

<u>Id.</u> at 537-538, <u>quoting</u> Black's Law Dictionary 971 (6th ed. 1990).

The Court recognized that property sold in a forced-sale context i.e. a foreclosure, "is simply worth less [because] [n]o one would pay as much to own such property as he would pay

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

to own real estate that could be sold at leisure and pursuant to normal marketing techniques." Id. at 539. As the Court further noted,

> **Unlike** most other legal restrictions, however, foreclosure has the effect of completely redefining the market in which the property is offered for sale; normal free-market rules of exchange are replaced by the far more restrictive rules governing forced sales. Given this altered reality, and the concomitant inutility of the normal tool for determining what property is worth (fair market value), the only legitimate evidence of the property's value at the time it is sold is the foreclosure-sale price itself.

Id. at 548-549 (emphasis in original).

While the BFP analysis related to a mortgage foreclosure sale, other Courts have extended the BFP analysis to tax-defaulted sales of real property with adherence to requirements of state law, where such statutes included public noticing or advertising of the sale and competitive bidding or auction procedures. See In re Tracht Gut, LLC, 503 B.R. 804, 815-818 (9th Cir. B.A.P. 2014); T.F. Stone v. Harper, 72 F.3d 466 (5th Cir. 1995); Kojima v. Grandote Int'l Ltd. Co, 252 F.3d 1146 (10th Cir. 2001). Regardless of the type of sale, however, the analysis still aptly explains how market value cannot be compared to a forced sale transaction.

In the present case, the Bank may want to compare some "market value" to the bid at an auction when the two have no bearing on one another and cannot be compared.[66] The BFP Court clearly explained how market value has no applicability to a forced sale transaction. Additionally, Judge Pro in Bourne Valley clearly explained why the price paid at an Association foreclosure sale is reasonable, even though it was below market value, when the context of the sale is considered.

In sum, the price bid by the Association at auction was commercially reasonable, although commercial reasonableness is not required.

///

///

///

---

[66] To the extent that the Bank also wants to compare the price paid to the amount owing on the [now extinguished] deed of trust, this is also not a reliable benchmark for comparison. The amount a lender was willing to lend on the Property in November 2008, when the market was still in a bubble, has nothing to do with the amount a purchaser would be willing to pay for the Property in December 2012 (in the midst of an economic downturn and in light of lenders' refusal to acknowledge that NRS 116.3116(2) gave associations true super priority liens).

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

2.     **Even if the price was "inadequate," price alone is not enough to unwind the sale.**

Even if this Court were to find the auction price inadequate, as is long-established Nevada law and confirmed very recently by the Nevada Supreme Court, an allegation of inadequate sales price alone, no matter how low, is insufficient to set aside a foreclosure sale; "there must also be a showing of fraud, unfairness, or oppression" that caused the price. Shadow Wood, 2016 WL 347979 at *4 (citing Long v. Towne, 639 P.2d 528, 530 (Nev. 1982) and Golden, 387 P.2d at 995 (adopting the California rule that " inadequacy of price, **however gross**, is not in itself a sufficient ground for setting aside a trustee's sale legally made; there must be in addition proof of some element of fraud, unfairness or oppression as accounts for and **brings about the inadequacy of price**" (internal citations omitted) (emphasis added); see also Bourne Valley, 80 F.Supp.3d at 1136. The Golden Court explained examples of irregularities, such as

> [S]everal lots have been sold in bulk where they could have been sold separately, or sold in such manner that their full value could not be realized; if bidders have been kept away; if any undue advantage has been taken to the prejudice of the owner of the property; or he has been lulled into a false security; or if the sale has been collusively or in any other manner conducted for the benefit of the purchaser, *and* the property has been sold at a greatly inadequate price…

Golden, 387 P.2d at 994.   As recently confirmed by Shadow Wood, Nevada law is clear: commercial reasonableness is not judged by the price paid, but by the sale process, and if the sale process was fair and not fraudulent, price alone will never be sufficient to unwind a sale. The Ninth Circuit Court of Appeals has also recognized this bedrock of Nevada law and refused to affirm motions to dismiss on the alternative basis of commercial unreasonableness,[67] because "'inadequacy of price, however gross, is not in itself a sufficient ground' for setting aside a sale without "proof of some element of fraud, unfairness or oppression'" causing the low price, which the bank had not identified.  LVDG Series 125 v. Welles, No. 14-15859 at ¶ 3 (Memorandum order of reversal and remand) (9th Cir. Aug. 27, 2015) (quoting Brunzell v. Woodbury, 449 P.2d 158, 159 (Nev. 1969) (internal citations omitted); see also Kal-Mor-USA, LLC v. Bank of America,

---

[67] These were pre-SFR cases that had been dismissed on an incorrect interpretation of NRS 116.3116, wherein the district courts had determined that an association sale could not extinguish a first deed of trust.

