1  DIANA CLINE EBRON, ESQ.
   Nevada Bar No. 10580
2  E-mail: diana@KGELegal.com
   JACQUELINE A. GILBERT, ESQ.
3  Nevada Bar No. 10593
   E-mail: jackie@KGELegal.com
4  KAREN L. HANKS, ESQ.
   Nevada Bar No. 9578
5  E-mail: karen@KGELegal.com
   KIM GILBERT EBRON
6  7625 Dean Martin Drive, Suite 110
   Las Vegas, Nevada 89139
7  Telephone: (702) 485-3300
   Facsimile: (702) 485-3301
8  *Attorneys for SFR Investments Pool 1, LLC*

9           **UNITED STATES DISTRICT COURT**

10            **DISTRICT OF NEVADA**

11

12  CARRINGTON MORTGAGE SERVICES,        Case No. 2:15-cv-01377-JCM-NJK
    LLC,
13
                  Plaintiff,
14                                        **SFR INVESTMENTS POOL 1, LLC'S**
    v.                                    **OPPOSITION TO BANK OF AMERICA,**
15                                        **N.A.'S MOTION FOR SUMMARY**
    SFR INVESTMENTS POOL 1, LLC; OAK      **JUDGMENT ON SFR INVESTMENTS**
16  PARK HOMEOWNERS ASSOCIATION;          **POOL 1, LLC'S SLANDER OF TITLE**
    NEVADA ASSOCIATION SERVICES, INC.,    **CLAIM**
17
                  Defendants.
18  ─────────────────────────────────
19  SFR INVESTMENTS POOL 1, LLC, a Nevada
    limited liability company,
20
                  Counter-Claimant,
21
    v.
22
    CARRINGTON MORTGAGE SERVICES,
23  LLC, a Delaware limited liability company;
    BANK OF AMERICA, N.A., a national
24  association; and SAMUEL RAYMOND
    JUERGENS, an individual,
25
                  Counter-Defendant/Cross-Defendants.
26

27

28

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

- 1 -

SFR Investments Pool 1, LLC ("SFR") hereby files this Opposition to BANK OF AMERICA, N.A.'S MOTION FOR SUMMARY JUDGMENT ON SFR INVESTMENTS POOL 1, LLC'S SLANDER OF TITLE CLAIM (Bank of America, N.A. hereinafter referred to as "the Bank"). This Opposition is based on the papers and pleadings on file herein, the following points and authorities, and such evidence and oral argument as may be presented at the time of the hearing on this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

The Bank has not met its burden to show—through admissible evidence—that it is "entitled to a judgment as a matter of law." FRCP 56(a). As such, their motion for summary judgment must be denied. Contrastingly, this Court should grant SFR's Motion for Summary Judgment on slander of title because "there is no genuine dispute as to any material fact and [SFR] is entitled to judgment as a matter of law." Id.

In Nevada, price alone is never enough to vacate a foreclosure sale, something reaffirmed in Shadow Wood HOA, Inc. v. New York Cmty Bancorp, Inc., 366 P.3d 1105, 1110 (Nev. 2016). The Bank has not alleged, or asserted fraud, oppression or unfairness as an affirmative defense in any pleading up to this date and thus has waived the argument. Furthermore, the Bank provides no evidence of any irregularity in the foreclosure process or evidence of fraud, oppression or unfairness that would allow the sale on behalf of Oak Park Homeowners Association (the "Association") to SFR to be unwound.

The Bank's reliance on the Restatement is misplaced as Shadow Wood, while referencing it in dicta, did not expressly adopt this as a new rule of law. Based on the context of the sale to SFR, nothing demonstrates any reason to unwind the sale, especially as to a bona fide purchaser ("BFP") like SFR.

In regards to BFP, the Bank once again fails to provide any evidence that SFR is anything but a BFP. Thus, the Bank cannot show that it would be entitled to equitable relief, if such relief were even available to it, which it is not. The Bank's sole remedy, if it was injured, is for damages at law, against parties other than SFR.

- 2 -

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1    The Bank has alleged "tender" in this case but the payment perpetuated to be tender was

2    littered with conditions and did not include the full superiority lien amount. Thus, the payment was

3    not tender as a tender of payment must be an **unconditional** offer to pay. See McDowell Welding

4    & Pipefitting, Inc. v. United State Gypsum Company, 320 P.3d 579, 585 (Or. Ct. App. 2014).

5    The Bank's retroactivity argument ignore the fact that NRS 116 was enacted on January 1,

6    1992. SFR Investments Pool 1, LLC v. U.S. Bank, N.A. ("the SFR decision")[1] did not change

7    existing law; it merely interpreted an existing statute. Thus, applying it to this case is not "retroactive

8    application" and no Chevron Oil[2] analysis is necessary.

9    The Bank's facial due process arguments fail because the issue has been decided. Even if the

10   issue requires further analysis, the Bank lacks standing because the very procedures of which it

11   complains gave it actual notice here. In addition, the Bank cannot prove a state actor that was

12   involved to implicate due process; and the constitutional avoidance doctrine and the plain language

13   of the statute demonstrate that junior lienholders of record, like the Bank, are required to get the

14   notice of default and notice of sale.

15   Lastly, contrary to the Bank's assertions, SFR can prevail on its slander of title claim. The

16   Bank cannot dispute that the SFR decision resulted in the extinguishment of first deeds of trust at

17   Association foreclosure sales. SFR, 334 P.3d at 419. Therefore, it is also undisputed that the Bank

18   "acted with reckless disregard for the truth" when, knowing that the Association sale had already

19   taken place and that its deed of trust had been extinguished, when it publically recorded an

20   Assignment and Substitution of Trustee as to a defunct deed of trust post-sale.

21                          II.      STATEMENT OF DISPUTED FACTS

22   **Disputed Fact #1: "On or about October 27, 2008, Samuel Juergens and**

23   **Raymond Juergens (Borrowers) entered into a deed of trust…, which secured an FHA-insured**

24   **loan…" Mot., 2:24-28.**

25   There is a dispute as to whether FHA actually has any "interest." The Bank has not

26   introduced any admissible evidence to support such a notion. The fact that the Deed of Trust has

27   ---
     [1] 334 P.3d 408 (Nev. 2014) ("SFR" or "the SFR decision").

28   [2] Chevron Oil Co. v. Huson, 404 U.S. 97 (1971).

**KIM GILBERT EBRON**
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

an FHA case number does not prove that (a) it was actually insured as ¶ 9(e) of the deed of trust contemplates possible rejection;[3] or (b) that HUD has an interest in the loan at the time of the Association foreclosure sale.

**Disputed Fact #2.** "**Accordingly, Bank of America tendered $503.10 to the HOA Trustee on February 25, 2011.**" "**Inexplicably, the HOA Trustee rejected the super-priority payment, instead choosing to proceed with the foreclosure process**" Mot., 3:18-20.

SFR disputes whether this was tender.  As explained below, payment with conditions is <u>not tender</u>.  Here, the Bank clearly used conditional language when it proffered its alleged payment, effectively eliminating any chance of it being tender.  Further, the issue of what was included in the "super-priority" portion of the HOA lien was in question at the time of the attempted payment, and this issue is currently pending before the Nevada Supreme Court.  Therefore, the Association and its agent had a good faith reason for rejecting the less than adequate amount.

**Disputed Fact #3.** "**The amount SFR paid for the Property is approximately 4% of the value of the FHA-insured loan secured by the senior Deed of Trust.**"  Mot., 3:23-27.

SFR disputes this fact, as discussed below, because the Bank does not have an expert to testify to the fair market value nor has presented admissible evidence of the fair market value.  Furthermore, the Bank's unqualified opinion as to the "fair market value" of the property does not take into consideration a forced sale situation, as is the case here.

SFR challenges again the Bank's assertion that the loan secured by the First Deed of Trust was FHA insured, as discussed in disputed fact #1.

**A.**     **Motion for Summary Judgment Standard**

Summary judgment is appropriate when the pleadings and admissible evidence show "[t]hat there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). An inability to meet this burden precludes summary judgment. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 159-60 (1970). Likewise, if admissible evidence proves that the movant is not "entitled to judgment as a matter of law," then summary judgment is inappropriate. <u>California</u>

---

[3] Bank's Motion for Summary Judgment., Ex. A at ¶ 9(e)(hereinafter "Mot.").

**KIM GILBERT EBRON**
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

v. Campbell, 138 F.3d 772, 782 (9th Cir. 1988); 56(a). Summary judgment is also improper when a litigant's evidence is "blatantly contradicted by the record so that no reasonable jury could believe it . . . ." Scott v. Harris, 550 U.S. 372, 380 (2007).

