DIANA CLINE EBRON, ESQ.
Nevada Bar No. 10580
E-mail: diana@KGELegal.com
JACQUELINE A. GILBERT, ESQ.
Nevada Bar No. 10593
E-mail: jackie@KGELegal.com
KAREN L. HANKS, ESQ.
Nevada Bar No. 9578
E-mail: karen@KGELegal.com
KIM GILBERT EBRON
7625 Dean Martin Drive, Suite 110
Las Vegas, Nevada 89139
Telephone: (702) 485-3300
Facsimile: (702) 485-3301
*Attorneys for SFR Investments Pool 1, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CARRINGTON MORTGAGE SERVICES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SFR INVESTMENTS POOL 1, LLC; OAK PARK HOMEOWNERS ASSOCIATION; NEVADA ASSOCIATION SERVICES, INC.,<br><br>Defendants. | Case No. 2:15-cv-01377-JCM-NJK<br><br>**SFR INVESTMENTS POOL 1, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT [Dkt. 44]** |
| SFR INVESTMENTS POOL 1, LLC, a Nevada limited liability company,<br><br>Counter-Claimant,<br><br>v.<br><br>CARRINGTON MORTGAGE SERVICES, LLC, a Delaware limited liability company; BANK OF AMERICA, N.A., a national association; and SAMUEL RAYMOND JUERGENS, an individual,<br><br>Counter-Defendant/Cross-Defendants. | |

- 1 -

SFR Investments Pool 1, LLC ("SFR") hereby files its Reply in support of SFR's Motion for Summary Judgment ("SFR's Mot.") [Dkt. 44] and in response to BANK OF AMERICA, N.A.'s ("BANA" or "the Bank") Opposition to Motion for Summary Judgment [Dkt. 50]. This Reply is based on the papers and pleadings on file herein, SFR's Opposition to the Bank's Motion for Summary Judgment ("Bank's Mot.") [Dkt. 52], incorporated herein by reference, the following memorandum of points and authorities, and any oral argument this Court may entertain.

**MEMORANDUM OF POINTS AND AUTHORITIES**

### I. INTRODUCTION

Nothing in the Bank's Opposition ("Bank's Opp.") provides a reason against granting summary judgment in favor of SFR: (1) Because there were no irregularities with the sale constituting fraud, unfairness, or oppression, the Bank cannot overcome the presumption that the foreclosure sale and resulting deed are valid, and SFR can rely on the conclusive recitals in the foreclosure deed; (2) The Bank's "tender" argument is flawed because it cannot send a conditional offer to pay less than the amount stated as owe, especially when the amount required to be paid has never been determined as a matter of law when an association is the foreclosing party, and think that it has satisfied the super-priority portion of the Oak Park Homeowner's Association's (the "Association") lien; (3) Even if it could, however, that would not affect the transfer of title free and clear of the Bank's interest to SFR as a bona fide purchaser; (4) The Bank, a lienholder, is not entitled to an equitable remedy; (5) The Bank's commercial reasonableness argument lacks merit since **price alone is never enough**, and there is no evidence of fraud, unfairness, or oppression; (6) The Bank's Supremacy Clause argument fails because it cannot use this clause to displace Nevada law, it lacks standing to enforce the National Housing Act ("NHA"), Federal Housing Administration ("FHA") insurance is not a federal property interest, and NRS 116 does not conflict with the policies and procedures of the U.S. Department of Housing and Urban Development ("HUD"); (7) The Bank's constitutional due process argument is a non-starter since due process is not implicated, but even if it were, the Bank lacks standing to assert it because it received actual notice. In addition, the issue was already decided by the Nevada Supreme Court in

SFR[1] ("SFR" or "the SFR decision"); (8) The Bank's retroactivity argument fails since the central case that the Bank relies upon is not even germane to the issues in this case; and finally (9) Contrary to the Bank's assertions, SFR can prevail on its slander of title claim because the Bank knew the statements contained in the Assignment of First Deed of Trust were false, or at least "acted with reckless disregard for the truth[,]" in light of the recorded Foreclosure Deed conveying title to SFR and the SFR decision. Rowland v. Lepire, 662 P.2d 1332, 1335 (Nev. 1983). As such, summary judgment should be granted in favor of SFR.

