1
2
3
4
5
6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

7
8
9
10
11
12

CARRINGTON MORTGAGE SERVICES, LLC,

Plaintiff(s),

v.

SFR INVESTMENTS POOL 1, LLC,

Defendant(s).

Case No. 2:15-CV-1377 JCM (NJK)

ORDER

13
14
15
16
17

Presently before the court is defendant/counterclaimant SFR Investments Pool 1, LLC's ("SFR") motion for summary judgment.  (ECF No. 44).  Crossdefendant Bank of America, N.A. ("BANA") and plaintiff/counterdefendant Carrington Mortgage Services, LLC ("CMS") filed responses (ECF Nos. 50, 53), to which SFR replied (ECF No. 77).

18
19

Also before the court is BANA's motion for summary judgment.  (ECF No. 45).  SFR and CMS filed responses (ECF Nos. 52, 53), to which BANA replied (ECF No. 64).

20
21
22

Also before the court is defendant Oak Park Homeowners Association's (the "HOA") motion to dismiss.  (ECF No. 61).  CMS filed a response (ECF No. 74), to which the HOA replied (ECF No. 80).

23
24
25

Also before the court is SFR's motion to certify question of law to the Nevada Supreme Court (ECF No. 86), in which the HOA joined (ECF No. 87).  BANA filed a response (ECF No. 89), to which SFR replied (ECF No. 90).

26

**I.    Facts**

27
28

This case involves a dispute over real property located at 909 Veranda View Avenue, Las Vegas, Nevada 89123 (the "property").

**James C. Mahan**
**U.S. District Judge**

On September 25, 2008, Samuel and Harry Juergens obtained a loan in the amount of $171,311.00 from Taylor, Bean & Whitaker Mortgage Corp. ("TBW") to purchase the property, which was secured by a deed of trust recorded on November 3, 2008. (ECF No. 37). The loan was insured by the Federal Housing Administration ("FHA"). (ECF No. 37).

On April 14, 2010, defendant Nevada Association Services, Inc. ("NAS"), acting on behalf of the HOA, recorded a notice of delinquent assessment lien. (ECF No. 37). On December 1, 2010, NAS recorded a notice of default and election to sell to satisfy the delinquent assessment lien. (ECF No. 37).

On January 4, 2011, BANA's prior counsel Miles, Bauer, Bergstrom & Winters, LLP ("MBBW") requested a superpriority demand payoff from NAS. (ECF No. 37). On January 25, 2011, MBBW received a payoff demand from NAS, with a full lien payoff in the amount of $3,281.56. (ECF No. 37). MBBW determined the superpriority portion of the lien to be $503.10, and tendered that amount to NAS on February 25, 2011, which NAS allegedly rejected. (ECF No. 37).

On July 28, 2011, the deed of trust was assigned to BAC Home Loans Servicing, LP, fka Countrywide Home Loan Servicing, LP via an assignment deed recorded August 1, 2011. (ECF No. 37).

On August 23, 2012, NAS sent, by certified mail, to BAC (among others) a notice of trustee's sale. (ECF No. 44-1 at 82–88). On August 27, 2012, NAS recorded a notice of trustee's sale. (ECF No. 37). On December 28, 2012, SFR purchased the property at the foreclosure sale for $7,400.00. (ECF No. 37). A foreclosure deed in favor of SFR was recorded on January 3, 2013. (ECF No. 37).

On September 5, 2014, BANA recorded a request for notice pursuant to NRS 116.3118. (ECF No. 50 at 4). On December 23, 2014, BANA assigned its beneficial interest under the deed of trust to CMS via an assignment deed, which was recorded on January 29, 2015. (ECF Nos. 37, 50).

On July 20, 2015, CMS filed a complaint (ECF No. 1), which was later amended on February 29, 2016 (ECF No. 37). In the amended complaint, CMS alleges nine claims for relief:

(1) quiet title/declaratory relief against SFR, the HOA, and NAS; (2) preliminary injunction against SFR; (3) wrongful/statutorily defective foreclosure against the HOA and NAS; (4) negligence against the HOA and NAS; (5) negligence *per se* against the HOA and NAS; (6) unjust enrichment against SFR, the HOA, and NAS; (7) breach of contract against the HOA and NAS; (8) misrepresentation against the HOA; and (9) breach of good faith and fair dealing against the HOA and NAS.  (ECF No. 37).

On August 20, 2015, SFR filed a crossclaim, alleging three claims for relief: (1) quiet title/declaratory relief against CMS, BANA, and the Juergens; (2) preliminary and permanent injunction; and (3) slander of title against CMS and BANA.  (ECF No. 12).

In the instant motions, SFR moves for summary judgment on the amended complaint (ECF No. 44), BANA moves for summary judgment on SFR's slander of title claim (ECF No. 45), the HOA moves to dismiss the amended complaint (ECF No. 61), and SFR moves to certify a question of law to the Nevada Supreme Court (ECF No. 86).  The court will address these motions as it sees fit.