N.A., No. 13-16591 at ¶ 2 (Memorandum order of reversal and remand) (9th Cir. August 27, 2015) (same).

Put simply, the issue is not whether the price is low, but whether the challenging party brought forth any admissible evidence of fraud, oppression or unfairness that is linked to the resulting sale price. As detailed in Section III(B) above, the Association complied with the notice requirements of NRS 116; the first deed of trust holders received notice of the Association non-judicial foreclosure sale; and the sale was publically noticed. Further, the sale was held in a public place, as required by statute; multiple bidders were in attendance; and neither the homeowner nor the first deed of trust holders properly paid an amount to cure the lien before the sale. Ex. 1-A, at [CMS038-040]; Ex. 1-B, at [BANA (Juergens) 339-345], [BANA (Juergens) 387]; Ex. 2, at ¶ 8; Ex. 2-A. The Bank has brought forth no admissible evidence to the contrary. Further, the Bank has made no allegations or evidence of fraud, oppression or unfairness that somehow chilled bidding at the sale.

In sum, viewing the transaction as a whole, the non-judicial foreclosure sale was commercially reasonable, and summary judgment should be entered in favor of SFR.

**F.    Even if there were Irregularities with the Sale, these Cannot Be Imputed to SFR Because SFR is a Bona Fide Purchaser.**

Nevada law does not require that SFR be a bona fide purchaser to rely on the deed recitals, and therefore even if there were any irregularities with the Association sale, as long as SFR did not participate in causing the irregularities, they cannot be imputed to SFR. However, in this case, SFR is a bona fide purchaser.

A BFP purchases real property: (i) for value; and (ii) without notice of a competing or superior interest in the same property. Berge v. Fredericks, 591 P.2d 246, 247 (Nev. 1979). A "purchaser for value" is one who has given "valuable consideration" as opposed to receiving the property as a gift. Id. at 248; Allen v. Webb, 485 P.2d 677, 680 (Nev. 1971) ("A specific finding of what the consideration was may be implied from the record."). Even if a purchaser may purchase a property for lower than the property's value on the open market, the fact that SFR paid "valuable consideration" is undisputed. Shadow Wood, 2016 WL 347979 at *10 (citing Fair v.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1   Howard, 6 Nev. 304, 308 (1871) ("the question is not whether the consideration is adequate, but

2   whether it is valuable"); see also Poole v. Watts, 139 Wash. App. 1018 (2007) (unpublished

3   disposition) (stating that the fact that the foreclosure sale purchaser purchased the property for a

4   "low price" did not in itself put the purchaser on notice that anything was amiss with the sale).)

5        Further, notice by a potential purchaser that an association is conducting a sale pursuant

6   to NRS 116, and that the potential exists for challenges to the sale "post hoc[,]" do not preclude

7   that purchaser from BFP status. Shadow Wood, 2016 WL 347979 at *9-11. As discussed supra,

8   Sec. III(B), finality in foreclosure sales to bona fide purchasers is a must, in order to avoid chilled

9   bidding. These continued attacks by the lenders on the association sales causes the very issues

10  with price that the lenders then complain of in their attacks on commercial reasonableness. See

11  Sec. III(E), infra.

12        In analyzing this issue, Nevada law includes another relevant presumption: "[t]hat a

13  person intends the ordinary consequences of that person's voluntary act." NRS 47.250(2).

14        In the present case, SFR paid valuable consideration for the Property at the foreclosure

15  sale. Between the date the First Notice of Sale was recorded (September 30, 2011) and the date

16  SFR purchased the Property (December 28, 2012) - **over a one year span** - the first deed of trust

17  holder did not file an action to enjoin the Association foreclosure sale, record a document putting

18  the world on notice that it disputed the superpriority amount or the Association sale, record a

19  release of the super priority portion of the lien, or attend the sale. Ex. 1-C, at 55:22-56:11, 56:13-

20  19; Ex. 1-D, at Response to RFA #3; Ex. 2, at ¶¶ 13, 14.  Thus, it is presumed that the Bank

21  intended the Association's sale to go forward and that it would not attempt to stop a transfer of

22  the Property to an innocent third party – here, SFR.