### B.      Slander of Title Standard

Slander of title involves false and malicious communications that disparage a person's title in land and cause special damages. Higgins v. Higgins, 103 Nev. 443, 445, 744 P.2d 530, 531 (1987). The tort of slander of title does not necessary infringe upon an individual's right to use or dispose of his or her property. McKnight Family, L.L.P. v. Adept Management Services, 129 Nev. ___, 310 P.3d 555, 553 (2013).  Malice occurs when "the defendant knew that the statement was false or acted in reckless disregard of its truth or falsity.  Rowland v. Lepire, 99 nev. 308, 313, 662 P.2d 1332, 1335 (1983) (citing Howard v. Schaniel, 113 Cal.App.3d 256, 169, Cal.Rptr. 678 (Ct.App.1980); Pecora v. Szabo, 94 Ill.App.3d 57, 49 Ill.Dec. 577, 418 N.E.2d 431 (Ill.App.Ct.1981); Restatement (Second) of Torts § 623A (1977); Restatement (Second) of Torts § 624 (1977).) In regards special damages, the Nevada Supreme Court reviewed Chesebro v. Powers, a case from the Michigan Supreme Court in which the plaintiff claimed only special damages for the expense he incurred in bringing and maintaining the action for slander of title. Summa Corp. v. Greenspun, 98 Nev. 528, 531-532, 655 P.2d 513, 515(Nev., 1982) citing Chesebro v. Powers, 78 Mich. 472, 44 N.W. 290 (1889). " The Nevada Supreme Court went on to say "We believe the rationale of Chesebro, … is based on reason and recognizes that but for the wrongful act of slander of plaintiff's title, the plaintiff would not incur any expenses in removing the cloud from his title… Therefore, the trial court properly concluded that an award of expenses was an element of special damages and sufficient to establish the tort of slander of title." Summa Corp., 98 Nev. at 532, 655 P.2d at 515.

### C.      The Bank cannot use the Supremacy Clause to Displace Nevada Law

The United States Supreme Court recently determined that private litigants cannot use the Supremacy Clause to displace state law. Armstrong v. Exceptional Child Care Ctr., Inc., 575 U.S. ___, 135 S.Ct. 1378, 1383-85 (2015).  Indeed, in Armstrong this country's highest court clarified the Supremacy Clause's purpose and scope, doing so by reversing an unpublished Ninth Circuit

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1  opinion. Id. at 1383. Armstrong determined that the Supremacy Clause does not authorize private

2  litigants to: (i) displace state law or (ii) enforce federal law. Id. at 1383-85. Rather, a judge-made

3  equitable remedy allows private parties to enjoin government actors from violating federal law. Id.

4  at 1384-85. And, Congress — via a law's text — determines who can enforce a federal statute. Id.

5  at 1383-84. Here, Congress authorized HUD's Secretary to enforce the National Housing Act

6  ("NHA"). Thus, the Bank, a private litigant, cannot use the Supremacy Clause to displace state

7  law.

8            **D.**      **The Bank cannot Enforce the National Housing Act**

9         The NHA governs HUD's insurance and potential ownership of mortgages. 12 U.S.C. §§

10  1708, 1709, 1710. Congress expressly authorized HUD's Secretary to enforce the NHA. 12 U.S.C.

11  §§ 1701c(a), 1702, 1708(a)(1), 1709(r), 1710(g), 1710(i); 42 U.S.C. § 3535(i)(1). For example,

12  "[t]he powers conferred by [the NHA] shall be exercised by the Secretary[.]" 12 U.S.C. § 1702. In

13  "carrying out the provisions of" the NHA, the Secretary is "[a]uthorized, in his official capacity,

14  to sue and be sued[.]" Id. The Secretary is also "[a]uthorized to . . . commence any action to protect

15  or enforce any right conferred upon him[.]" 42 U.S.C. § 3535(i)(1). Put simply, the NHA conveys

16  Congress's intent that HUD's Secretary — rather than private litigants such as Wells Fargo — will

17  enforce the NHA and protect HUD's interests.

18         The Ninth Circuit and cases from the District of Nevada agree that the NHA lacks a private

19  cause of action. City of Rohnert Park v. Harris, 601 F.2d 1040, 1045 (9th Cir. 1979); Stabley v.

20  Bank of Am., N.A., No. 2:11–cv–00635–GMN–CWH, 2014 WL 3645327, at *4 (D. Nev. July 22,

21  2014); Weatherford v. Nevada Rural Hous. Auth., 946 F. Supp. 2d 1101, 1111  (D. Nev. 2013).

22  Here, the Bank alleges that HUD has an "interest" in the DOT. The Bank seeks to protect this

23  "interest" from extinguishment, but the Bank lacks the authority to do so; Congress explicitly and

24  exclusively authorized HUD's Secretary to "commence any action to protect or enforce" HUD's

25  alleged "interests." 42 U.S.C. § 3535(i)(1).  All told, the Bank cannot enforce the NHA.

26            **E.**      **The Bank's Reliance on *Washington & Sandhill* is Misplaced**

27         The court in Washington & Sandhill Homeowners Ass'n, v. Bank of Am., *N.A.*, No. 2:13-

28  cv-01845-GMN, 2014 WL 4798565 (D. Nev. Sept. 25, 2014), **did not** determine that HUD

**KIM GILBERT EBRON**
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1  insurance was a federal property interest. Washington & Sandhill, 2014 WL 47989565, at *6. It

2  expressly never reached the issue. Id. Furthermore, Washington & Sandhill relied heavily on

3  distinguishable Ninth Circuit cases: United States v. View Crest Garden Apartments, Inc., 268

4  F.2d 380 (9th Cir. 1959) and United States v. Stadium Apartments, Inc., 425 F.2d 358 (9th Cir.

5  1970). In each of those cases, borrowers defaulted on HUD-insured mortgages, which were

6  assigned to HUD before foreclosure proceedings began. Stadium, 425 F.2d at 360-61; View Crest,

7  268 F.2d at 382. The Ninth Circuit opted to apply judge-made federal law[4] because those cases

8  involved: (i) federal question jurisdiction,[5] (ii) HUD as a party,[6] (iii) mortgages assigned to HUD,

9  (iv) borrowers trying to use the NHA's definition of "mortgage" to impose state-created remedies

10  on HUD,[7] (v) federal law applied because it was the source of law for "relations between" HUD

11  and "parties to the mortgage,"[8] and (vi) state law could not supply a "rule of decision" because it

12  would erode HUD's post-assignment remedies, diminish the NHA's "purpose," and impact HUD's

13  insurance fund.[9]

14      Here, HUD is not a party and the Bank has not alleged that it assigned the DOT to HUD,

15  differentiating the instant matter from View Crest and Stadium Apartments. Furthermore, the U.S.

16  Supreme Court has curtailed, if not rejected, View Crest and Stadium Apartments' robust rule of

17  decision analyses, because "rule of decision" determinations─instances when judges engage in

18  common law rule-making─are "few and restricted," limited to "conflicts" between state and

19  federal policy. O'Melveny & Myers v. FDIC, 512 U.S. 79, 87-88 (1994). If there is no "conflict,"

20  then state law controls. Id. Here, Nevada and HUD have the same policy: banks should pay

21  association dues. SFR, 334 P.3d at 414; HUD Handbook 4310.5, Rev-2, Ch. 4, § 4-37(A), p. 4-12.

22  Moreover, this lawsuit involves private litigants, not the government. The government interest here

23  is too remote or speculative to require a "uniform" judge-made federal rule. Texas Indus., Inc. v.

[4] Stadium, 425 F.2d at 361; View Crest, 268 F.2d at 382-83.

[5] Stadium, 425 F.2d at 359; View Crest, 268 F.2d at 382.

[6] Stadium, 425 F.2d at 359; View Crest, 268 F.2d at 381.

[7] Stadium, 425 F.2d at 360-61; View Crest, 268 F.2d at 382.

[8] Stadium, 425 F.2d at 360; View Crest, 268 F.2d at 382.

[9] Stadium, 425 F.2d at 361; View Crest, 268 F.2d at 383.

Radcliff Materials, Inc., 451 U.S. 630, 642 (1981); Miree v. DeKalb Cnty., 433 U.S. 25, 31 (1977); Bank of Am. Nat'l Trust & Sav. Ass'n v. Parnell, 352 U.S. 29, 33 (1956); Pankow Constr. Co. v. Advance Mortg. Corp., 618 F.2d 611, 613-14 (9th Cir. 1980).   Ultimately, the Bank's reliance on Washington & Sandhill is misplaced.

### F.   Rust is Distinguishable

Rust involved a "[d]ispute over the power of the City of Los Angeles to foreclose on property in which the United States holds an interest." Rust v. City of Los Angeles, 597 F.2d 174, 176 (9th Cir. 1979). The issue was whether Los Angeles' foreclosure of street improvement assessments could extinguish an HUD-insured DOT, which was held by the Federal National Mortgage Association ("Fannie"). Id. The Ninth Circuit determined extinguishment did not occur, a determination influenced by the following considerations: (i) HUD was a party, [10] (ii) a mortgage held by a federal instrumentality is federal "property,"[11] (iii) the City of New Brunswick case prohibited extinguishment of federal interests,[12] and (iv) the Supremacy Clause prevented state law from depriving the federal government of its "property."[13]

Here, HUD is not a party to this case. Next, the Bank does not allege that HUD or a "federal instrumentality" holds the DOT, a factual difference between the instant matter and Rust. As for City of New Brunswick, that case developed the principle that states cannot extinguish the federal government's property. City of New Brunswick v. United States, 276 U.S. 547, 555-56 (1928). Yet, City of New Brunswick also stressed that no such similar protection applied to private entities. Id. at 556. Thus, City of New Brunswick offers no assistance to the Bank because it is a private entity, another distinction between this case and Rust. Finally, Rust's Supremacy Clause analysis concentrated on the relationship between state law and the federal government, scrutinizing how a state law impacted the government. Rust, 597 F.2d at 179. Here, the relationship at issue is between state law and a private entity—the Bank. Indeed, this country's highest court has determined

---

[10] Rust, 597 F.2d at 176-78.