## II.   STATEMENT OF DISPUTED AND UNDISPUTED FACTS

SFR fully incorporates herein its Statement of Undisputed Facts from its Motion for Summary Judgment [Dkt. 44], as well as its Statement of Disputed Facts from its Opposition to the Bank's Motion for Summary Judgment [Dkt. 52]. These address the dispute SFR has with the Bank's Statement of Relevant Facts in its Opposition.

## III.   ARGUMENT

### A.   The Association Foreclosure Deed is Presumed Valid, and SFR Can Rely on the Recitals Contained Therein as Conclusive Proof of the Association's Compliance.

As fully discussed in SFR's Motion[2] and Opposition,[3] foreclosure sales and the resulting deeds are presumed valid. NRS 47.250(16)-(18) (stating that there are disputable presumptions "that the law has been obeyed"; "that a trustee or other person, whose duty it was to convey real property to a particular person, has actually conveyed to that person, when such presumption is necessary to perfect the title of such person or a successor in interest"; "that private transactions have been fair and regular"; and "that the ordinary course of business has been followed.") Further, a foreclosure deed issued pursuant to NRS 116.31164 that "recit[es] compliance with notice provisions of NRS 116.31162 through NRS 116.31168 "is conclusive" as to the recitals "against the unit's former owner, his or her heirs and assigns and all other persons." SFR, 334 P.3d at 411-

---

[1] SFR Investments Pool I, LLC v. U.S. Bank, N.A., 334 P.3d 408, 419 (Nev. 2014).

[2] SFR's Mot., [Dkt. 44] pp. 8-12.

[3] SFR's Opp., [Dkt. 52] pp. 15-17.

- 3 -

1  12 (citing NRS 116.31166(2)). Additionally, recorded title is presumed valid. Breliant v. Preferred
2  Equities Corp., 918 P.2d 314, 319 (Nev. 1996).

3  "A presumption not only fixes the burden of going forward with evidence, but it also shifts
4  the burden of proof." Yeager v. Harrah's Club, Inc., 897 P.2d 1093, 1095 (Nev. 1995) (citing
5  Vancheri v. GNLV Corp., 777 P.2d 366, 368 (Nev. 1989).) "These presumptions impose on the
6  party against whom it is directed the burden of proving that the nonexistence of the presumed fact
7  is more probable than its existence." Id. (citing NRS 47.180.).

8  To overcome the presumption of validity, the Bank must have pled and proven a claim for
9  fraud with particularity, or alleged some fraud, unfairness or oppression that is not overshadowed
10 by its own bad acts. Shadow Wood Homeowners Association, Inc. v. New York Community
11 Bancorp, Inc., 366 P.3d 1105, 1112-1114 (Nev. 2016); see also Bourne Valley Court Trust v. Wells
12 Fargo Bank, N.A., 80 F.Supp.3d 1131, 1135 (D.Nev. 2015). However, as fully elaborated in SFR's
13 Motion and Opposition, the Bank has not produced admissible evidence to prove such an allegation
14 that would allow the sale to be set aside. Thus, the Bank has waived any right to challenge the
15 sale.

16 Nonetheless, while the presumption of a regular and proper sale is rebuttable, the
17 presumption is **conclusive** as to a bona fide purchaser. See Moeller v. Lien, 30 Cal.Rptr.2d 777,
18 783 (Ct. App. 1994) (emphasis added); see also, 4 Miller & Starr, Cal. Real Estate (3d ed. 2000)
19 Deeds of Trust and Mortgages § 10:211, pp. 647-652; 2 Bernhardt, Cal. Mortgage and Deed of
20 Trust Practice (Cont.Ed.Bar 2d ed. 1990) § 7:59, pp. 476-477). This conclusive presumption is
21 key because it "precludes an attack by the trustor on the trustee's sale to a bona fide purchaser
22 even where the trustee wrongfully rejected a proper tender of reinstatement by the trustor[,]" and
23 even where "the sale price was only 25 percent of the value of the property. . ." Moeller, 30
24 Cal.Rptr.2d at 783. In addition, while here SFR is a bona fide purchaser for value,[4] under Nevada
25 law, it need not be a BFP to rely on the recitals as conclusive proof. See Pro-Max Corp. v.
26 Feenstra, 16 P.3d 1074, 1077-78 (2001), opinion reinstated on reh'g (Jan. 31, 2001)(holding that