## II.   Legal Standards

### A.  Motion to Dismiss

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level."  *Twombly*, 550 U.S. at 555.  Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. 662, 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss.  First, the court must accept as true all well-pled factual

**James C. Mahan**
**U.S. District Judge**

allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79.  Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice.  *Id.* at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief.  *Id.* at 679.  A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.  *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).  When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed.  *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

### B. Summary Judgment

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be

James C. Mahan
U.S. District Judge

- 4 -

1   entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts

2   showing that there is a genuine issue for trial." *Id.*

3       In determining summary judgment, a court applies a burden-shifting analysis.  The moving

4   party must first satisfy its initial burden.  "When the party moving for summary judgment would

5   bear the burden of proof at trial, it must come forward with evidence which would entitle it to a

6   directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has

7   the initial burden of establishing the absence of a genuine issue of fact on each issue material to

8   its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)

9   (citations omitted).

10      By contrast, when the nonmoving party bears the burden of proving the claim or defense,

11  the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential

12  element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed

13  to make a showing sufficient to establish an element essential to that party's case on which that

14  party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving

15  party fails to meet its initial burden, summary judgment must be denied and the court need not

16  consider the nonmoving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–

17  60 (1970).

18      If the moving party satisfies its initial burden, the burden then shifts to the opposing party

19  to establish that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith

20  Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the

21  opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient

22  that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

23  versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626,

24  631 (9th Cir. 1987).

25      In other words, the nonmoving party cannot avoid summary judgment by relying solely on

26  conclusory allegations that are unsupported by factual data.  *See Taylor v. List*, 880 F.2d 1040,

27  1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the

28

**James C. Mahan**
**U.S. District Judge**

- 5 -

pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**C. Certify Question of Law to the Nevada Supreme Court**

The Nevada Rules of Appellate Procedure provide that the Supreme Court of Nevada has the power to answer "questions of [state] law . . . which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of [Nevada]." Nev. R. App. P. 5(a).

The Nevada Supreme Court "may answer questions of law certified [] by a federal court when (1) [the] answers to the certified questions may be determinative of part of the federal case, (2) there is no clearly controlling Nevada precedent, and (3) the answers to the certified questions will help settle important questions of law. *See, e.g.*, *Hartford Fire Ins. Co. v. Tr. of Const. Indus.*, 208 P.3d 884, 888 (Nev. 2009).

Where the question does not impact the merits of a claim pending before the certifying court, the question should not be certified to the Supreme Court. *See* Nev. R. App. P. 5(a) (requiring that certified question be "determinative"); *see also Volvo Cars of N. Am., Inc. v. Ricci*, 137 P.2d 1161, 1164 (Nev. 2006) (declining to answer certified questions where "answers to the questions posed [] would not 'be determinative' of any part of the case"). "The certification procedure is reserved for state law questions that present significant issues, including those with important public policy ramifications, and that have not yet been resolved by the state courts." *Kremen v. Cohen*, 325 F.3d 1035, 1037 (9th Cir. 2003).

Federal courts have discretion to certify questions of state law. *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). "Resort to certification is not mandatory where state law is unclear on

a particular issue." *Carolina Cas. Ins. Co. v. McGhan*, 572 F. Supp. 2d 1222, 1225 (D. Nev. 2008) (citing *Lehman Bros.*, 416 U.S. at 390–91). Generally, "[w]hen a decision turns on applicable state law and the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Aetna Cas. & Sur. Co. v. Sheft*, 989 F.2d 1105, 1108 (9th Cir. 1993).

Further, a federal court may decline to certify a question where controlling precedent is available for guidance. *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1041 (9th Cir. 2014); *see also Kehoe v. Aurora Loan Servs., LLC*, No. 3:10-cv-256-RCJ-RAM; 2010 WL 4286331, at *11 (D. Nev. Oct. 20, 2010) (declining to certify question to Nevada Supreme Court where statutory language was sufficiently clear for the court to apply).

Finally, a party must show "particularly compelling reasons" for certification when that party first requests it after losing on an issue. *Complaint of McLinn*, 744 F.2d 677, 681 (9th Cir. 1984) ("Ordinarily such a movant should not be allowed a second chance at victory when, as here, the district court employed a reasonable interpretation of state law.").

## III.   Discussion

### A.   The HOA's Motion to Dismiss (ECF No. 61)

#### 1.   *Quiet Title/Declaratory Relief (claim 1)*

The HOA argues that CMS's quiet title claim fails because it cannot prove good title in itself and the HOA is not a proper party. (ECF No. 61). The court disagrees.