23        Furthermore, at the time of the sale, SFR had no notice of a competing or superior interest

24  in the Property where the public records showed only (1) that a deed of trust was recorded after

25  the Association perfected its lien by recording its declaration of CC&Rs, and (2) that there was a

26  delinquency by the homeowner, Juergens, which resulted in the Association instituting

27  foreclosure proceedings, and after complying with NRS Chapter 116, it sold the Property at a

28  public auction. Additionally, SFR has no relationship with the Association or NAS, except as a

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

purchaser of Property. Ex. 2, ¶¶ 11, 12. Therefore, nothing known to the Association or NAS about any purported irregularities in the foreclosure process could be deemed known by SFR.

In sum, the Bank has not alleged any facts or introduced admissible evidence that SFR had any knowledge precluding it from BFP status, other than an impotent deed of trust.  Thus, SFR is entitled to summary judgment in its favor.

G.      **FHA Insurance, Even if it Exists, Does not Change SFR's Entitlement to Summary Judgment.**

It is anticipated that the Bank will argue that the subject loan was insured by FHA, and therefore its security interest could not be extinguished because federal law preempts NRS 116 and the federal government had a property interest in the loan.  These arguments, however, are without merit.

First, the mere fact that the loan was anticipated to be FHA insured, based on an FHA case no. stamp on the deed of trust, (Ex. 1-A, at [CMS005]), is insufficient to show the loan was actually insured. Paragraph 9(e) of the deed of trust expressly contemplates the possibility the loan may be rejected as ineligible (Ex. 1-A at [CMS010]).

Second, the United States Supreme Court determined that private litigants cannot use the Supremacy Clause to displace state law. Armstrong v. Exceptional Child Care Ctr., Inc., 575 U.S. ___, 135 S.Ct. 1378, 1383-85 (2015). In Armstrong, providers of habilitation services claimed that the Supremacy Clause authorized them to sue Idaho officials for violating the Medicaid Act. The United States Supreme Court rejected the providers' invocation of the Supremacy Clause, determining that the "Supremacy Clause is not the 'source of any federal rights' [and] certainly does not create a cause of action." Id. at 1383.   Here, like the health care providers in Armstrong, the Bank is a private litigant and therefore cannot assert a cause of action under the Supremacy Clause.

Third, even assuming the Bank could assert the Supremacy Clause (which it cannot), NRS 116 is not preempted by federal law because there is no actual conflict between NRS 116 and HUD/FHA's policies. As noted in Freedom Mortgage Corp. v. Las Vegas Development Group, LLC, No. 2:14-cv-01928 JAD-NJK 2015 WL 2398402 (D.Nev. 2015), the purpose of HUD is not

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

frustrated by NRS 116 because Nevada homeowners association laws "are entirely consistent with [HUD's] goals of improving residential community development, eliminating blight, and preserving property values." Id. at *9. In fact, HUD's policy is not only consistent with Nevada homeowners association laws, it is harmonious because "[i]n superpriority lien states, the HUD-insured lenders' obligation to prevent foreclosure by satisfying HOA liens in not an aspirational goal; it's a requirement." Id. at *6.

In Freedom Mortgage, the loan was insured through the FHA by HUD. The borrower defaulted on the HOA assessments and the HOA conducted a proper non-judicial foreclosure sale. Id. at *1. The property was then sold to an investor. Id. Following the SFR decision, the lender filed a complaint and claimed that the property could not have been extinguished by the foreclosure sale because the loan was insured by HUD. Id. at *2. Judge Dorsey held that there was no conflict preemption because a lender has the ability to comply with Nevada law **and** HUD's policies and procedures. Id. at *6. In fact, "[n]othing prevents a lender from simultaneously complying with HUD's program and Nevada's HOA-foreclosure laws." Id. HUD provides that lenders must make sure that all assessments (including HOA assessments) are paid so that liens do not attach to the property. Id. HUD specifically directs lenders to pay outstanding liens, which includes HOA fees and assessments, in order to prevent foreclosure in superpriority lien states – a directive that is in line with Nevada's HOA lien law. Id. at *7.