[11] Id. at 177.

[12] Id. at 179.

[13] Id. at 179-80.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

that state law can prevent a private entity from giving property to the federal government. United States v. Burnison, 339 U.S. 87, 91 (1950); United States v. Fox, 94 U.S. 315, 320-21 (1876); see also FDIC v. Former Officers & Directors of Metro. Bank, 884 F.2d 1304, 1309 n.4 (9th Cir. 1989) ("If the state statute of limitations has expired before the government acquires a claim, that claim is not revived by transfer to a federal agency."). From the law of wills to statutes of limitations, the Supremacy Clause is offended by state law prohibiting private individuals from giving property to the federal government. Id. The Supreme Court has even gone so far as to state that the federal government "[m]ay place itself in a position where its rights necessarily are determinable by state law, as when it purchases real estate from one whose title is invalid by that law in relation to another's claim." United States v. Standard Oil Co., 332 U.S. 301, 308-09 (1947). In the end, Rust is distinguishable.

G.    **NRS 116 Does Not Conflict with HUD Polices**

The Bank relies upon Munoz v. Branch Banking & Trust Co., 348 P.3d 689 (Nev. 2015), in support of its position that NRS 116 does not frustrate or conflict with HUD policies, but this is misplaced. What the Bank fails to consider, or intentionally ignores, is that it only had to is pay off the Association lien in order to preserve its interest. In so doing, it would have preserved its deed of trust, and its right to foreclose. This would have then preserved its ability to present clear title to HUD. But not wanting to comply with state law, and there being a conflict with state law are too different things. Here, the Bank simply did not comply with Nevada law and now it has found itself in an untenable position whereby it cannot claim the insurance proceeds from HUD because it cannot present clear title. Nothing in the HUD guidelines prohibited the Bank from paying the Association lien to preserve its interest. In other words, the Bank has absolutely no excuse for failing to comply with Nevada law in order to preserve its interest.

The Bank also claims that NRS 116 undermines the FHA Program's foreclosure avoidance scheme and therefore violates the Supremacy Clause. In other words, because HUD has a more lengthy foreclosure process than NRS 116, the two conflict. However, again this argument is misplaced because NRS 116 does not frustrate or conflict with HUD policies. Both NRS 116 and the HUD scheme still contemplate foreclosure and allow for it. NRS 116 is not a foreclosure statute

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

for banks; it is a foreclosure statute for the associations. There is no compliance on the part of the Bank that is required by NRS 116 that conflicts with the rules the Bank must follow in order to foreclose on an FHA-insured loan. Simply because NRS 116 requires fewer hoops, so to speak, does not mean it conflicts with HUD's policies. The Bank is not required to do anything under NRS 116 that would make it violate any rules or guidelines of HUD. Instead, HUD encourages the payment of Association liens.

Specifically, as noted by Judge Dorsey in <u>Freedom Mortgage Corp.</u>, the purpose of HUD is not frustrated by NRS 116 because Nevada HOA laws "are entirely **consistent** with [HUD's] goals of improving residential community development, eliminating blight, and preserving property values." <u>Freedom Mortgage Corp.</u>, 2015 WL 2398402 *9 (emphasis added). Also, the goals of HUD are **furthered** by Nevada's HOA lien laws because the laws encourage lenders to pay the liens so that the homeowners can avoid foreclosure, thereby meeting the federal policy of keeping homeowners in their homes. <u>Id.</u> (emphasis added).

In short, NRS Chapter 116 does not conflict with HUD policies; instead, it comports with HUD policies, and therefore summary judgment in favor of SFR is appropriate.

**H.    The Bank Has Presented No Admissible Evidence to Challenge the Commercial Reasonableness of the Association Foreclosure Sale**

<u>Shadow Wood</u> reaffirmed that Nevada adopted the California rule that "inadequacy of price, **however gross**, is not in itself a sufficient ground for setting aside a trustee's sale legally made; there must be in addition proof of some element of fraud, unfairness or oppression **as accounts for and brings about the inadequacy of price**[.]" <u>Shadow Wood</u>, 366 P.3d at 1110 (quoting <u>Golden v. Tomiyasu</u>, 387 P.2d 989, 995 (Nev. 1964) (internal citations omitted) (emphasis added). While the Bank wishes it were so, <u>Shadow Wood</u> **did not adopt** the Restatement (Third) of Property: Mortgages § 8.3 cmt. b. which was simply mentioned in dicta. The Nevada Supreme Court also reaffirmed that to set aside an association foreclosure sale there must be "a showing of grossly inadequate price plus 'fraud, unfairness, or oppression.'" <u>Id.</u> (citing <u>Long v. Towne</u>, 98 Nev. 11, 13, 639 P.2d 528, 530 (1982)). More recently, a panel of the Nevada Supreme Court, in an unpublished order, recognized this reaffirmance

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

- 10 -

in Shadow Wood "that a low sales price is not a basis for voiding a foreclosure sale absent 'fraud, unfairness, oppression . . . ." Centeno v. J.P. Morgan Chase Bank, N.A., Nevada Supreme Court Case No. 67365 (Mar. 18, 2016) (unpublished Order Vacating and Remanding).[14] Thus, adopting the Restatement would have been announcing a new rule of law, which would have to have been done expressly to abrogate Golden and Long and would only be applied prospectively.[15]

Here, the Bank has offered no evidence of any fraud, unfairness or oppression in the sale process that would justify setting aside the sale. The Association's sale was publically noticed, as required by statute, multiple bidders attended the auctions, and neither the homeowner nor the Bank paid the full amount to cure the lien before the sale. Here, viewing the transaction as a whole, the sale was commercially reasonable, and as a matter of law, the Bank cannot rely on SFR's bid as evidence that it was not. The Bank's commercial unreasonableness argument fails.

Additionally, nothing in the Restatement contemplates the facts and conditions surrounding association foreclosure sales in Nevada at the time of this sale. Purchasers such as SFR were constantly forced to litigate to defend against lenders like the Bank attempting to foreclose on their extinguished deeds of trust following association foreclosure sales. See Bourne Valley, 80 F.Supp.3d at 1136. This was not the typical mortgage foreclosure sale where the purchaser knows if there is a senior lien recorded on the property that will survive the sale, like when purchasing at a second mortgagee's sale. Here, every sale was under attack by lenders, and remains so to this day. The Bank cannot create and perpetuate the situation that bidders have to consider the high cost of litigation into their bidding, thereby keeping prices lower than at NRS 107 sales, and then complain that the prices are too low. They cannot use their legal position and litigation as both a sword and a shield.

---

[14] A copy of the order is attached hereto as Exhibit 1, for the Court's convenience. In that case, the price paid at the homeowners association's auction was $5,950.00. While the district court did not establish a value for the property, on appeal the Bank argued that that the deed of trust secured a loan for $160,001.00 and the property later reverted to the Bank at its own auction for $145,550.00. (See Case No. 67365, Response to Appellant's Pro se Appeal Statement, filed Feb. 17, 2016 (Doc. No. 16-04982), available at http://caseinfo.nvsupremecourt.us/public/caseView.do?csIID=35567). Thus, the price paid at the association's foreclosure sale in Centeno was approximately 4% of the credit bid by the Bank at its subsequent auction.

[15] Unlike SFR, which dealt with statutory interpretation of an existing law, adopting the Restatement Third would be creating a new rule of law to which Chevron Oil analysis would apply and potentially prevent application this new rule of law retroactively.  Chevron Oil Co. v. Hudson, 404 U.S. 97, 106-107 (1971).

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1   The Bank can point to nothing in the Restatement or in <u>Shadow Wood</u> that would contemplate

2   allowing such an outcome. The Restatement is not the rule of law in Nevada, and the Bank must

3   show something more than price. It has not.

### I.   <u>The Price Paid at Auction Was Commercially Reasonable</u>

4
5       First, there is no requirement in NRS 116.3116 through 116.31168 that the foreclosure sale

6   price be commercially reasonable.  The Nevada Supreme Court has held when interpreting a statute:

7   "where the language of a statute is plain and unambiguous, and its meaning clear and unmistakable,

8   there is no room for construction, and the courts are not permitted to search for its meaning beyond

9   the statute itself." <u>Pro-Max Corp. v. Feenstra, 117 Nev. 90, 94-95</u>, 16 P.3d 1074, 1077 (2001)

10  (interpreting NRS §106.240).  The provisions of NRS 116.3116, et seq. are clear and unambiguous.