---

28  [4] See SFR's Mot., Sec. III(F); SFR's Opp., Sec. III(L); and Sec. III(B) infra.

- 4 -

no limitation of bona fide purchaser can be read into a statute providing a conclusive presumption).

For these reasons, summary judgment in favor of SFR is appropriate.

**B.     SFR is a Bona Fide Purchaser for Value; Equity Lies in SFR's Favor.**

As fully discussed in SFR's Motion[5] and Opposition,[6] SFR is a bona fide purchaser although not required by Nevada law.  Thus, even if the Bank could somehow conjure up evidence of irregularities with the Association's sale, which it has failed to do, as long as SFR did not participate in causing the irregularities, they cannot be imputed to SFR.

A BFP is one who "takes the property 'for a valuable consideration and without notice of the prior equity. . . .'" Shadow Wood, 366 P.3d at 1115 (internal citations omitted). The fact that SFR "paid 'valuable consideration' cannot be contested.'" Id.  Furthermore, when, as here, it is uncontested that "the foreclosure sale complie[d] with the statutory foreclosure rules, as evidenced by the recorded notices, . . ., and without any facts to the contrary," then the mere knowledge that a former homeowner, or someone with a former interest in the property, could bring a suit in equity does not defeat SFR's BFP status. Id. at 1115-1116. Here, like the lender in Shadow Wood, the Bank does not dispute the default or that it received the required notices.  SFR had no knowledge of, nor did it participate in any purported irregularities.  SFR has no relationship with the Association or its foreclosure agent that would preclude it from BFP status.[7]

What the Bank seeks here is equity. However, as fully discussed in SFR's Motion[8] and Opposition,[9] a party that has a remedy at law is not entitled to equity. Las Vegas Valley Water Dist. v. Curtis Park Manor Water Users Ass'n, 646 P.2d 549, 551 (Nev. 1982). Unlike the lender in Shadow Wood, which was the titleholder of the property, Shadow Wood, 366 P.3d at 1107, here, the Bank has only a collateral interest for which it is entitled to money damages from

---

[5] SFR's Mot., pp. 18-20.

[6] SFR's Opp., pp. 17-19.

[7] SFR's Mot., Ex. 2, at ¶¶ 11, 12.

[8] SFR's Mot., p. 12.

[9] SFR's Opp., p. 15; p. 17, fn. 18.

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

whatever party injured it, not SFR.  Unless the Bank can demonstrate actual fraud, unfairness, or oppression **by the purchaser** at the publically advertised and held auction, the purchaser should not be subject to any acts that would set aside its unencumbered deed.

Even if the Bank could be entitled to equity, which it is not, while a court may consider equities following a foreclosure sale, courts in equity "must consider the entirety of the circumstances that bear upon the equities[,]" including the actions and inactions of the parties and "whether an innocent party [a BFP] may be harmed by granting the desired relief." Id. at 1115-1116 (citing In re Petition of Nelson, 495 N.W.2d 200, 203 (Minn. 1993) and Smith v. United States, 373 F.2d 419, 424 (4th Circ. 1966)). Such consideration of harm is particularly important where the lender has failed to avail itself of the legal remedies available to it to prevent the foreclosure sale. Shadow Wood, 366 P.3d at 1115, n.7. In this case, the Bank has provided no evidence that SFR had any knowledge of a superior interest.  Further, **despite receiving notice, the Bank did not attend the sale to insure that the price bid was adequate (to its standards); it did not do anything to put a third-party purchaser on notice that it had any dispute with the Association; and it did not exercise any legal remedies to stop the Association's sale**. Pursuant to NRS 47.250(2), it is presumed "[t]hat a person intends the ordinary consequences of that person's voluntary act." Thus, **because the Bank chose to do nothing to actually stop the sale, it intended for the ordinary consequences of that sale to occur—that its deed of trust, as a junior lien, would be extinguished and its loan become unsecured**.  In sum, the Bank has provided no evidence that SFR was anything other than a BFP.  SFR would be harmed by any belated claim to set aside the sale on those grounds and therefore title should be quieted in SFR's favor.