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, for plaintiff to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*,

918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Under Federal Rule of Civil Procedure 19(a), a party must be joined as a "required" party in two circumstances: (1) when "the court cannot accord complete relief among existing parties" in that party's absence, or (2) when the absent party "claims an interest relating to the subject of the action" and resolving the action in the person's absence may, as a practical matter, "impair or impede the person's ability to protect the interest," or may "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1).

Here, the HOA is a necessary party to this action based on the current allegations and relief sought. The HOA has a present interest in the property because CMS challenges the validity of the foreclosure sale. *See, e.g.*, *U.S. Bank, N.A. v. Ascente Homeowners Ass'n*, No. 2:15-cv-00302-JAD-VCF, 2015 WL 8780157, at *2 (D. Nev. Dec. 15, 2015). If the foreclosure sale is invalidated, the HOA's superpriority lien might be reinstated as an encumbrance against the property.

Further, the existence and priority of that lien might still be in doubt where CMS alleges it tendered payment of that lien. "The disposition of this action in the HOA's absence may impair or impede its ability to protect its interests." *U.S. Bank, N.A.*, 2015 WL 8780157, at *2. Furthermore, if CMS "succeeds in invalidating the sale without the HOA being a party to this suit, separate litigation to further settle the priority of the parties' respective liens and rights may be necessary." *Id.* Thus, if the HOA is dismissed as a party, CMS would not be able to secure the complete relief it seeks. *See id.*; *see also* Fed. R. Civ. P. 19(a).

Accordingly, the HOA is a proper party to CMS's quiet title claim, and its motion to dismiss on this basis will be denied.

### 2. *Wrongful Foreclosure* (claim 2)

Next, the HOA argues that CMS lacks standing to assert a wrongful foreclosure claim because CMS cannot allege on behalf of another that no default or breach of condition at the foreclosure sale occurred to prohibit the foreclosure. (ECF No. 61 at 4–5).

The court disagrees.  The HOA cites to no authority to support its contention that only trustors or mortgagors may bring a wrongful foreclosure claim.  In fact, a wrongful foreclosure claim seeks to set aside the foreclosure sale pursuant to the court's equitable powers where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression."  *See Shadow Wood Homeowners Assoc., Inc. v. N.Y. Cmty. Bancorp, Inc*., 366 P.3d 1105, 1110 (Nev. 2016).  Thus, a wrongful foreclosure claim does not require allegations regarding default or breach of a condition.

Accordingly, the court will deny the HOA's motion to dismiss as to this claim.

### 3. *Negligence (claim 4) & Negligence Per Se (claim 5)*

Next, the HOA argues that CMS's claims for negligence and negligence *per se* fail because the HOA owed CMS no duty and CMS failed to sufficiently allege the requirements for negligence *per se*.  (ECF No. 61).  The court agrees.

To prevail on a claim for negligence, a plaintiff must generally establish four elements: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injury; and (4) the plaintiff suffered damages. *Scialabba v. Brandise Const. Co.*, Inc., 921 P.2d 928, 930 (Nev. 1996).

"[T]he violation of a statute constitutes negligence *per se* if the injured party belongs to the class of persons that the statute was intended to protect, and the injury suffered is of the type the statute was intended to prevent."  *Vega v. E. Courtyard Assocs*., 24 P.3d 219, 221 (Nev. 2001).  "When a defendant violates a statute which was designed to protect a class of persons to which the plaintiff belongs, and thereby proximately causes injury to the plaintiff, such a violation constitutes negligence *per se*, unless the defendant can show that the violation was excused."  *Barnes v. Delta Lines, Inc*., 669 P.2d 709, 710 (Nev. 1983) (*per curiam*).

CMS alleges that the HOA and NAS owed it a duty to conduct the foreclosure sale properly.  (ECF No. 37 at 14–15).  However, the foreclosure sale took place prior to BANA assignment to CMS.  Thus, the complaint fails to sufficiently allege the first element, and the court will grant the HOA's motion to dismiss as to the negligence claim.

Further, while the complaint alleges that CMS is a member of the class of persons whom NRS Chapter 116 intended to protect and that it faces suffering an injury of the type the statute

intended to protect (ECF No. 37 at 15), CMS fails to set forth any facts sufficient to support such conclusory allegations.   Accordingly, the court will grant the HOA's motion to dismiss the negligence *per se* claim.

### 4.  *Unjust Enrichment (claim 6)*

Under Nevada law, unjust enrichment is an equitable doctrine that allows recovery of damages "whenever a person has and retains a benefit which in equity and good conscience belongs to another."  *Unionamerica Mortg. & Equity Trust v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981); *see also Asphalt Prods. v. All Star Ready Mix*, 898 P.2d 699, 701 (Nev. 1995).