As such, Judge Dorsey found that the bank's loss was a result of its own failure to follow HUD's policies and procedures. Id. at *10. Judge Dorsey ultimately decided that the association foreclosure sale was not barred by the Supremacy Clause, and that the foreclosure sale extinguished the lender's security interest in the property. Id. Here, the then-holders of the first deed of trust - like the bank in Freedom Mortgage - ignored HUD's directive when it failed to pay the past due assessments owed on the subject property. Now the Bank can only blame themselves for the loss. In short, NRS Chapter 116 does not conflict with FHA/HUD policies; instead, it comports with FHA/HUD policies, and therefore summary judgment in favor of SFR is warranted.

Fourth, even if the loan was insured by FHA, this is irrelevant to any of the Bank's defenses because the Bank lacks standing to assert a right that belongs to the federal government. In

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

<u>Freedom Mortgage</u>, Judge Dorsey found that the bank lacked standing to assert the federal government's Property Clause challenge, noting that "the federal government is the best advocate of its own interests." <u>Id.</u> at *4. In support of her ruling, Judge Dorsey cited a 10th Circuit case which stated

> We 'must hesitate before resolving a controversy on the basis of the rights of third persons not parties to the litigation' for two reasons. 'First, the courts should not adjudicate such rights unnecessarily, and it may be that in fact the holders of those rights do not wish to assert them.' ... 'Second, third parties themselves usually will be the best proponents of their own rights. The courts depend on effective advocacy, and therefore should prefer to construe legal rights only when the most effective advocates of those rights are before them.

<u>Id.</u> at *3 <u>quoting</u> <u>The Wilderness Soc'y v. Kane Cnty., Utah,</u> 632 F.3d 1162, 1169 (10th Cir.2011) (<u>quoting</u> <u>Singleton v. Wulff</u>, 428 U.S. 106, 113–14, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)).

In the present case, the same analysis applies, such that if FHA insurance does exist, which the Bank has not proved, the Bank lacks standing to assert a claim that belongs to the federal government. As such, even FHA insurance, if it exists, does not impede SFR's entitlement to summary judgment.

### H.     SFR is Entitled to Summary Judgment Because Carrington's Unjust Enrichment Claim is Without Merit.

Here, Carrington asserts that SFR "ha[s] benefitted from Carrington's payment of taxes, insurance or homeowner's association assessments since the time of the HOA sale."  Amended Complaint, ¶¶ 131.  However, unfortunately for Carrington, they are barred from the making an unjust enrichment claim as it is barred by the voluntary payment doctrine. As such, the burden shifts to Carrington to prove that one of the exceptions applies. They cannot.  Further, Carrington was under no compulsion or obligation to pay any expenses on the Property. Just like any other homeowner, it was SFR's duty and obligation to pay obligations such as the taxes, insurance and assessments, not Carrington's. Had Carrington simply paid the assessments prior to the sale, we would not be here today. Why it would pay post-sale is inexplicable.

Carrington's unjust enrichment claim is barred under the voluntary payment doctrine.  The voluntary payment doctrine law, which clearly provides that one who makes a payment voluntarily, cannot recover it on the ground that he was under no legal obligation to make the

payment." <u>Best Buy Stores v. Benderson-Wainberg Assocs.</u>, 668 F.3d 1019, 1030 (8th Cir. 2012).  Recently, the Nevada Supreme Court weighed in on this issue on whether the voluntary payment doctrine applies in Nevada to bar a property owner from recovering fees that it paid to a community association and, if so, whether the property owners demonstrated an exception to this doctrine by showing that the payments were made under business compulsion or in defense of property. <u>Nevada Association Services, Inc. v. The Eighth Judicial District</u>, 338 P.3d 1250 (Nev. 2014).  In <u>NAS</u> the Nevada Supreme Court ruled that the voluntary payment doctrine is a valid affirmative defense in Nevada.  <u>Id</u>. at 1254.  Because the voluntary payment doctrine is an affirmative defense, the defendant bears the burden of proving its applicability.  <u>Schwartz v. Schwartz</u>, 591 P.2d 1137, 1140 n. 2 (Nev. 1979).  Once a defendant shows that a voluntary payment was made, the burden shifts to the plaintiff to demonstrate that an exception to the voluntary payment doctrine applies.  <u>Randazo v. Harris Palatine, N.A.</u>, 262 F.3d 663, 666 (7th Cir. 2001).  There are two exceptions to the voluntary payment doctrine.  These exceptions are (1) coercion or duress caused by a business necessity and (2) payment in the defense of property.