11      Second, fair market value has no applicability to a forced sale situation. <u>Bourne Valley</u>, 80

12  F.Supp.3d at 1136; <u>BFP v. Resolution Trust Corporation</u>, 511 U.S. 531 (1994). As the <u>Bourne Valley</u>

13  Court recognized, when assessing commercial reasonableness of an association sale, the material

14  facts affecting the specific market at that time must be considered, including the split in the courts

15  as to the interpretation of NRS 116.3116(2), and whether there was evidence of fraud, oppression or

16  unfairness:

17          The commercial reasonableness here must be assessed as of the time the sale
            occurred. Wells Fargo's argument that the HOA foreclosure sale was commercially
18          unreasonable due to the discrepancy between the sale price and the assessed value
            of the property ignores the practical reality that confronted the purchaser at the sale.
19          Before the Nevada Supreme Court issued <u>SFR Investments</u>, purchasing property at
            an HOA foreclosure sale was a risky investment, akin to purchasing a lawsuit.
20          Nevada state trial courts and decisions from the United States District Court for the
            District of Nevada were divided on the issue of whether HOA liens are true priority
21          liens such that their foreclosure extinguishes the first deed of trust on the
            property. <u>SFR Investments</u>, 334 P.3d at 412. Thus, a purchaser at an HOA
22          foreclosure sale risked purchasing merely a possessory interest in the property
            subject to the first deed of trust. This risk is illustrated by the fact that title insurance
23          companies refused to issue title insurance policies on titles received from
            foreclosures of HOA super priority liens absent a court order quieting title. (Mot.
24          to Remand to State
            Court (Doc. #6, Decl. of Ron Bloecker.) **Given these risks, a large discrepancy**
25          **between the purchase price a buyer would be willing to pay and the assessed**
            **value of the property is to be expected.**

26  <u>Bourne Valley</u>, 80 F.Supp.3d at 1136(emphasis added).

27      Likewise, in <u>BFP</u>, the United States Supreme Court was analyzing whether the price received

28

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

**KIM GILBERT EBRON**
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1  at a mortgage foreclosure sale was less than "reasonably equivalent value" under the bankruptcy

2  code. Just like the Bank in this case, the Chapter 11 debtor argued that because the property sold for

3  a fraction of its fair market value, the price paid was not reasonable. The Court held that "a

4  'reasonably equivalent value' for foreclosed real property is the price in fact received at the

5  foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied

6  with." <u>BFP</u>, 511 U.S. at 545. The Court explained that in a forced sale situation, "fair market value

7  cannot—or at least cannot always—be the benchmark[]' used to determine reasonably equivalent

8  value. <u>Id.</u> at 537.  This is so because the market conditions that generally lead to "fair market value"

9  do not exist in the forced sale context, where sales take place with significant restrictions:

> **[M]arket value, as it is commonly understood, has no applicability in the
> forced-sale context; indeed, it is the very antithesis of forced-sale value.** 'The
> market value of ... a piece of property is the price which it might be expected to
> bring if offered for sale in a fair market; not the price which might be obtained on
> a sale at public auction or a sale forced by the necessities of the owner, but such a
> price as would be fixed by negotiation and mutual agreement, after ample time to
> find a purchaser, as between a vendor who is willing (but not compelled) to sell and
> a purchaser who desires to buy but is not compelled to take the particular ... piece
> of property.' In short, 'fair market value' presumes market conditions that, by
> definition, simply do not obtain in the context of a forced sale.

15  <u>Id.</u> at 537-538, <u>quoting</u> Black's Law Dictionary 971 (6th ed. 1990)(emphasis added).  The Court

16  recognized that property sold in a forced sale context i.e. a foreclosure, "is simply worthless

17  [because] [n]o one would pay as much to own such property as he would pay to own real estate that

18  could be sold at leisure and pursuant to normal marketing techniques." <u>Id.</u> at 539. As the Court

19  further noted,

> **Unlike** most other legal restrictions, however, foreclosure has the effect of
> completely redefining the market in which the property is offered for sale; normal
> free-market rules of exchange are replaced by the far more restrictive rules
> governing forced sales. Given this altered reality, and the concomitant inutility of
> the normal tool for determining what property is worth (fair market value), the only
> legitimate evidence of the property's value at the time it is sold is the foreclosure-
> sale price itself.

24  <u>Id.</u> at 548-549 (emphasis in original).

25       While the <u>BFP's</u> analysis related to a mortgage foreclosure sale, other Courts have extended

26  the <u>BFP</u> analysis to tax-defaulted sales of real property with adherence to requirements of state law

27  where the statutes include requirements for public noticing of the auction and provisions for

28

competitive bidding. <u>See</u> <u>In re Tracht Gut, LLC</u>, 503 B.R. 804, 815-818 (9th Cir. B.A.P. 2014); <u>T.F. Stone v. Harper</u>, 72 F.3d 466 (5th Cir. 1995); <u>Kojima v. Grandote Int'l Ltd. Co</u>, 252 F.3d 1146 (10th Cir. 2001). Regardless of the type of sale, however, the analysis still aptly explains how market value cannot be compared to a forced sale transaction.

The price paid by SFR at auction was commercially reasonable.

**J.**   **The Bank's "Tender" Argument Fails Because it was a Conditional Offer of Payment**

The Bank argues that the Bank is entitled to summary judgment because the Bank tendered the amount of the Association's super-priority lien. <u>See</u> Mot.,23:14-16. The Bank is wrong.

Although Nevada has not defined the term "tender," other states within the Ninth Circuit have, and they have held that "tender" means the actual unconditional production of money. <u>See</u> <u>McDowell Welding & Pipefitting, Inc. v. United State Gypsum Company</u>, 320 P.3d 579, 585 (Or. Ct. App. 2014) ("To constitute a tender of money, the money must actually be produced and made available for the acceptance…" "The prospect that payment might occur at some point in the future is not sufficient for a court to conclude that there has been a tender…"); <u>Gaffney v. Downey Savings and Loan Association</u>, 246 Cal.Rptr. 421, 427 (Cal. Ct. App. 1988) ("[n]othing short of the full amount due the creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount."); <u>Allied Investments, Inc. v. Dunn</u>, 663 P.2d 300, 301 (Idaho 1983) ("a mere offer to pay does not constitute a valid tender…"); <u>Owens v. Idaho First National Bank</u>, 649 P.2d 1221, 1222-23 (Idaho Ct. App. 1982) ("a mere offer to pay does not constitute a valid tender, the law requires that the tenderer have the money present and ready, and produce and actually offer it to the party."); <u>Bembridge v. Miller</u>, 385 P.2d 172, 175 (Or. 1963) (tender requires the unconditional offer to pay the full amount of the debt and actual presentment of money); <u>Equitable Life Assur. Soc. of United States v. Boothe</u>, 86 P.2d 960, 962 (Or. 1939) (tender means "an unconditional offer of payment, consisting in the actual production, in current coin of realm, of a sum not less than the amount due.").

In the present case, the Bank never provided actual payment of the *total* amount due to either the association or the foreclosing agent, the firm who handled the foreclosure proceedings on behalf

**KIM GILBERT EBRON**
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

- 14 -

of the association.  Furthermore, the Bank conditioned the proposed payment by putting forth the condition that any endorsement of the cashier's check will be strictly construed as an unconditional acceptance and an express agreement that the lien has been paid in full. <u>See</u> Mot at., Ex. G-3. <u>As such, this conditional offer of payment is not "tender."</u>

If the Bank truly believed the Association did not comply with Nevada law in rejecting the Bank's conditional payment, then it was incumbent upon the Bank to assert a claim against the Association. But, as elaborated in SFR's Motion[16], under no circumstances must SFR show that the Association complied with Nevada law because NRS 116.31166 provides that recitals as to default, mailing of notice of delinquent assessment, recording notice of default, elapsing of 90 days and giving notice of sale are conclusive as to "the unit's former owner, his or her heirs and assigns, and all other persons." NRS 116.31166(2). But as the facts stand, the Bank's highly conditional payment of less than the association's lien does not cure or eliminate the association's super priority lien interest.

**K.**    **<u>SFR Can Rely on the Recitals in the Association Foreclosure Deed as Conclusive Proof of the Default and that Noticing was Proper, and the Sale is Presumptively Valid</u>**

In <u>SFR</u>, the Nevada Supreme Court recognized that a foreclosure deed "reciting compliance with notice provisions of NRS 116.31162 through NRS 116.31168 "is conclusive" as to the recitals "against the unit's former owner, his or her heirs and assigns and all other persons." <u>SFR</u>, 334 P.3d at 411-12, <u>citing</u> NRS 116.3116.31166(2). In fact, the statute actually goes further, stating that the recitals "are **conclusive proof** of the matters recited." NRS 116.31166(1).

While the Bank is likely to rely on <u>Shadow Wood</u> to attack SFR's position on the conclusive recitals, nowhere in *Shadow Wood* did the Nevada Supreme Court declare that deed recitals are not conclusive to the matters recited pursuant to NRS 116.31166(1). The Nevada Supreme Court merely allowed competing evidence to be introduced *if the action was in equity*. See <u>Shadow Wood</u> 366 P.3d at 1110. This is in complete support of the plain language of NRS 116.31166(1) which reads:

---

[16] Section B, at 9:1 through 12:17.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

The conclusive nature of the recitals is supported by NRS 116.31166(1).

1.  The recitals in a deed made pursuant to <u>NRS 116.31164</u> of:
    (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
    (b) The elapsing of the 90 days; and
    (c) The giving of notice of sale,
 are conclusive proof of the matters recited.

Given the conclusive nature of the recitals the Bank has the burden to overcome the conclusive presumption of the foreclosure deed recitals with evidence of fraud, unfairness and oppression. <u>Shadow Wood</u> 366 P.3d at 1110. In other words, the requirement that an association foreclosure sale be "properly, lawfully and fairly" carried out does <u>not</u> mean that a third party purchaser must provide evidence that a security interest holder was provided adequate notice and that the security interest holder was not thwarted in its attempts to cure the super priority lien. In fact, the recitals, in and of themselves are conclusive. "If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is **conclusive** as to a bona fide purchaser." <u>Moeller v. Lien</u>, 25 Cal.App.4th 822, 831-32 (emphasis added); <u>see also</u>, 4 Miller & Starr, Cal. Real Estate (3d ed. 2000) Deeds of Trust and Mortgages § 10:211, pp. 647-652; 2 Bernhardt, Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 2d ed. 1990) § 7:59, pp. 476-477). The "conclusive proof" standard "cannot be overcome by any additional evidence or argument." <u>Employers Ins. Co. of Nev. v. Daniels</u>, 122 Nev. 1009, 1016 n. 15, 145 P.3d 1024 (2006) (<u>citing</u> Black's Law Dictionary 1223 (8th ed. 2004)).