**C.      No Issues of Material Fact Exists as to Commercial Reasonableness.**

SFR thoroughly addressed the commercial reasonableness argument in its Motion[10] and Opposition,[11] and therefore will not reiterate it in full here. That being said, the Bank's claim that

---

[10] SFR's Mot., pp. 14-18.

[11] SFR's Opp., pp. 10-15.

this Court can unwind the sale or impair SFR's deed based on price paid at auction alone is untenable. Further, the Bank's sole and belated allegation of an attempted payment to the Association, which was for less than the amount owed and was coupled with restrictions/ conditions, does not meet the definition of tender, and thus does not constitute fraud, oppression or unfairness which brought about an allegedly "low" price.[12]

Contrary to the Bank's mistaken belief, <u>Shadow Wood</u> **did not** adopt Restatement (Third) of Property: Mortgages § 8.3 cmt. b, for the proposition that this Court should invalidate the sale because the price paid by SFR was less than 20 percent of some "fair market value." Although mentioning the Restatement in *dicta*, the court reaffirmed long-established Nevada law that an allegation of inadequate sales price alone, no matter how low, is insufficient to set aside a foreclosure sale; "there must also be a showing of fraud, unfairness, or oppression" that caused the price. <u>Shadow Wood</u>, 2016 WL 347979 at *4 (citing <u>Long v. Towne</u>, 639 P.2d 528, 530 (Nev. 1982) and <u>Golden v. Tomiyasu</u>, 387 P.2d 989, 997 (Nev. 1963) (adopting the California rule that "inadequacy of price, **however gross**, is not in itself a sufficient ground for setting aside a trustee's sale legally made; there must be in addition proof of some element of fraud, unfairness or oppression as accounts for and **brings about the inadequacy of price**" (internal citations omitted)) (emphasis added).[13]

As a panel of the Nevada Supreme Court recently stated in a unpublished order, "this court's reaffirmation in [<u>Shadow Wood</u>], that a low sales price is not a basis for voiding a foreclosure sale absent 'fraud, unfairness, or oppression,' undermines the second basis for the district court's decision." <u>Centeno v. JP Morgan Chase Bank, N.A.</u>, Nevada Supreme Ct. Case No. 67365 (unpublished Order Vacating and Remanding) (Nev. Mar.18, 2016)(order vacating and remanding district court order denying preliminary injunction in an NRS 116 foreclosure case based in part on the district court's conclusion that the purchase price at the association sale was

---

[12] However, as explained in SFR's Opposition, fraud, oppression and unfairness was not asserted as an affirmative defense and thus the Bank has waived this. FRCP 8(b)-(c), 12(b).

[13] Unlike <u>SFR</u> which merely interpreted existing law, adopting the Restatement would be announcing a new rule of law, overruling long established precedent, and would require prospective application only. See <u>Chevron Oil Co. v. Huson</u>, 404 U.S. 97, 106-107 (1971); see also <u>Shadow Wood</u>, 2016 WL 347979 at *5 (citing <u>Golden</u>, 387 P.2d at 995).