To state a valid claim for unjust enrichment, a plaintiff must allege three elements: (1) plaintiff conferred a benefit on defendant; (2) defendant appreciated such benefit; and (3) defendant accepted and retained the benefit.  *Id.* (citing *Topaz Mutual Co. v. Marsh,* 839 P.2d 606, 613 (Nev. 1992)).

CMS failed to sufficiently alleged that it conferred a benefit on the HOA or that the HOA appreciated such benefit.  Instead, the complaint merely sets forth conclusory allegations, without sufficient facts in support thereof, that the HOA benefited from the foreclosure sale and CMS's property-related payments.  (ECF No. 37 at 16).

Thus, the court will grant the HOA's motion to dismiss as to the unjust enrichment claim.

### 5.  *Breach of Contract (claim 7) & Breach of Implied Covenant of Good Faith and Fair Dealing (claim 9)*

In Nevada, "to succeed on a breach of contract claim, a plaintiff must show four elements: (1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages."  *Laguerre v. Nev. Sys. of Higher Educ.*, 837 F. Supp. 2d 1176, 1180 (D. Nev. 2011) (citing *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement.")).

Similarly, to prevail on a theory of breach of the covenant of good faith and fair dealing, a plaintiff must establish each of the following four elements: (1) plaintiff and defendant were parties to a contract; (2) defendant owed a duty of good faith to plaintiff; (3) defendant breached that duty

James C. Mahan
U.S. District Judge

by performing in a manner that was unfaithful to the purpose of the contract; and (4) plaintiff's justified expectations were denied. *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995).

Here, CMS fails to sufficiently allege that CMS and the HOA were parties to a contract, which is a necessary element to both breach claims. While CMS alleges that the HOA was a party to the CC&Rs, CMS does not allege that it was a party thereto. Accordingly, the court will grant the HOA's motion to dismiss as to the breach of contract and breach of the implied covenant of good faith and fair dealing claims.

### 6. *Misrepresentation (claim 8)*

To state a claim for fraudulent misrepresentation, a plaintiff must allege three elements: (1) defendant made a false representation; (2) with knowledge of its falsity; and (3) with the intent to induce reliance on the misrepresentation. *Nau v. Sellman*, 757 P.2d 358, 360 (Nev. 1988). Further, in alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[A] plaintiff asserting fraud against a corporate [entity] must state the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Roberts v. McCarthy*, No. 2:11-cv-00080, 2010 WL 1363811, at *3 (D. Nev. Apr. 11, 2011) (quoting *Spencer v. DHI Mortg., Inc.*, 642 F. Supp. 2d 1153, 1164 (E.D. Cal. 2009)).

Here, CMS alleges that the HOA made false representations in the CC&Rs, but fails to allege that the HOA intended to induce reliance on the misrepresentation. (ECF No. 37 at 17–18). Further, the complaint falls woefully short of alleging facts sufficient to satisfy Rule 9's specificity requirement. Thus, the HOA's motion to dismiss will be granted as to the misrepresentation claim.

**B. SFR's Motion for Summary Judgment** (ECF No. 44)

In its motion, SFR moves for summary judgment on its counterclaims for quiet title, permanent injunction, and slander of title, as well as on CMS's unjust enrichment claim. (ECF No. 44).

### 1. *Quiet Title/Declaratory Relief (counterclaim 1)*

SFR argues that summary judgment in its favor is proper on its quiet title claim against CMS, BANA, and the Juergens because the foreclosure sale extinguished the first deed of trust

James C. Mahan
U.S. District Judge

1   pursuant to NRS 116.3116(2). (ECF No. 44 at 8). In particular, SFR asserts that BANA and

2   CMS failed to protect their interest despite receiving notice. (ECF No. 44 at 11). SFR further

3   contends that the recorded foreclosure deed provides conclusive effect regarding the statutory

4   prerequisites to a valid HOA lien foreclosure sale. (ECF No. 44 at 9).

5        In response, CMS argues that fact issues exist as to its tender of payment to NAS, the

6   loan being FHA insured, commercial unreasonableness, improper costs included in the HOA

7   notices, and violation of the automatic stay as to TBW under 11 U.S.C. § 362. (ECF No. 53 at

8   2). Similarly, BANA's response contends that its efforts to pay off the lien were rejected and the

9   sale price at the foreclosure sale was grossly inadequate. (ECF No. 50 at 4).

10               **a.  Nev. Rev. Stat. § 116.31166**[1]

11       SFR asserts that its submission of a foreclosure deed issued pursuant to NRS 116.31164,

12   which recites compliance with the notice provisions of NRS 116.31162 through NRS 116.31168,

13   shifts the burden to CMS/BANA to invalidate the foreclosure and the foreclosure deed conveying

14   title to SFR with evidence of fraud, unfairness, or oppression. (ECF No. 44 at 9).