It is presumed that Carrington voluntarily paid the property taxes, which was unnecessary. Carrington has provided no evidence that SFR would not have paid the tax bill if given the opportunity. Nor can Carrington argue that its payment was in defense of property because it cannot show that SFR failed or refused to pay. Furthermore, to the extent Carrington voluntarily made payments for insurance, SFR has not benefitted from this unless Carrington made SFR an additional insured.  Additionally, SFR has been paying the homeowner's association assessments since it acquired the Property. Ex. 2, ¶ 15.

Lastly, under Nevada law, in order to prevail on an unjust enrichment claim, Carrington must show that SFR retained the money or property of Carrington against fundamental principles of justice or equity and good conscience. <u>Asphalt Products v. All Star Ready Mix</u>, 898 P.2d 699 (Nev. 1995). Here, the subject Property was never property belonging to Carrington. Instead, the Property merely represented collateral that secured the first deed of trust until that security interest was extinguished by the Association foreclosure sale. As such, SFR has not retained property belonging to Carrington. Even if this Court were to consider a collateral interest as ownership

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

interest in the Property, for all the reasons stated above, the Association foreclosure sale extinguished the deed of trust, and therefore there is no inequity or injustice in the fact that SFR has maintained possession of property it rightfully purchased at the Association sale. Therefore, SFR is entitled to summary judgment on Carrington's claim for unjust enrichment.

## I.  **SFR is Entitled to Summary Judgment Against Juergens**

When SFR made the highest bid and purchased the Property at the Association sale, it obtained title of the unit's owner without equity or right of redemption. NRS 116.31166(2). Thus, Juergens' interest in the Property was extinguished.

Default was entered against Juergens on March 14, 2016. (See Dkt. 42.) Based on the foregoing, SFR is entitled to summary judgment against Juergens.

## J.  **SFR is Entitled to Summary Judgment on its Claim for Slander of Title Because the Bank Recorded Documents Against the Property Despite the SFR Decision and Knowledge that the Association's Foreclosure Sale Had Already Taken Place.**

The Bank falsely and maliciously slandered SFR's title to the Property when it recorded documents against the Property despite the existence of the publically recorded Foreclosure Deed conveying title to SFR, and the holding of the Nevada Supreme Court in the SFR Decision.

The elements for a slander of title action are "that the words spoken be false, that they be maliciously spoken and that the [claimant] sustain some special damage as a direct and natural result of their having been spoken." Rowland v. Lepire, 662 P.2d 1332, 1335 (Nev. 1983) (citing Potosi Zinc Co. v. Mahoney, 135 P. 1078 (Nev. 1913); Summa Corp. v. Greenspun, 655 P.2d 513 (Nev. 1982); Soller Corp. v. W.B.C. Development, 615 P.2d 956 (Nev. 1980).)

Here, the Foreclosure Deed conveying the Property to SFR was recorded with the Clark County Recorder on January 3, 2013. Ex. 1-A at [CMS038-040]; Ex. 2-A.  Further, as discussed above, on September 18, 2014, the Nevada Supreme Court issued its opinion in SFR Investments Pool I, LLC v. U.S. Bank, N.A., concluding that NRS 116.3116(2) gives associations a true super-priority lien, the non-judicial foreclosure of which extinguishes a first deed of trust. SFR, 334 P.3d at 419.  As a result, the Bank knew that its First Deed of Trust had been extinguished by the

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1  Association non-judicial foreclosure sale.  Id.  Nonetheless, BANA, successor by merger to BAC,
2  proceeded to record an Assignment, purporting to assign interest in a defunct deed of trust to
3  Carrington, on January 29, 2015.  Ex. 1-B, at [BANA (Juergens) 148-149].

4        In light of the chain of title and the SFR Decision, the statements contained in these
5  documents were **false**.  Rowland, 662 P.2d at 1335 ("the evidence establishes that the Lepires did
6  not owe any money to the Rowlands. In that the lien stated the Lepires did owe money to the
7  Rowlands, this statement was false") (emphasis added).