This conclusive proof is key because "[t]he conclusive presumption precludes an attack by the trustor on the trustee's sale to a bona fide purchaser **even where the trustee wrongfully rejected a proper tender of reinstatement** by the trustor[,]" and even where "the sale price was only 25 percent of the value of the property. . . ." <u>Moeller</u>, 25 Cal.App.4th at 831-33 (emphasis added). In Nevada, unlike California, the conclusive proof does not require that the purchaser be a BFP to rely on the recitals. <u>See</u> <u>Pro-Max Corp. v. Feestra</u>, 117 Nev. 90, 95, 16 P.3d 1074, 1077-78 (2001), opinion reinstated on reh'g (Jan. 31, 2001) (holding that no limitation of a bonafide purchaser can be read into a statute providing a conclusive presumption). As such, SFR need only present the deed

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

and its recitals as evidence that the Association sale was properly, lawfully, and fairly conducted.[17] The Bank cannot challenge the conclusive recitals as against SFR.[18]

However, even if the conclusive proof of the recitals is not enough, (which it is), it is undisputed that the Bank received all the necessary notices with respect to the Association sale. Mot., Ex. G-3. Despite receiving all the necessary notices, the Bank did not properly protect its interest. The Bank alleges it paid the super-priority portion of the lien, but the Association rejected this payment because it was the incorrect amount. But even if this payment was wrongfully rejected, the conclusive proof of the recitals "precludes an attack by the trustor on the trustee's sale to…**even where the trustee wrongfully rejected a proper tender of reinstatement** by the trustor." Moeller, 25 Cal.App.4th at 831-33. Additionally, this irregularity (assuming it can even be called that) in the proceedings of the sale itself, is something of which SFR had no knowledge. This is particularly true because the Bank never recorded any document stating that the super-priority portion was paid. SFR's Mot., Ex. 2, ¶ 10. As such, according to the Nevada Supreme Court's binding interpretation of NRS 116.3116(2), because the Bank did not cure the deficiency after notice of the properly conducted Association foreclosure sale, the first deed of trust was extinguished. Therefore, the Bank's motion for summary judgment should be denied.

## L.    SFR is a Bona Fide Purchaser for Value.

As elaborated in SFR's Motion, even if the Bank could somehow conjure up evidence to support its position that the Association sale was invalid, SFR has the valid defense of being a bona fide purchaser for value (BFP). SFR's Mot., 18:17-21. To be clear, Nevada law does not require that SFR be a BFP, but if there were any irregularities with the Association sale, as long as these irregularities were not known to SFR, they cannot be imputed to SFR. In that regard, SFR can rely

---

[17] Although, as set forth more fully below, SFR is a bona fide purchaser for value.

[18] However, as discussed in SFR's Motion, while the Bank is precluded from having the foreclosure sale declared void, the Bank may still recover damages from the trustee conducting the sale. Munger v. Moore, 11 Cal.App.3d 1, 89 Cal.Rptr. 323 (1970). In other words, the Bank's remedy, if one is required, is damages. To the extent that BANA suggests, even by inference, that taking title subject to the first deed of trust is an option, the statute does not provide such an option. Unless the Bank can demonstrate actual fraud, unfairness, or oppression **by the purchaser** at the publically advertised and held auction, the purchaser should not be subject to any acts that would set aside its unencumbered deed.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

on the defense that it was a bona fide purchaser, although not required by Nevada law in the first instance. A BFP purchases real property: (i) for value; and (ii) without notice of a competing or superior interest in the same property. Berge v. Fredericks, 591 P.2d 246, 247 (Nev. 1979). A "purchaser for value" is one who has given "valuable consideration" as opposed to receiving the property as a gift. Id. at 248; Allen v. Webb, 485 P.2d 677, 680 (Nev. 1971)("A specific finding of what the consideration was may be implied from the record."). Finality in foreclosure sales to bona fide purchasers is required to avoid chilled bidding. These continued attacks by the lenders on the association sales cause the very issues with price that the lenders then complain of in their attacks on commercial reasonableness.

In the present case, SFR paid valuable consideration for the Property at the foreclosure sale. At the time of the sale, SFR had no notice of a competing or superior interest in the Property where the public records showed only that (1) a deed of trust was recorded after the Association perfected its lien by recording its declaration of CC&Rs; and (2) there was a delinquency by the borrowers, which resulted in the Association instituting foreclosure proceedings, and after complying with NRS Chapter 116, sold the Property at a public auction. Between the date of the Notice of Sale was recorded, and the date SFR purchased the Property, the Bank never recorded a lis pendens or other document alleging any problems with the foreclosure process or the foreclosure sale. SFR's Mot., Ex. 2, ¶¶ 6, 10.

Additionally, SFR has no relationship with the Association or the Association's foreclosing agent, except as a purchaser of Property. Id., Ex. 2, ¶¶ 11, 12. Therefore, SFR could not have known to any purported irregularities in the foreclosure process that were known by the Association or Foreclosing. Nevertheless, the Bank has not alleged any facts or introduced admissible evidence that SFR had any knowledge precluding it from BFP status, other than an impotent deed of trust.

Even if the Bank could present some credible evidence that SFR somehow knew that the Bank's interest was superior for some reason other than the Bank's faulty interpretation of the NRS Chapter 116, the Bank would still have to prove that SFR was not a BFP **and** that SFR somehow induced the Association to fraudulently sell the Property to it. Bailey v. Butner, 64 Nev. 1, 8-9, 176 P.2d 226, 229-230 (1947).  There is absolutely no evidence of fraud, oppression or unfairness and

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

therefore, the Bank's Motion should be denied.

### M.   The Bank Cannot Raise a Facial or an As Applied Challenge because it Received Actual Notice

The Bank claims that the failure of NRS 116 is that it did not require actual notice to Lenders. Here, the Bank made an attempt of payment, albeit highly conditional and of less than the lien amount, but this surely proves that the Bank had actual notice of the association's lien and pendency of the foreclosure action.[19]  Thus, the Bank lacks standing to assert a facial challenge. Wiren v. Eide, 542 F.2d 757, 762 (9th Cir. 1976) ("receipt of actual notice deprives [appellant] of standing to raise the claim" that the statutory notice scheme violated due process); Green Tree Servicing, LLC v. Random Antics, LLC, 869 N.E.2d 464, 470-71 (Ind. Ct. App. 2007) (where one receives actual notice cannot claim that the noticing provisions of the statute are unconstitutional). Any irregularity in notice does not violate due process where one has actual notice of the action to be taken. See United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 272 (2010) (debtor's failure to serve a summons and complaint does not violate due process where creditor received "actual notice of the filing and contents of [debtor's Chapter 13] plan."); see also In re Medaglia, 52 F.3d 451, 455-56 (2d Cir. 1995) ("[D]ue process is not offended by requiring a person with actual, timely knowledge of an event that may affect a right to exercise due diligence and take necessary steps to preserve that right.") (cited with favor in SFR, 334 P.3d at 418).  Here, the Bank received the notices and chose to allow the Association sale to proceed. It cannot claim injury as a result of the noticing provisions of the statute.

### N.   The Bank Fails to Do a Proper Analysis Required to find a State Actor

In order for due process to be implicated, there must be a state actor. Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001). A state action requires *both* an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," *and* that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." Am. Mfr. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999). If a state actor is not

---

[19] See Mot. Ex. G-3.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

involved, then due process—including concerns about "notice"—is inapplicable. *Id.*; Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982) ("If the action of the respondent school is not state action, our inquiry ends.").

The burden of proving a state actor is on the party claiming a deprivation of a constitutionally protected interest. Flagg Bros., Inc. v. Lefkowitz, 436 U.S. 149, 156 (1978). Such a burden is steep, hinging on a "necessarily fact-bound inquiry[.]" Brentwood, 531 U.S. at 298.