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

commercially unreasonable).[14] Further, the Bank's reference to the Arizona case of In re Krohn, 52 P.3d 774, 781 (Ariz. 2002), is misplaced. Bank's Mot., 16:7-18. What the Bank fails to account for is the state of Arizona versus Nevada law on the issue. As stated in Krohn, since at least 1905 Arizona has long held that a court in equity may vacate a foreclosure sale where price "inadequacy is so gross as to be proof of fraud or shocks the conscience of the court." Krohn, 52 P.3d at 776 (citing Wiesel v. Ashcraft, 549 P.2d 585, 589 (Ariz. 1976) (citing McCoy v. Brooks, 80 P. 365 (Ariz. 1905)). **This contrasts sharply with Nevada law**, as affirmed in Shadow Wood, that inadequacy of price, **however gross**, is insufficient to set aside a foreclosure sale absent fraud, oppression or unfairness. Shadow Wood, 2016 WL 347979 at *4 (citing Long, 639 P.2d at 530 and Golden, 387 P.2d at 997) (emphasis added). While the Bank has produced zero evidence to substantiate any "fair market value," such evidence regarding fair market value would nonetheless be irrelevant.[15] [16]

Here, the Bank has offered no evidence of any fraud, unfairness or oppression in the sale process that would justify setting aside the sale. The Bank points to nothing that constitutes an irregularity in the Association's foreclosure process conducted pursuant to NRS 116. The Association's sale was publically noticed, as required by statute; multiple bidders attended the auction; and neither the homeowner nor the Bank properly cured the lien before the sale. As fully

---

[14] A copy of the Nevada Supreme Court unpublished order is available at http://caseinfo.nvsupremecourt.us/public/caseView.do?csIID=35567, as Doc. 16-08672. In that case, the price paid at the homeowners association's auction was $5,950.00. While the value of the property was not established, on appeal the bank argued that that the deed of trust secured a loan for $160,001.00 and the property later reverted to the bank at its own auction for $145,550.00. (See Case No. 67365, Response to Appellant's Pro se Appeal Statement, filed Feb. 17, 2016 (Doc. No. 16-04982), available at http://caseinfo.nvsupremecourt.us/public/caseView.do?csIID=35567).

Thus, the price paid at the association's foreclosure sale was approximately 4% of the credit bid by the bank at its subsequent auction.

[15] As fully discussed in SFR's Motion and Opposition, market value has no applicability to a forced sale situation. Bourne Valley, 80 F.Supp.3d at 1136; BFP v. Resolution Trust Corporation, 511 U.S. 531 (1994).

[16] Comparing the price paid to the amount owing on the [now extinguished] deed of trust is also not a reliable benchmark for comparison. The amount a lender was willing to lend on the Property in 2008, when the market was still in a bubble, has nothing to do with the amount a purchaser would be willing to pay for the Property in December 2012 (in the midst of an economic downturn and in light of lenders' refusal to acknowledge that NRS 116.3116(2) gave associations true super priority liens).

- 8 -

discussed in SFR's Opposition,[17] the alleged attempted payment, for less than an amount demanded by the foreclosure agent and accompanied by conditional, restrictive language, does not constitute a "tender." Further, the Bank's reliance on Cladianos v. Friedhoff, 240 P.2d 208 (Nev. 1952) is misplaced. Bank's Mot., 24:22-25:1. Cladianos pertained only to tender of performance in a breach of contract action. It did not discuss what happens when there is a dispute over the amounts due to satisfy a monetary obligation as happened here. As in Shadow Wood, here the Bank did nothing to put anyone on notice of its dispute. Shadow Wood, 366 P.3d at 1115 and n.7. The Bank had all the information regarding its alleged attempts and chose to allow the sale to go forward to SFR, a third party. Id.

In sum, without evidence of irregularity in the Association's foreclosure process constituting fraud, unfairness, or oppression, which brought about the allegedly low price, the price paid at auction alone is not enough to vacate the sale. Viewing the transaction as a whole, the sale was commercially reasonable, and as a matter of law, the Bank cannot rely on SFR's winning bid as evidence that it was not. As a result, SFR is entitled to summary judgment.

### D. The Bank cannot use the Supremacy Clause to Displace Nevada Law

As fully discussed in SFR's Opposition[18], the Bank cannot use the Supremacy Clause to displace Nevada law, and the Bank would nonetheless lack standing to enforce the provisions of the NHA. In short, FHA insurance is not a federal property interest, and NRS Chapter 116 does not conflict with HUD policies; instead, it comports with HUD policies. Therefore, summary judgment in favor of SFR is appropriate.