15       Section 116.3116(1) of the Nevada Revised Statutes gives an HOA a lien on its

16   homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives

17   priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as

18   "[a] first security interest on the unit recorded before the date on which the assessment sought to

19   be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

20       The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first

21   security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investment Pool 1 v. U.S. Bank*, the

22   Nevada Supreme Court provided the following explanation:

23       As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces,
         a superpriority piece and a subpriority piece. The superpriority piece, consisting of
24       the last nine months of unpaid HOA dues and maintenance and nuisance-abatement
         charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all
25       other HOA fees or assessments, is subordinate to a first deed of trust.

26   334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

27

28   _____
     [1]  The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where
     otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the
     version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

**James C. Mahan**
**U.S. District Judge**

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

(a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
(b) The elapsing of the 90 days; and
(c) The giving of notice of sale,

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[2]  "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc., Inc.*, 366 P.3d at 1110. Nevertheless, courts retain the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, SFR has provided the recorded trustee's deed upon sale (ECF No. 44, exh. 2-A), and CMS has provided the recorded notice of delinquent assessment (ECF No. 37, exh. 4), the recorded notice of default and election to sell (ECF No. 37, exh. 5), and the recorded notice of trustee's sale (ECF No. 37, exh. 7).  Pursuant to NRS 116.31166, these recitals in the recorded foreclosure deed are conclusive to the extent that they implicate compliance with NRS 116.31162 through NRS 116.31164, which provide the statutory prerequisites of a valid foreclosure. *See id.* at 1112 ("[T]he

---

[2]  The statute further provides as follows:

2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

recitals made conclusive by operation of NRS 116.31166 implicate compliance only with the statutory prerequisites to foreclosure."). Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale is valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

Nonetheless, CMS argues that the notices of lien and default failed to specify the portion of the lien, if any, that the HOA claimed constituted the superpriority lien. (ECF No. 53 at 4). However, this argument fails because the version of NRS 116.31162 in effect at the times relevant to these notices does not require the notices to specify the superpriority portion of the lien. More specifically, it merely required a notice of default to "[d]escribe the deficiency in payment." Nev. Rev. Stat. § 116.31162(1)(b)(1) (eff. to Sept. 30, 2013). A subsequent amendment added additional language requiring the notice of default to include a separate statement of the amount of a HOA's superpriority lien. *See* Nev. Rev. Stat. § 116.31162(1)(b)(1)–(2) (eff. Oct. 1, 2015).

Importantly, while NRS 116.3116 accords certain deed recitals conclusive effect—*e.g.*, default, notice, and publication of the notice of sale—it does not conclusively, as a matter of law, entitle SFR to success on its quiet title claim, as CMS correctly argues in its response (ECF No. 53 at 25–26). *See Shadow Wood Homeowners Assoc., Inc.*, 366 P.3d at 1112 (rejecting contention that NRS 116.31166 defeats, as a matter of law, action to quiet title). Thus, the question remains whether CMS and BANA demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.* "When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id.*

### b. Rejected Tender

SFR contends that BANA failed to protect its interest despite receiving notice. (ECF No. 44 at 11–12). In particular, SFR asserts that BANA failed to cure deficiency, file an action to enjoin the foreclosure sale, record a document disputing the superpriority amount, record a release, or attend the foreclosure sale. (ECF No. 44 at 11–12). SFR thus maintains that BANA and CMS are not entitled to equitable relief. (ECF No. 44 at 11–12).

James C. Mahan
U.S. District Judge

1    In response, CMS and BANA argue that the foreclosure sale is void because BANA

2    attempted to tender the superpriority amount to NAS, which NAS wrongfully rejected.  (ECF Nos.

3    50, 53).   In particular, CMS asserts that its predecessor-in-interest, BANA, by and through

4    MBBW, requested a payoff demand from NAS and received a demand in the amount of $3,281.56.

5    (ECF No. 53 at 4).  "MBBW determined that the amount necessary to pay in full the super-priority

6    lien was $503.10 based on nine months of assessments at $55.90 per month."  (ECF No. 53 at 4).

7    MBBW, on behalf of BANA, tendered a payment in the amount of $503.10 to NAS on February

8    25, 2011.  (ECF No. 53 at 4).  CMS asserts that NAS wrongfully rejected this tender.  (ECF No.

9    53 at 4).

10    Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority

11    portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest.

12    *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior

13    lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see*

14    *also, e.g., 7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149

15    (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their

16    security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of*

17    *Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev.

18    1980))).

19    According to the recordings attached to CMS's amended complaint, BANA tendered to

20    NAS a payment in the amount of $503.10 on February 25, 2011.  (ECF No. 37, exh. 6).  While

21    NAS's fee breakdown stated a payoff demand in the amount of $3,281.56, BANA tendered a

22    different amount ($503.10), an amount in which BANA calculated to be the superpriority portion

23    of the lien based on nine months of assessments at $55.90 per month.  (ECF Nos. 37 at 4–5; 37-1

24    at 36–37).