8        Additionally, malice occurs when "the defendant knew that the statement was false or
9  acted in reckless disregard of its truth or falsity.  Id. (citing Howard v. Schaniel, 113 Cal.App.3d
10 256, 169, Cal.Rptr. 678 (Ct.App.1980); Pecora v. Szabo, 94 Ill.App.3d 57, 49 Ill.Dec. 577, 418
11 N.E.2d 431 (Ill.App.Ct.1981); Restatement (Second) of Torts § 623A (1977); Restatement
12 (Second) of Torts § 624 (1977).)  Here, in light of the SFR Decision, the Bank knew that the First
13 Deed of Trust was extinguished; consequently, they **knew** that the statements contained in the
14 Assignment, suggesting that the deed of trust was still valid, were false. Rowland, 662 P.2d at
15 1335; SFR, 334 P.3d at 419 (emphasis added).  Further, while a defendant with "reasonable
16 grounds for belief in his claim . . . has not acted with malice[,]" here the SFR Decision made
17 unequivocally clear that the first deed of trust was extinguished.  Rowland, 662 P.2d at 1335
18 (citing Merchants Nat. Bank of Mobile v. Steiner, 404 So.2d 14 (Ala.1981); Whildin v.
19 Kovacs, 82 Ill.App.3d 1015, 38 Ill.Dec. 463, 403 N.E.2d 694 (Ill.App.Ct.1980)); see also SFR,
20 334 P.3d at 419.  Furthermore, since the Bank knew it received notice of the Association's
21 foreclosure sale and did nothing to prevent it, the Bank had **no reasonable grounds** to believe
22 that the first deed of trust survived the foreclosure, and it acted maliciously in proceeding with
23 recording the Assignment against the Property.  Rowland, 662 P.2d at 1335 (emphasis added).

24       Lastly, SFR has sustained special damages "as a direct and natural result" of the Bank's
25 false and malicious recordation of post-sale documents against the Property.  Specifically, the
26 Bank's clouding of SFR's title has caused it to incur attorney's fees and costs to remove the cloud
27 on its title.

28 ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KIM GILBERT EBRON**
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

IV.   <u>CONCLUSION</u>

Based on the above, the Court should enter summary judgment against Carrington, BANA and Juergens, and in favor of SFR, stating that (1) SFR is the title holder of the Property; (2) the First Deed of Trust was extinguished when the Association foreclosed its lien containing super priority amounts, thus making Carrington and BANA's purported interests in the deeds of trust invalid; (3) Juergens has no further interest in the Property; (4) Carrington, BANA and Juergens are permanently enjoined from any sale or transfer that would affect SFR's title to the Property; and (5) Carrington and BANA are liable for slander of title.

DATED this 17th day of March, 2016.

**KIM GILBERT EBRON**

*/s/Jacqueline A. Gilbert*
Diana Cline Ebron, Esq.
Nevada Bar No. 10580
Jacqueline A. Gilbert, Esq.
Nevada Bar No. 10593
Karen L. Hanks, Esq.
Nevada Bar No. 9578
7625 Dean Martin Drive, Suite 110
Las Vegas, Nevada  89139
Phone: (702) 485-3300
Fax:    (702) 485-3301
*Attorneys for SFR Investments Pool 1, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of March, 2016, pursuant to FRCP 5, I served via the CM-ECF electronic filing system the foregoing **SFR INVESTMENTS POOL 1, LLC'S MOTION FOR SUMMARY JUDGMENT** to the following parties:

Dana Jonathon Nitz, Esq.
Natalie C. Lehman, Esq.
WRIGHT, FINLAY, & ZAK, LLP
7785 W. Sahara Avenue, Suite 200
Las Vegas, Nevada 89117
dnitz@wrightlegal.net
nlehman@wrightlegal.net
*Attorneys for CARRINGTON MORTGAGE SERVICES, LLC*

 Donna M. Wittig, Esq.
Akerman LLP
1600 Town Center Drive, Suite 330
Las Vegas, NV 89144
donna.wittig@akerman.com
*Attorneys for BANK OF AMERICA, N.A.*

/s/Jacqueline A. Gilbert
An employee of Kim Gilbert Ebron

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of March, 2016, pursuant to FRCP 5, I served via U.S. Mail, postage pre-paid, the foregoing **SFR INVESTMENTS POOL 1, LLC'S MOTION FOR SUMMARY JUDGMENT**, to the following persons at their last known addresses:

Samuel Raymond Juergens
1500 Karen Avenue, Apt. 100
Las Vegas, NV 89169

*/s/Jacqueline A. Gilbert*
An employee of Kim Gilbert Ebron

**KIM GILBERT EBRON**
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301