Further, United States Supreme Court has determined a right's origins (i.e. statutory or common law) do not dictate whether a private entity is a state actor. S.F. Arts & Athletics, Inc. v. USOC, 483 U.S. 522, 547 (1987) ("Nor is the fact that Congress has granted the USOC exclusive use of the word 'Olympic' dispositive. All enforceable rights in trademarks are created by some governmental act, usually pursuant to a statute or the common law. The actions of the trademark owners nevertheless remain private."). Similarly, that Court has never held the enactment of a remedy transforms a private entity into a state actor. Am. Mfr. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 53 (1999) ("We have never held that the mere availability of a remedy for wrongful conduct, even when the private use of that remedy serves important public interests, so significantly encourages the private activity as to make the State responsible for it."). [20]

---

[20] The Bank's reliance on J.D. Constr., Inc. v. Ibex Int'l Grp., LLC, 126 Nev. ___, 240 P.3d 1033 (2010) is equally misplaced for several reasons. First, the J.D. Construction court did not do a full state actor analysis. For constitutional due process to be implicated there must be both a state action and a state actor. Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001). If there is no state actor, then due process—including concerns about "notice"—is inapplicable. Id.; Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982) ("If the action of the respondent school is not state action, our inquiry ends."). The Bank's Motion ignores these requirements entirely. This is so because in order for due process to be implicated, there must be a state actor. Moreover, **the burden of establishing a state actor is on the party claiming a deprivation of a constitutionally protected interest.** Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 156 (1978). Such a burden is steep and "necessarily fact-bound [.]" Brentwood, 531 U.S. at 298. Any attempt to overcome these failings in a subsequent filing should be disregarded by the Court. Furthermore, J.D. Construction involved parties using state-created mechanic's liens procedures in conjunction with overt and significant assistance from state officials (i.e. courts). For example, J.D. Construction assessed 108.2275's procedures for a property owner to expunge a mechanic's lien, which include: moving to dismiss the lien in court, submitting affidavits and documentary evidence to the court in support of a court-filed motion to expunge, providing notice of a court-ordered hearing, attending the court-ordered hearing, and abiding by a subsequently issued court order. J.D. Constr., 240 P.3d at 1038. Here, Association enforced its lien through non-judicial foreclosure without a state official's overt and significant assistance. The absence of a state official's overt and significant assistance distinguishes the instant matter from J.D. Constr. and Connolly. Additionally, J.D. Constr. evaluated the constitutional sufficiency of *procedures*. J.D. Constr., 240 P.3d at 1037 ("Second, we conclude . . . this procedure satisfies due process[.]"). This is why J.D. Constr. relied on Mathews v. Eldridge, 424 U.S. 319 (1976), the United States Supreme Court's test for determining whether procedures satisfy due process. But if a party targets the "adequacy of the

1    Here, the Bank has offered no evidence that Association is a state actor. Instead, the Bank

2    tries to equate the enforcement or foreclosure of a lien as state action. Bank's Mot. 13:11-12 <u>citing</u>

3    <u>Barry Properties v. Fick Bros.</u>, 353 A.2d 222, 232 (Md. 1976). However, the Bank's reliance on

4    <u>Barry</u> is flawed. The <u>Barry</u> Court failed to address whether "the party charged with the deprivation

5    [is] a person who may fairly be said to be a state actor." <u>Sullivan</u>, 526 U.S. at 50. Pursuant to the

6    public function test, a private entity can be treated as a state actor if the entity performed a function

7    that has been traditionally the **exclusive** function of the state. <u>Flagg Bros.</u>, 436 U.S. at 158 ("While

8    many functions have been traditionally performed by governments, very few have been

9    'exclusively reserved to the State.'") (emphasis added). Exclusivity is the test's *sine qua non*.

10   <u>Rendell-Baker</u>, 457 U.S. at 842.

11       Here, the Bank fails to focus its analysis on the very act that deprived it of its property

12   interest – **the decision to foreclose** and act of foreclosure. As one federal district court noted, "the

13   power to impose fines or enforce liens are not traditional and exclusive governmental functions."

14   <u>Snowdon</u>, 2:08-cv-01094-RCJ-PAL, at 14:14-15 ("[Association] did not perform the traditional

15   and exclusive public function of municipal governance." (internal citation omitted)). The United

16   States Supreme Court has never held that the enactment of a remedy transforms a private entity

17   into a state actor. <u>Sullivan</u>, 526 U.S. at 53 ("We have never held that the mere availability of a

18   remedy for wrongful conduct, even when the private use of that remedy serves important public

19   interests, so significantly encourages the private activity as to make the State responsible for it.").

20   Indeed, the United State Supreme Court held in <u>Flagg Bros.</u> that New York's enactment of UCC

21   7-210 did not significantly encourage a warehouse owner's decision to send a letter threatening to

22   sell belongings. <u>Flagg Bros.</u>, 436 U.S. at 165. Instead, the Court recognized that a State's mere

23   acquiescence in private conduct does not constitute state action and enacting a statute to permit

24   such action does not constitute "encouragement" or compulsion. <u>Id.</u> Indeed, the 9th Circuit has

25   held that merely enacting statutes that provide a framework for non-judicial foreclosure under NRS

26

27   method used to give notice," then <u>Mullane</u>, and not <u>Mathews</u> controls. <u>Dusenbery</u>, 534 U.S. at 168 (citing
     <u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306 (1950)). Here, Bank attacks 116's notice

28   provisions. As a result, <u>Mullane</u> governs, a case Bank misuses. Hence, Bank misuses <u>J.D. Constr.</u>

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1   107 does not transform that private act into a state action. <u>Charmicor, Inc. v. Deaner</u>, 572 F.2d

2   694, 695 (9th Cir. 1978)  "[T]he statute creates only the right to act; it does not require that such

3   action be taken." Id. Interestingly, the Bank acts as though <u>Flagg Bros.</u> does not exist; most of the

4   Bank's cases predate that decision, thereby calling into question their persuasive value.

5       All told, nothing requires or compels an association to foreclose. That decision is purely

6   private. 116.3102(3) (granting the executive board the authority to determine whether to take

7   enforcement action to collect unpaid assessments).

8       Additionally, the Bank erroneously believes that NRS 116's mere enactment is state action

9   for purposes of due process. Supreme Court cases reject this belief. For example, a right's origins

10  (i.e. statutory or common law) do not dictate whether a private entity is a state actor.  <u>S.F. Arts &</u>

11  <u>Athletics, Inc. v. USOC</u>, 483 U.S. 522, 547 (1987) ("Nor is the fact that Congress has granted the

12  USOC exclusive use of the word 'Olympic' dispositive. All enforceable rights in trademarks are

13  created by some governmental act, usually pursuant to a statute or the common law. The actions

14  of the trademark owners nevertheless remain private."). Similarly, the Supreme Court has never

15  held that the enactment of a remedy transforms a private entity into a state actor. <u>Sullivan</u>, 526

16  U.S. at 53 ("We have never held that the mere availability of a remedy for wrongful conduct, even

17  when the private use of that remedy serves important public interests, so significantly encourages

18  the private activity as to make the State responsible for it."). In sum, Association is not a state

19  actor, negating the Bank's due process concerns.

20      O.      <u>If the Association is Classified as a State Actor the Ramifications Would Be</u>
                <u>Absurd</u>

21

22      If the Association is a state actor it will significantly increase the amount of government

23  intrusion into private decisions and relationships. <u>Brentwood</u>, 531 U.S. at 295 (state actor

24  requirement preserves area of individual freedom); <u>Sullivan</u>, 526 U.S. at 53; <u>Blum v. Yaretsky</u>,

25  457 U.S. 991, 1004 (1982); <u>Moose Lodge No. 107 v. Irvis</u>, 407 U.S. 163, 172 (1972) ("In 1883,

26  this Court in the <u>Civil Rights Cases</u> . . . set forth the essential dichotomy between discriminatory

27  action by the State, which is prohibited by the Equal Protection Clause [of the Fourteenth

28  Amendment], and private conduct, 'however discriminatory or wrongful,' against which that

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

clause 'erects no shield.'") (internal citations omitted). Indeed, eroding the state actor requirement will cause the government to become more involved in private decisions and relationships. Id.

For example, this "position would render every apartment complex, hotel, and resort throughout this country a state actor and open them to a whole new assault of litigation[.]" Snowdon v. Preferred RV Resort Owners Ass'n, 2:08-cv-01094-RCJ-PAL, at 13:12-13 (D. Nev. Apr. 1, 2009), aff'd No. 09-15877, 379 F. App'x 636, 2010 WL 1986189 (9th Cir. May 18, 2010) (unpublished).[21] Previously private relationships and decisions would be subjected to the rigors of due process. Such a move would increase litigation in Nevada and make corporate and private Nevadans extremely susceptible to liability. The absurdity of this position cannot be stressed enough; it would mean non-judicial foreclosures via NRS 107 would have to comport with due process, something the Ninth Circuit repudiated. Charmicor, 572 F.2d at 696.

### P.   The Noticing Statutes are Constitutional

#### 1.   *Standard for a Constitutional Challenge*

The Bank cannot meet the high standard of showing that NRS 116's noticing provisions are unconstitutional. Whether a statute is constitutional is a question of law. Flamingo Paradise Gaming, LLC v. Chanos,  217 P.3d 546, 551 (Nev. 2009). "'Statutes are presumed to be valid, and the challenger bears the burden of showing that a statute is unconstitutional.'" Id. quoting Silvar v. Dist. Ct., 129 P.3d 682, 684 (Nev. 2006).

The Bank must show there is "no set of circumstances under which the statute would be valid." Déjà vu Showgirls v. State, Dept. of Tax., 334 P.3d 392, 398 (Nev. 2014); see Flamingo Paradise Gaming, 217 P.3d at 552 (citing Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 449 (2008) (noting reaffirmance of the requirement that a statute be void in all its applications to be successful, when civil statutes are at issue). Courts disfavor facial challenges because they rest on speculation, and "run contrary to the fundamental principle of judicial restraint that courts should neither "'anticipate a question of constitutional law in

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

---

[21] If the Bank has its way, then every alleged deprivation of property caused by a casino must satisfy due process, an impractical result that will burden, if not cripple, Nevada's most important industry.

1   advance of the necessity of deciding it'" nor "'formulate a rule of constitutional law broader than

2   is required by the precise facts to which it is to be applied.'" <u>Washington State Grange</u>, 552 U.S.