### E. The Bank Received Actual Notice and Lacks Standing to Raise a Facial Challenge.

As discussed fully in SFR's Opposition,[19] the Bank lacks standing to assert a facial challenge. Wiren v. Eide, 542 F.2d 757, 762 (9th Cir. 1976); Green Tree Servicing, LLC v. Random Antics, LLC, 869 N.E.2d 464, 470-71 (Ind. Ct. App. 2007). Any irregularity in notice

---

[17] SFR's Opp., pp. 14-15.

[18] SFR's Opp., pp. 5-10.

[19] SFR's Opp., pp. 19-26.

- 9 -

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

does not violate due process where one has actual notice of the action to be taken. See United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 272, 130 S.Ct. 1367, 1378 (2010); see also In re Medaglia, 52 F.3d 451, 455-56 (2d Cir. 1995) ("[D]ue process is not offended by requiring a person with actual, timely knowledge of an event that may affect a right to exercise due diligence and take necessary steps to preserve that right.") (cited with favor in SFR, 334 P.3d at 418.) Here, the Bank received the notices and chose to allow the Association sale to proceed. Consequently, it cannot claim injury as a result of the noticing provisions of the statute.[20] Thus, it lacks standing to raise this challenge. However, to the extent this Court continues down the constitutional path, as set forth fully in SFR's Opposition,[21] not only is there no state actor to implicate due process, but the statutes themselves require notice of default and notice of sale be given to all lienholders junior to the Association through the incorporation of the whole of NRS 107.090 through NRS 116.31168. To read the statute any other way would contravene the constitutional avoidance doctrine.

### F. *Chevron Oil* is Not Applicable to the SFR decision.

As fully discussed in SFR's Opposition,[22] notwithstanding the Bank's waiver of this argument, FRCP 8(b)-(c), 12(b), the SFR decision did not announce a new rule of law, and thus the Bank's reliance on Chevron Oil[23] is misplaced. Contrastingly, SFR involved statutory construction, an issue devoid of the retroactivity concerns discussed in Chevron Oil. Retroactivity concerns are removed from the statutory construction context because, "'[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.'" Morales-Izquierdo v. Dept. of Homeland Sec., 600 F.3d 1076, 1087-88 (2010) (quoting Rivers v. Roadway Express, Inc., 511 U.S. 298, 312–13 (1994)) (overruled in part on other grounds by Garfias-Rodriguez v. Holder, 702 F.3d 504, 516 (2012)). When a court interprets a statute, "'it is explaining its understanding of what the

---

[20] Because the Bank lacks standing to assert a facial challenge, the due process inquiry stops here. However, see SFR's Opposition for a full discussion on the constitutionality of the statutes. SFR's Opp., pp. 19-26.

[21] SFR's Opp., pp. 19-26.

[22] SFR's Opp., pp. 26-28.

[23] Chevron Oil Co. v. Huson, 404 U.S. 97, 106-107 (1971).

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

statute has meant continuously since the date when it became law.'" Morales-Izquierdo, 600 F.3d at 1088 (quoting Rivers, 511 U.S. at 313 n.12). Consequently, judicial interpretations are given "[f]ull retroactive effect[.]" Morales-Izquierdo, 600 F.3d at 1008 (quoting Harper, 509 U.S. at 97).

Here, SFR construed NRS 116.3116. Consistent with the aforementioned authorities, SFR should be applied retroactively. Nonetheless, as fully discussed in SFR's Opposition, applying the Chevron Oil factors to the SFR decision, as attempted in Christiana Trust[24] case, actually results in favor of retroactive application.

In sum, Chevron Oil is distinguishable from SFR in that the latter dealt with statutory construction of an existing law and not application of a new rule of law. The SFR decision should be applied retroactively.