25    The superpriority lien portion, however, consists of "the last nine months of unpaid HOA

26    dues ***and maintenance and nuisance-abatement charges***," while the subpriority piece consists of

27    "all other HOA fees or assessments."   *SFR Investments*, 334 P.3d at 411 (emphasis added); *see*

28    *also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d at 1150 ("The superpriority lien consists only of

James C. Mahan
U.S. District Judge

- 15 -

unpaid assessments and certain charges specifically identified in § 116.31162.").  CMS and BANA do not dispute that the costs set forth in NAS's fee breakdown constitute maintenance and nuisance-abatement charges, nor do they assert that such charges were included BANA's calculation of the superpriority lien or in amount tendered ($503.10).

Moreover, CMS and BANA fail to adequately defend BANA's exclusion of all fees and costs set forth in NAS's payment demand except for the nine months of assessments at $55.90 per month in its calculation of the superpriority lien.  CMS and BANA merely presume, without adequate support, that the amount set forth in NAS's payoff demand included more than the superpriority lien portion.  Further, CMS and BANA fail to specify which costs set forth in the payoff demand were improperly included in the amount, nor do they dispute a particular cost as improperly included.

Based on the foregoing, CMS has failed to show that it tendered the full superpriority amount to NAS prior to the foreclosure, nor has it shown NAS's alleged rejection to be wrongful.

### c.  Grossly Inadequate Purchase Price

In its motion, SFR argues that the price paid was commercially reasonable and there is no evidence that fraud, oppression, or unfairness caused the low price.  (ECF No. 44 at 14–15).  SFR further contends that any irregularities with the foreclosure sale cannot be imputed onto SFR because it is a bona fide purchaser.  (ECF No. 44 at 18)

CMS and BANA contend the foreclosure sale should be rescinded as it was commercially unreasonable.  (ECF Nos. 53 at 20–22; 50 at 4).  In particular, CMS asserts that the $7,400.00 sale price was grossly inadequate when compared to the $125,000.00 fair market value of the property at the time of the foreclosure sale.  (ECF No. 53 at 23).  CMS maintains that grossly inadequate purchase price is sufficient to permit setting aside a foreclosure sale.  (ECF No. 53 at 23).  The court disagrees.

In *Shadow Wood Homeowners Assoc., Inc.*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression."  366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F.

Supp. 3d 853, 857–58 (D. Nev. 2016).  In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id.* at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

Thus, grossly inadequate sale price is insufficient to justify setting aside a foreclosure sale absent a showing fraud, oppression, or unfairness.

### d.  Bona Fide Purchaser

SFR argues that it is a bona fide purchaser because it paid value for the property and it lacked notice of a competing or superior interest in the property.  (ECF No. 44 at 19).

In response, CMS disputes SFR's status as a bona fide purchaser.  (ECF No. 53).  In particular, CMS contends that SFR testified at the time it purchased the property that it was aware of the risk of litigation associated with properties purchased at HOA foreclosure sales.  (ECF No. 53 at 17).  CMS further argues that SFR is charged with notice of the deed of trust and bidders are on inquiry notice about the possibility of partial satisfaction of the lien.  (ECF No. 53 at 17).

The issue of bona fide purchaser ("BFP") status is distinct from that of the conclusiveness of deed recitals.  Specifically, the issue of BFP status concerns a buyer's knowledge of competing interests, whereas the other concerns a statutory presumption that can be equitably overcome under *Shadow Wood Homeowners Assoc., Inc.  See, e.g.*, *Nationstar Mortg., LLC*, 184 F. Supp. 3d at 859–60.

A BFP is a person who purchases real property "for a valuable consideration and without notice of the prior equity, and without notice of facts which upon diligent inquiry would be indicated and from which notice would be imputed to him, if he failed to make such inquiry." *Bailey v. Butner*, 176 P.2d 226, 234 (Nev. 1947) (emphasis omitted); *see also Moore v. De*

*Bernardi*, 220 P. 544, 547 (Nev. 1923) ("The decisions are uniform that the bona fide purchaser of a legal title is not affected by any latent equity founded either on a trust, [e]ncumbrance, or otherwise, of which he has no notice, actual or constructive."). Under Nevada law, "bona fide purchaser" means as follows:

> Any purchaser who purchases an estate or interest in any real property in good faith and for valuable consideration and who does not have actual knowledge, constructive notice of, or reasonable cause to know that there exists a defect in, or adverse rights, title or interest to, the real property is a bona fide purchaser.

Nev. Rev. Stat. § 111.180(1). In other words, a later-obtained interest can prevail over an earlier-obtained interest where the later purchaser has no knowledge of the previous interest and records his/her interest first. *See Nationstar Mortg., LLC*, 184 F. Supp. 3d at 860.