3   at 450-51.

4        "The most fundamental principle of constitutional adjudication" is the constitutional

5   avoidance doctrine. <u>United States v. Lovett</u>, 328 U.S. 303, 320 (1946) (Frankfurter, J., concurring);

6   <u>Ashwander v. Tenn. Valley Auth.</u>, 297 U.S. 288, 341, 346-48 (1936) (Brandeis, J., concurring).

7   Courts "will not decide the constitutionality of a statute based upon a supposed or hypothetical

8   case which might arise thereunder." <u>Carlisle v. State</u>, 642 P.2d 596, 598 (Nev. 1982).  Thus, courts

9   must "avoid considering the constitutionality of a statute unless it is absolutely necessary to do

10  so." <u>Sheriff v. Andrews</u>, 286 P.3d 262, 263 (Nev. 2012).

### 2.   <u>*The Nevada Supreme Court Already Decided the Issue*</u>

12       The Bank acts as if the Nevada Supreme Court never issued the <u>SFR</u> opinion. They are

13  wrong in limiting what that case decided. <u>SFR</u> demonstrated at least one circumstance in which

14  the statute was valid, and therefore, its facial challenge cannot stand. <u>Washington State Grange</u>,

15  552 U.S. at 449. The inquiry should stop here.

16       Second, the Nevada Supreme Court did both a facial and as-applied analysis, rejecting

17  both. Both the majority and dissent recognized that notice must be sent to all junior lienholders,

18  noting the incorporation of NRS 107.090(3)(b),(4) which, in the case of a bank foreclosure sale,

19  requires notice of default and notice of sale to "[e]ach other person with an interest whose interest

20  or claimed interest is subordinate to the deed of trust." <u>SFR</u>, 334 P.3d at 411, 422. In an association

21  foreclosure sale those words must be read as notice to those with liens subordinate to the

22  association's lien.

23       Further, the majority rejected the lender's due process arguments as "protean," and non-

24  starters, noting that since Chapter 116 was adopted in 1991, the lender "was on notice that by

25  operation of the statute, the [earlier recorded] CC&R's might entitle the HOA to a super priority

26  lien at some future date which would take priority over a [later recorded] first deed of trust." <u>Id.</u> at

27  418 (<u>quoting with approval</u> <u>7912 Limbwood Court Trust v. Wells Fargo Bank, N.A.</u>, 979 F. Supp.

28  2d 1142, 1152 (D. Nev. 2013) (rejecting a due process challenge to a non-judicial foreclosure of a

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1    super priority lien)).[22] "To the extent U.S. Bank argues that a statutory scheme that gives an HOA

2    a super priority lien that can be foreclosed nonjudicially thereby extinguishing an earlier filed deed

3    of trust, offends due process, the argument is a nonstarter."[23] Id. at 418. The Bank's motion should

4    be denied with prejudice.

5                    3.    **_The Statutes Require Notice to All Junior Lienholders of Record_**

6                    Due process, if it applied here, would require only that the noticing provisions be

7    "reasonably calculated . . . apprise interested parties of the pendency of the action[.]" Mullane, 339

8    U.S. at 314. If a notice identifies an event that will impact an individual's property interest, then

9    due process is satisfied. Espinosa, 559 U.S. at 272 (bankruptcy plan's filing and contents); Jones,

10   547 U.S. at 239 (tax sale); Dusenbery, 534 U.S. at 168 (cash forfeiture); Mennonite, 462 U.S. at

11   798 (tax sale).  Here, the Association's notices satisfied due process because, as set forth fully

12   above, they were "reasonably calculated . . . to apprise [the Bank] of" the pendency of the

13   Association's foreclosure.

14                   Further, the Bank's attempt to have this Court construe the statute as "opt-in" is unavailing.

15   First, as discussed above, the Nevada Supreme Court has already recognized that NRS 116.31168

16   incorporates the whole of NRS 107.090. Additionally, the Bank's reading of the statutes requires

17   this Court to ignore the constitutional avoidance doctrine and limit the meaning of the plain words.

18   While the Bank claims that the statutes require notice only to the unit owner and those other

19   persons who request it, the Bank is wrong.  The Bank's attempt to limit the provisions of NRS

20   107.090 to only the persons who request notice belies the Legislature's incorporation of the statute

21   as a whole and to limit the language of subsection 3(b) to those with interests subordinate to the

22   deed of trust. Finally, the Bank's reliance on Small Engine to support its "opt-in" argument is

23   misplaced and ignores the actual holding of the case.  The Small Engine court, out of adherence to

---

24   [22] Limbwood recognized the notices as "statutorily required" to be sent to the lender. Limbwood,
25   979 F. Supp. 2d at 1152 ("To the extent [the Bank] contends [the Association] failed to provide
     the required notices. . . .").
26   [23] In denying U.S. Bank's motion for reconsideration, the Court considered and rejected additional
     facial challenges made by amici in support of the motion. SFR Investments Pool 1, LLC v. U.S.
27   Bank, N.A., No. 63078, Order Denying Rehearing, at 2 n.1 (Nev. Oct. 16, 2014), available at
     http://caseinfo.nvsupremecourt.us/public/caseView.do?csIID=31261, document number 14-
28   34519.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

the constitutional avoidance doctrine, articulated a way for courts to read "request-notice" statutes constitutionally.[24] <u>Small Engine Shop, Inc. v. Cascio</u>, 878 F.2d 883, 890 (5th Cir. 1980). And the Louisiana statutes lacked a provision similar to NRS 107.090. <u>See</u> La. Code Civ. P. Art. 2721; La. Rev. Stat. 13:3886. Here, under <u>Small Engine</u>, NRS 116's request-notice provisions are constitutional, especially when construed in conjunction with Nevada's recording laws, (NRS Chapter 111)[25], and with the requirements of NRS 116.31168 and NRS 107.090.

In sum, the non-judicial noticing requirements of NRS 116 require notice to lenders. The Bank simply refuses to acknowledge that its own actions caused its loss, not those of the Association, its agent, and certainly not those of SFR. This is especially so in light of the fact that the recitals in the Association foreclosure deed are conclusive as to the noticing and that the Bank failed to provide any admissible evidence to rebut that conclusion.

**Q.      *Chevron Oil* is Not Applicable to the SFR decision.**

The Bank argues that <u>SFR</u> should not be applied retroactively, specifically that <u>Chevron Oil</u>[26] prevents this Court from "retroactively" applying <u>SFR</u>. Mot., pp. 22-23. Because this argument has never been claimed or asserted as an affirmative defense, this argument is waived and should be disregarded. NRCP 8(a)-(c), 12. However, should the Court nevertheless entertain this waived argument by the Bank, <u>Chevron Oil</u> is inapplicable because it dealt with retroactively applying new rules of law. <u>Chevron Oil</u>, 404 U.S. at 106-107; <u>see also</u> <u>Harper v. Va. Dep't of Taxation</u>, 509 U.S. 86, 90, 94-95 (1993). Contrastingly, <u>SFR</u> involved statutory construction, an issue devoid of the retroactivity concerns discussed in <u>Chevron Oil</u>. Retroactivity concerns are removed from the statutory construction context. <u>Morales-Izquierdo v. Dept. of Homeland Sec.</u>, 600 F.3d 1076, 1087-88 (2010) (overruled in part on other grounds by <u>Garfias-Rodriguez v. Holder</u>, 702 F.3d 504, 516

---

[24] Furthermore, the Fifth Circuit also recognized that under Louisiana's statute, the state doing the deprivation through statute and the use of the sheriff. <u>Small Engine</u>, 878 F.2d at 893 ("The provision gives property owners, whose identities a reasonably diligent, responsible **state actor** could not reasonably ascertain. . . .") (emphasis added)).

[25] The Bank insists that <u>Small Engine</u> struck down a "request-notice" statute as unconstitutional; this disregards that case's admonition that "[b]ecause Small Engine did not request notice under La.Rev.Stat.Ann. 13:3886, we do not decide whether the provisions of the statute are constitutional in their entirety." <u>Small Engine</u>, 878 F.2d at 893 n.9.

[26] <u>Chevron Oil Co. v. Huson</u>, 404 U.S. 97, 106-107 (1971).

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

(2012)). Judicial interpretations are given "[f]ull retroactive effect[.]" <u>Morales-Izquierdo</u>, 600 F.3d at 1008 (quoting <u>Harper</u>, 509 U.S. at 97). Here, <u>SFR</u> construed NRS 116.3116. Consistent with the aforementioned authorities, <u>SFR</u> can—and should—be applied retroactively.