### G. There is No Genuine Issue of Material Fact Regarding the Circumstances Surrounding SFR's Slander of Title Claim.

As discussed fully in SFR's Motion[25] and Opposition,[26] the evidence is undisputed that the Bank publically recorded documents against the Property, purporting to retain an interest, despite already having knowledge of the Association's foreclosure sale via receipt of the foreclosure notices; knowledge of the SFR decision; and the existence of the chain of title evidencing conveyance of the Property to SFR. At minimum, the Bank "acted with reckless disregard" for the truth – that the Association foreclosure sale extinguished its deed of trust – when it recorded its Assignment post-sale. Rowland, 662 P.2d at 1335; see also SFR, 334 P.3d at 419. The Bank had no reasonable grounds to believe that the first deed of trust survived the foreclosure, and it acted maliciously in proceeding with recording the Assignment against the Property. Rowland, 662 P.2d at 1335. Based on the undisputed evidence, the Bank has slandered SFR's title to the Property and summary judgment is appropriate.

///

---

[24] Christiana Trust v. S&P Homes, et al., No. 2:15-cv-01534-RCJ-VCF, 2015 WL 6962860 (D. Nev. Nov. 9, 2015).

[25] SFR's Mot., pp. 24-25.

[26] SFR's Opp., pp. 28-30.

### IV. CONCLUSION

Based on the above, the Court should enter summary judgment against the Bank, Carrington, and Juergens, and in favor of SFR, stating that (1) SFR is the title holder of the Property; (2) the First Deed of Trust was extinguished when the Association foreclosed its lien containing super priority amounts, thus making the Bank and/or Carrington's purported interest(s) in the deeds of trust invalid; (3) Juergens has no further interest in the Property; (4) the Bank, Carrington and Juergens are permanently enjoined from any sale or transfer that would affect SFR's title to the Property; and (5) the Bank and Carrington are liable for slander of title.

DATED this 28th day of April, 2016.

**KIM GILBERT EBRON**

*/s/ Jacqueline A. Gilbert*
Jacqueline A. Gilbert, Esq.
Nevada Bar No. 10593
7625 Dean Martin Drive, Suite 110
Las Vegas, Nevada 89139
Phone: (702) 485-3300
Fax:    (702) 485-3301
*Attorneys for SFR Investments Pool 1, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of April, 2016, pursuant to FRCP 5, I served via the CM-ECF electronic filing system the foregoing **SFR INVESTMENTS POOL 1, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT [Dkt. 44]** to the following parties:

Dana Jonathon Nitz, Esq.
Natalie C. Lehman, Esq.
Edgar C. Smith, Esq.
WRIGHT, FINLAY, & ZAK, LLP
7785 W. Sahara Avenue, Suite 200
Las Vegas, Nevada 89117
dnitz@wrightlegal.net
nlehman@wrightlegal.net
esmith@wrightlegal.net
*Attorneys for CARRINGTON MORTGAGE SERVICES, LLC*

Donna M. Wittig, Esq.
Akerman LLP
1600 Town Center Drive, Suite 330
Las Vegas, NV 89144
donna.wittig@akerman.com
*Attorneys for BANK OF AMERICA, N.A.*

Christopher V. Yergensen, Esq.
Nevada Association Services, Inc.
6224 West Desert Inn Road
Las Vegas, NV 89146
Email: chris@nas-inc.com
*Attorneys for NEVADA ASSOCIATION SERVICES, INC.*

　　　　　　　　　　　　　　　　　　　　*/s/ Vanessa S. Goulet*
　　　　　　　　　　　　　　　　　　　　An employee of Kim Gilbert Ebron

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of April, 2016, pursuant to FRCP 5, I served via U.S. Mail, postage pre-paid, the foregoing **SFR INVESTMENTS POOL 1, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT [Dkt. 44]**, to the following persons at their last known addresses:

Samuel Raymond Juergens
1500 Karen Avenue, Apt. 100
Las Vegas, NV 89169

　　　　　　　　　　　　　　　　　　　　*/s/ Vanessa S. Goulet*
　　　　　　　　　　　　　　　　　　　　An employee of Kim Gilbert Ebron