The court finds that genuine issues of fact exist regarding SFR's status as a bona fide purchaser so as to preclude summary judgment. A reasonable jury could conclude that SFR was not a bona fide purchaser because a reasonable purchaser would have perceived some risk that the foreclosure would not extinguish the first deed of trust as the law was not clear at the time of the sale that the foreclosure would extinguish the deed of trust. *See id*.

### e.  FHA-Insured Loan

CMS and BANA argue that the loan was insured by the FHA and SFR has not made the requisite showing that the FHFA consented to the foreclosure sale so as to eliminate that security interest as a matter of law. (ECF No. 53 at 6).

SFR contends that CMS and BANA set forth no evidence that FHFA, Fannie Mae, or Freddie Mac have ever had an ownership interest in the loan. (ECF No. 77 at 16–17). SFR further argues that CMS and BANA nonetheless lack standing to assert a federal interest on behalf of a federal agency. (ECF No. 77 at 16–18).

The single-family mortgage insurance program allows FHA to insure private loans, expanding the availability of mortgages to low-income individuals wishing to purchase homes. *See Sec'y of Hous. & Urban Dev. v. Sky Meadow Ass'n*, 117 F. Supp. 2d 970, 980–81 (C.D. Cal. 2000) (discussing program); *W Wash. & Sandhill Homeowners Ass'n v. Bank of Am., N.A.*, No. 2:13-cv-01845-GMN-GWF, 2014 WL 4798565, at *1 n.2 (D. Nev. Sept. 25, 2014) (same). If a borrower under this program defaults, the lender may foreclose on the property, convey title to

1   HUD, and submit an insurance claim. 24 C.F.R. § 203.355. HUD's property disposition program

2   generates funds to finance the program. *See* 24 C.F.R. § 291.1.

3          Allowing an HOA foreclosure to wipe out a first deed of trust on a federally-insured

4   property thus interferes with the purposes of the FHA insurance program. Specifically, it hinders

5   HUD's ability to recoup funds from insured properties. As this court previously stated in

6   *SaticoyBayLLC, Series 7342 Tanglewood Park v. SRMOF II 2012-1 Trust*, the court reads the

7   foregoing precedent to indicate that a homeowners' association foreclosure sale under NRS

8   116.3116 may not extinguish a federally-insured loan. No. 2:13–CV–1199 JCM (VCF), 2015 WL

9   1990076, at *4 (D. Nev. Apr. 30, 2015).

10         However, the instant case is distinguishable from these cases in that, here, FHA is not a

11  named party. Neither the complaint nor the counterclaim seeks to quiet title against FHA. Further,

12  SFR's quiet title claim does not seek declaratory relief against FHA, but only as to CMS, BANA,

13  and the Juergens. Thus, this argument provides no support for CMS or BANA as the outcome of

14  the instant case has no bearing on FHA's ability to quiet title.

### f.   <u>Bankruptcy Stay</u>

16         CMS argues that the HOA could not extinguish TBW's deed of trust while it was in

17  bankruptcy, which was filed on August 29, 2009 and is still pending in Florida. (ECF No. 53 at

18  23–24). In particular, CMS asserts that the foreclosure sale violated the automatic stay pursuant

19  to 11 U.S.C. § 362. (ECF No. 53 at 23–24).

20         Assuming, *arguendo*, that this argument is properly and timely raised by CMS, it still fails.

21  The deed of trust was assigned to BAC and BANA by merger in 2011. At the time of the

22  foreclosure sale, TBW had no interest in the property, nor does CMS assert otherwise. In

23  conducting the foreclosure sale, the HOA was not enforcing a lien against the estate of TBW or

24  against the property of the TBW's estate.

25         In light of the foregoing, genuine issues exist regarding SFR's status as a bona fide

26  purchaser so as to preclude summary judgment. Accordingly, the court will deny SFR's motion

27  for summary judgment on its quiet title claim.

28

**James C. Mahan**
**U.S. District Judge**

1

### 2. *Permanent Injunction* (counterclaim 2)

2          SFR requests that CMS, BANA, and the Juergens be permanently enjoined from any sale

3    or transfer that would affect SFR's title to the property.  (ECF No. 44).

4          SFR, however, fails to set forth any argument or authority in support of its request.  Further,

5    the court follows the well-settled rule in that a claim for "injunctive relief" standing alone is not a

6    cause of action.  *See, e.g.*, *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d

7    1091, 1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, No. 2:12-CV-346 JCM RJJ, 2012

8    WL 1279939, at *3 (D. Nev. Apr. 13, 2012) (finding that "injunctive relief is a remedy, not an

9    independent cause of action"); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201

10   (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action.").

11   Injunctive relief may be available if SFR is entitled to such a remedy on an independent cause of

12   action.

13         As SFR has yet to succeed on an independent cause of action, SFR's motion for summary

14   judgment will be denied as it relates to this claim.