Further, Judge Jones' analysis in <u>Christiana Trust v. S&P Homes, et al.</u>,[27] wherein he analyzed the <u>Chevron Oil</u> factors in determining that <u>SFR</u> should not be applied retroactively, is flawed for several reasons. In fact, application of the three <u>Chevron Oil</u> factors to the <u>SFR</u> decision would not result in applying it "nonretroactively" [prospectively] only. <u>Id.</u>

First, <u>SFR</u> did not establish a new principle of law, either by *overruling clear precedent* or by deciding an issue of first impression whose resolution was *not clearly foreshadowed*. Rather, <u>SFR</u> **confirmed what was already established law** in NRS 116.3116 – that a portion of an association's lien is senior to the first deed of trust, that an association can non-judicially foreclose on its lien, and that said foreclosure would extinguish junior liens. The notion that the Bank could not foresee that the first deed of trust would be extinguished under NRS 116.3116 is ludicrous and disingenuous; 116.3116 "clearly foreshadowed" this result. <u>Christiana Trust</u>, 2015 WL 6962860 *9. Second, analyzing the second prong, nonretroactive (prospective) application would retard operation of the rule by disarming association and investor reliance on the plain language and meaning of NRS 116, and would result in the same "sharp disagreement" that gave rise to the <u>SFR</u> decision in the first place. <u>SFR</u>, 334 P.3d at 412. Retroactive application, on the other hand, would further the purpose of the rule in ensuring associations get paid by allowing their pre-<u>SFR</u> foreclosure sales to stand. Conversely, not applying <u>SFR</u> retroactively would retard operation of the rule by potentially eliminating associations' remedies for a homeowner's failure to pay his/her assessments, or a bank's failure to protect its interest pursuant to the plain language of NRS 116.3116 or at least the provisions of its Planned Unit Development Rider. Thus, by invalidating the pre-<u>SFR</u> foreclosure sales, the associations may have lost the ability to foreclose upon their liens pursuant to NRS 116, and in turn may have lost the money they recovered during those foreclosure sales to cover the delinquencies,

---

[27] <u>Christiana Trust v. S&P Homes, et al.</u>, No. 2:15-cv-01534-RCJ-VCF, 2015 WL 6962860 (D. Nev. Nov. 9, 2015). The holding is not from "this Court" as the Bank contends. Bank's Mot., 14. This Court certainly need not follow the holding of that case.

depending on the flip of the coin decision of their judge.   Third, analysis of the third prong, inequitable result, is flawed because it directly contradicts the prior rulings of that court regarding due process,[28] and relies on assumptions and arguments already refuted by SFR herein, particularly with regard to the understanding of the effect of the extinguishment rule pre-SFR, the sales price and other due process arguments.

In sum, the Bank has waived its right to assert this argument as a claim or defense.  However, Chevron Oil is nonetheless distinguishable from SFR in that the latter dealt with statutory construction of an existing law and not application of a new rule of law.  Further, applying the Chevron Oil factors to the SFR decision, as attempted in Christiana Trust, actually results in favor of retroactive application.  Summary judgment should be denied as to the Bank, and summary judgment in favor of SFR is appropriate.

### R.   There is No Genuine Issue of Material Fact regarding the Circumstances Surrounding SFR's Slander of Title Claim

As discussed fully in SFR's Motion,[29] the evidence is undisputed that the Bank publically recorded documents against the Property, purporting to retain an interest, despite already having knowledge of the SFR decision and the Association's foreclosure sale wherein SFR obtained title.  Based on the undisputed evidence, the Bank has slandered SFR's title to the Property and summary judgment is appropriate.

The Bank then alleges that SFR cannot show the Bank knew the Deed of Trust was extinguished when it recorded the Assignment and Request.Mot. 26:18-20. However, it is undisputed that the Foreclosure Deed conveying the Property to SFR was recorded with the Clark County Recorder on January 3, 2013. SFR's Mot. Ex. 1-A at [CMS038-040]; Ex. 2-A. Further, as discussed above, on September 18, 2014, the Nevada Supreme Court issued its opinion in SFR, concluding that NRS 116.3116(2) gives associations a true super priority lien, the non-judicial foreclosure of which extinguishes a first deed of trust. SFR, 334 P.3d at 419. As a result, the Bank

---

[28] Judge Jones himself has already *rejected* the argument that NRS 116.3116 violates due process.  See Nationstar Mortgage, LLC v. Rob and Robbie, LLC, Case No. 2:13-cv-01241-RCJ-PAL, 2014 WL 3661398 *3 (D. Nev. July 23, 2014) (emphasis added).

[29] SFR's Mot., pp. 24-25.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1    knew that its First Deed of Trust had been extinguished by the Association's non-judicial foreclosure

2    sale. Id. Nonetheless, the Bank proceeded to record an Assignment, purporting to assign an interest

3    in a defunct deed of trust to Carrington, on January 29, 2015. Ex. 1-B, at [BANA (Juergens) 148-

4    149]. In light of the chain of title and the SFR Decision, the statements contained in these documents

5    were **false**.

6         Additionally, malice occurs when "the defendant knew that the statement was false or

7    acted in reckless disregard of its truth or falsity. Id. (citing Howard v. Schaniel, 113 Cal.App.3d

8    256, 169, Cal.Rptr. 678 (Ct.App.1980); Pecora v. Szabo, 94 Ill.App.3d 57, 49 Ill.Dec. 577, 418

9    N.E.2d 431 (Ill.App.Ct.1981); Restatement (Second) of Torts § 623A (1977); Restatement (Second)

10   of Torts § 624 (1977).)  Here, in light of the SFR Decision, the Bank knew that the First Deed of

11   Trust was extinguished; consequently, they **knew** that the statements contained in the Assignment,

12   suggesting that the deed of trust was still valid, were false. Rowland, 662 P.2d at 1335; SFR, 334

13   P.3d at 419 (emphasis added). Further, while a defendant with "reasonable grounds for belief in

14   his claim . . . has not acted with malice[,]" here the SFR Decision made unequivocally clear that

15   the first deed of trust was extinguished. Rowland, 662 P.2d at 1335 (citing Merchants Nat. Bank

16   of Mobile v. Steiner, 404 So.2d 14 (Ala.1981); Whildin v. Kovacs, 82 Ill.App.3d 1015, 38 Ill.Dec.

17   463, 403 N.E.2d 694 (Ill.App.Ct.1980)); see also SFR, 334 P.3d at 419. Furthermore, since the

18   Bank knew it received notice of the Association's foreclosure sale and did nothing to prevent it,

19   the Bank had **no reasonable grounds** to believe that the first deed of trust survived the foreclosure,

20   and it acted maliciously in proceeding with recording the Assignment against the Property.

21   Rowland, 662 P.2d at 1335 (emphasis added).

22        Lastly, the Bank alleges that SFR has not been harmed by any slander to title because SFR

23   was not going to sell the property and thus has not suffered any special damages. Mot. pp. 27:2-7.

24   This allegation is simply incorrect. SFR has been forced to litigate to clear its title to property that

25   it rightfully owns. Said differently, but for the wrongful act the Bank in slandering SFR's title, SFR

26   would not have incurred any expenses in removing the cloud from its title.  In sum, there is

27   undisputed evidence that the Bank slandered SFR's title and SFR has incurred damages as a result.

28

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1  As such, summary judgment in favor of SFR in this regard is appropriate and the Bank's motion

2  must be denied.

### III.   CONCLUSION

Based on the above, the Court should deny the Bank's motion for summary judgment as (1) SFR is the title holder of the Property, (2) the First Deed of Trust was extinguished when the Association foreclosed its lien containing super priority amounts, thus making the Bank's interest in the deeds of trust invalid, and (3) the Bank is liable for slander of title.

DATED this 11th day of April, 2016.

**KIM GILBERT EBRON**

*/s/* Jacqueline A. Gilbert, Esq.
Diana Cline Ebron, Esq.
Nevada Bar No. 10580
Jacqueline A. Gilbert, Esq.
Nevada Bar No. 10593
Karen L. Hanks, Esq.
Nevada Bar No. 9578
7625 Dean Martin Drive, Suite 110
Las Vegas, Nevada  89139
Phone: (702) 485-3300
Fax:    (702) 485-3301
*Attorneys for SFR Investments Pool 1, LLC*

**KIM GILBERT EBRON**
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of April, 2016, pursuant to FRCP 5, I served via the CM-ECF electronic filing system the foregoing **SFR INVESTMENTS POOL 1, LLC'S OPPOSITION  TO BANK OF AMERICA, N.A.'S MOTION FOR SUMMARY JUDGMENT ON SFR INVESTMENTS POOL 1, LLC'S SLANDER OF TITLE CLAIM** to the following parties:

Dana Jonathon Nitz, Esq.
Natalie C. Lehman, Esq.
WRIGHT, FINLAY, & ZAK, LLP
7785 W. Sahara Avenue, Suite 200
Las Vegas, Nevada 89117
dnitz@wrightlegal.net
nlehman@wrightlegal.net
*Attorneys for CARRINGTON MORTGAGE SERVICES, LLC*

 Donna M. Wittig, Esq.
Akerman LLP
1600 Town Center Drive, Suite 330
Las Vegas, NV 89144
donna.wittig@akerman.com
*Attorneys for BANK OF AMERICA, N.A.*

/s/  Zachary D. Clayton
An employee of Kim Gilbert Ebron

Kim Gilbert Ebron

- 31 -

**KIM GILBERT EBRON**
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of April, 2016, pursuant to FRCP 5, I served via U.S. Mail, postage pre-paid, the foregoing **SFR INVESTMENTS POOL 1, LLC'S OPPOSITION   TO BANK OF AMERICA, N.A.'S MOTION FOR SUMMARY JUDGMENT ON SFR INVESTMENTS POOL 1, LLC'S SLANDER OF TITLE CLAIM**, to the following persons at their last known addresses:

Samuel Raymond Juergens
1500 Karen Avenue, Apt. 100
Las Vegas, NV 89169
*/s/Jacqueline A. Gilbert*
An employee of Kim Gilbert Ebron

/s/   Zachary D. Clayton
An employee of Kim Gilbert Ebron

Kim Gilbert Ebron

- 32 -