15

### 3. *Slander of Title* (counterclaim 3) *& BANA's Motion for Summary Judgment*
16   (ECF No. 45)

17         In its counterclaim, SFR alleges that CMS and BANA maliciously and falsely slandered

18   SFR's title to the property by recording documents against the property after the foreclosure sale

19   despite knowing that the first deed of trust had been extinguished.  (ECF No. 12 at 16–17).  SFR

20   further alleges that as a result of those recorded documents, SFR suffered special damages.  (ECF

21   No. 12 at 16–17).

22         Under Nevada law, a slander of title claim involves (1) false and malicious

23   communications (2) disparaging to one's title in land (3) causing special damages.  *See Higgins v.*

24   *Higgens*, 744 P.2d 530, 531 (Nev. 1987) (citations omitted).

25         In its motion, SFR contends that summary judgment in its favor is proper because CMS

26   and BANA recorded documents against the property despite the existence of the previously

27   recorded foreclosure deed conveying title to SFR and the holding in *SFR Investments*.  (ECF No.

28   44 at 24).  By contrast, BANA argues that summary judgment in its favor on SFR's slander of title

**James C. Mahan**
**U.S. District Judge**

claim is proper because the foreclosure sale did not extinguish the first deed of trust.  (ECF No. 45).

Both parties set forth arguments that presuppose quiet title in their favor.  However, genuine issues exist that preclude summary judgment as to the quiet title claim.  Therefore, neither party has met its summary judgment burden on this claim.  Accordingly, the court will deny both motions for summary judgment as they relate to this claim.

### 4.  *Unjust Enrichment* (claim 6)

SFR argues that it is entitled to summary judgment on CMS's unjust enrichment claim because it lacks merit and is barred by the voluntary payment doctrine.  (ECF No. 44 at 22–24).

SFR, however, fails to set forth any evidence in support of its argument pursuant to the voluntary payment doctrine so as to be entitled to summary judgment in its favor.  Further, SFR fails to demonstrate that CMS failed to make a showing sufficient to establish an essential element to its claim.  *See Celotex Corp.*, 477 U.S. at 323–24.  While SFR asserts that CMS failed to show that SFR retained a benefit conferred by CMS against fundamental principles of justice, SFR's assertion presupposes quiet title in its favor.

As SFR failed to meet its initial burden, summary judgment must be denied as to the unjust enrichment claim, and the court need not consider CMS's evidence.  *See Adickes*, 398 U.S. at 159–60.

### C.    Certify Question to the Nevada Supreme Court (ECF No. 86)

SFR and the HOA requests that the court certify the following question to the Nevada Supreme Court: "Whether NRS § 116.31168(1)'s incorporation of NRS § 107.090 requires homeowners' associations to provide notices of default to banks even when a bank does not request notice?" (ECF Nos. 86, 87).

The court declines to certify this question as controlling precedent is available for guidance. The Ninth Circuit, in *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016)—which SFR cites to in its motion—expressly answered this exact question in the negative.  More specifically, the Ninth Circuit held, in relevant part, as follows:

> Bourne Valley argues that Nevada Revised Statute section 116.31168(1), which incorporated section 107.090, mandated actual notice to mortgage lenders whose

James C. Mahan
U.S. District Judge

rights are subordinate to a homeowners' association super priority lien. . . . According to Bourne Valley, this incorporation of section 107.090 means that foreclosing homeowners' associations were required to provide notice to mortgage lenders even absent a request.

. . . .

If section 116.31168(1)'s incorporation of section 107.090 were to have required homeowners' associations to provide notice of default to mortgage lenders even absent a request, section 116.31163 and section 116.31165 would have been meaningless. We reject Bourne Valley's argument.

*Bourne Valley Court Trust*, 832 F.3d at 1159.

Accordingly, the court will deny SFR's motion to certify this question to the Nevada Supreme Court.

**IV.      Conclusion**

In sum, the court will grant the HOA's motion to dismiss (ECF No. 61) as to CMS's claims for negligence, negligence *per se*, unjust enrichment, breach of contract, misrepresentation, and breach of the covenant of good faith and fair dealing, but deny the motion as to CMS's quiet title and wrongful foreclosures claims. Moreover, the court will deny SFR's motion for summary judgment (ECF No. 44), as well as BANA's motion for summary judgment (ECF No. 45). Further, the court will deny SFR's motion to certify (ECF No. 86).

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that SFR's motion for summary judgment (ECF No. 44) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that BANA's motion for summary judgment (ECF No. 45) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the HOA's motion to dismiss (ECF No. 61) be, and the same hereby is, GRANTED IN PART and DENIED IN PART consistent with the foregoing.

IT IS FURTHER ORDERED that SFR's motion to certify (ECF No. 86) be, and the same hereby is, DENIED.

DATED February 8, 2017.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge