1

2

3

4

5

6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

7

8

9

10

11

12

| | |
|---|---|
| CARRINGTON MORTGAGE SERVICES, LLC, | Case No. 2:15-CV-1377 JCM (NJK) |
| Plaintiff(s), | ORDER |
| v. | |
| SFR INVESTMENTS POOL 1, LLC, | |
| Defendant(s). | |

13

14        Presently before the court are plaintiff and counter-defendant Carrington Mortgage

15    Services, LLC's ("Carrington") and defendant, counter-claimant, and cross-claimant SFR

16    Investment Pool 1, LLC's ("SFR") cross-motions for summary judgment on competing quiet

17    title claims.  (ECF Nos. 146, 147).

18         Also before the court is SFR's motion for default judgment against cross-defendant

19    and foreclosed-upon homeowner Samuel Juergens.  (ECF No. 148).

20    **I.    BACKGROUND**

21        This court previously granted summary judgment in favor of SFR, ruling that the

22    foreclosure sale extinguished Carrington's deed of trust.  (ECF No. 146 at 3).  The Ninth

23    Circuit reversed and remanded, holding that "a material factual dispute remains as to whether

24    [Carrington's predecessor-in-interest] satisfied the superpriority portion of the [HOA lien]."

25    (ECF No. 125 at 4–5).  Both parties agree that the only issue left for this court to decide is

26    whether the tender by Carrington's predecessor-in-interest prior to the foreclosure sale covered

27    the superpriority portion of the HOA's lien.  (ECF No. 146 at 3; ECF No. 147 at 3).  Both

28    Carrington and SFR now move for summary judgment.

James C. Mahan
U.S. District Judge

## II.     LEGAL STANDARD

Summary judgment is proper when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."[1]  Fed. R. Civ. P. 56(a).  The purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986), and to avoid unnecessary trials on undisputed facts.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

When the moving party bears the burden of proof on a claim or defense, it must produce evidence "which would entitle it to a directed verdict if the evidence went uncontroverted at trial."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted).  In contrast, when the nonmoving party bears the burden of proof on a claim or defense, the moving party must "either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of [proof] at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party satisfies its initial burden, the burden then shifts to the party opposing summary judgment to establish a genuine issue of material fact.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could find for the nonmoving party and a fact is "material" if it could affect the outcome of the case under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

The opposing party does not have to conclusively establish an issue of material fact in its favor.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  But it must go beyond the pleadings and designate "specific facts" in the evidentiary

---

[1] Information contained in an inadmissible form may still be considered on summary judgment if the information itself would be admissible at trial.  *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

James C. Mahan
U.S. District Judge

1  record that show "there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.  In other words,

2  the opposing party must show that a judge or jury is required to resolve the parties' differing

3  versions of the truth.  *T.W. Elec. Serv.*, 809 F.2d at 630.

4      The court must view all facts and draw all inferences in the light most favorable to the

5  nonmoving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990); *Kaiser Cement*

6  *Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).  The court's role is not

7  to weigh the evidence but to determine whether a genuine dispute exists for trial.  *Anderson*,

8  477 U.S. at 249.  Cross-motions for summary judgment must each be considered on their own

9  merits.  *Fair Hous. Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136

10 (9th Cir. 2001).

11 **III.    DISCUSSION**

12      **a.  Undisputed Facts**

13      Based on the parties' summary judgment papers and supporting legal records,[2] the

14 following material facts are undisputed:

15      On or about September 25, 2008, the Juergens purchased the property at 909 Veranda

16 View Avenue in Las Vegas, APN No. 177-15- 714-072.  (ECF No. 37-1 at 2 (Exhibit 1)).  The

17 Juergens' $171,311 loan was secured by a deed of trust.  (ECF No. 37-1 at 8 (Exhibit 2)).  An

18 assignment to Carrington of the beneficial interest under the deed of trust was recorded on

19 January 29, 2015.  (ECF No. 37-1 at 50 (Exhibit 8)).   On April 14, 2010, Nevada Association

20 Services, Inc. ("NAS")—an agent of the Oak Park HOA—recorded a notice of claim of

21 delinquent assessment lien.  (ECF No. 37-1 at 24 (Exhibit 4)).  On December 1, 2010, NAS

22 recorded a notice of default and election to sell under homeowners association lien.  (ECF No.

23 37-1 at 26 (Exhibit 5)).

24

25

26

27     [2] Facts derived from publicly available records are judicially noticeable.  *See Disabled*
       *Rights Action Comm. v. Las Vegas Events*, 375 F.3d 861, 866 & n.1 (9th Cir. 2004) (holding
28 that a court may take judicial notice of the records of state agencies and other undisputed
       matters of public record under Fed. R. Evid. 201).

James C. Mahan
U.S. District Judge

On or about January 4, 2011, Miles, Bauer, Bergstrom & Winters, LLP ("Miles Bauer")—a law firm retained by Carrington's predecessor-in-interest to tender payments to HOAs—requested from NAS a superpriority demand payoff that the HOA claimed was owed. (ECF No. 146-6 at 6). Miles Bauer received a payoff demand which provided only the full lien payoff amount of $ 3,281.56. (ECF No. 146-6 at 9). Based on the account ledger provided by NAS, Miles Bauer tendered $503.10 which it believed was "the maximum 9 months worth of delinquent assessments recoverable by an HOA." (ECF No. 146-6 at 13). NAS rejected the tender without explanation. (ECF No. 146-6 at 16).

A second notice of foreclosure sale was recorded on August 27, 2012. (ECF No. 37-1 at 47). SFR placed the winning bid in the non-judicial foreclosure sale on December 28, 2012. (ECF No. 37-1 at 53). A foreclosure deed vesting title in SFR was recorded on January 3, 2013. (*Id.*).

### b.  Superpriority Portion of the HOA's Lien

To prevail on a quiet title claim under Nev. Rev. Stat. § 40.010, a party must prove that its interest in the property at issue is superior to that of every other party in the action. *See Chapman v. Deutsche Bank Nat'l Tr. Co.*, 302 P.3d 1103, 1106 (Nev. 2013). The crux of the parties' competing quiet title claims is whether the tender by Carrington's predecessor-in-interest fully covered the superpriority portion of the HOA's lien. (ECF No. 146 at 7; ECF No. 147 at 6).

Specifically, the parties dispute whether reserve assessments are included in the superpriority portion. But neither party offers any supporting caselaw. They offer competing statutory interpretations instead. *Compare* (ECF No. 152 at 4–10), *with* (ECF No. 154 at 2–3). Despite Nevada's 2008 housing crash precipitating hundreds of quiet title actions which have been litigated by repeat players, this dispute amazingly appears to be an issue of first impression. When a federal district court is faced with an issue of first impression under state law, it must use its best judgment to predict how the highest state court would resolve it "using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises,

**James C. Mahan**
**U.S. District Judge**

- 4 -

1   and restatements as guidance." *Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 865
2   (9th Cir. 1996).

3   Nev. Rev. Stat. § 116.3116(1) allows HOAs to pursue liens on members' homes for
4   unpaid assessments and charges.  HOA liens are split into superpriority and subpriority
5   portions; the superpriority portion is prior to all other liens, including first deeds of trust, with
6   enumerated exceptions that are not relevant here.  Nev. Rev. Stat. § 116.3116(2).  An HOA
7   may foreclose on its superpriority lien through a non-judicial foreclosure sale.  *See* Nev. Rev.
8   Stat. § 116.31162.

9   But a "first deed of trust holder's unconditional tender of the superpriority amount due
10  results in the buyer at foreclosure taking the property subject to the deed of trust."  *Bank of
11  Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 116 (Nev. 2018) (en banc) ("*Diamond
12  Spur*").  To be valid, tender must be for "payment in full" and must either be "unconditional,
13  or with conditions on which the tendering party has a right to insist."  *Id.* at 118.

14  The Nevada Supreme Court has held, based on a "plain reading" of Nev. Rev. Stat. §
15  116.3116(2), that the superpriority portion of an HOA's lien consists of "only charges for
16  maintenance and nuisance abatement, and nine months of unpaid assessments."  *Id.*; *see also
17  Bank of Am., N.A. v. Arlington W. Twilight Homeowners Ass'n*, 920 F.3d 620, 623 (9th Cir.
18  2019) (per curiam).  If the HOA's ledger has no maintenance or nuisance abatement charges,
19  a tender of nine months' worth of HOA dues is sufficient.  *Diamond Spur*, 427 P.3d at 118.

20  At the time of tender in 2011, the superpriority portion of an HOA's lien did *not* include
21  collection fees and foreclosure costs.  *Horizons at Seven Hills v. Ikon Holdings*, 373 P.3d 66,
22  72 (Nev. 2016) ("*Ikon*") ("Taking into consideration the legislative intent, the statute's text,
23  and statutory construction principles, we conclude the superpriority lien granted by NRS
24  116.3116(2) does not include an amount for collection fees and foreclosure costs incurred;
25  rather it is limited to an amount equal to the common expense assessments due during the nine
26  months before foreclosure"); *see also* NRED Advisory Op. 13-01 (Dec. 12, 2012) ("The super
27  priority lien based on assessments may not exceed 9 months of assessments as reflected in the
28  association's budget, and it may not include penalties, fees, late charges, fines, or interest.").

James C. Mahan
U.S. District Judge

- 5 -

Reserve assessments are for "the repair, replacement and restoration of the major components of the common elements and any other portion of the common-interest community." Nev. Rev. Stat. § 116.3115(2)(b). The Oak Park HOA levied four reserve assessments of $17.00 from January to April 2010, totaling $68.00. (ECF No. 146-2). SFR says the superpriority portion of the HOA's lien was $525.38—$457.38 in monthly assessments and $68.00 in reserve assessments levied in the nine months prior to the April 2010 notice of delinquent assessment lien. (ECF No. 147 at 9). Therefore, Miles Bauer's tender of $503.10 did *not* cover the full superpriority portion of the HOA's lien and the deed of trust did *not* survive the foreclosure sale. (*Id.*).

Like the court in *Diamond Spur*, SFR begins with Nev. Rev. Stat. § 116.3116(2)(c) as it read in 2011 which defines the superiority portion of the HOA's lien:

> The lien is also prior to all security interests described in paragraph (b) to the extent of any charges incurred by the association on a unit pursuant to NRS 116.310312 **and to the extent of the assessments for common expenses based on the periodic budget adopted by the association pursuant to NRS 116.3115** which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien . . . .

Nev. Rev. Stat. § 116.3116(2)(c) (West 2011) (emphasis added). The statute references Nev. Rev. Stat. § 116.3115 which outlines assessments for common expenses and the funding of adequate reserves:

> 1. Until the association makes an assessment for common expenses, the declarant shall pay all common expenses. After an assessment has been made by the association, assessments must be made at least annually, based on a budget adopted at least annually by the association in accordance with the requirements set forth in NRS 116.31151. Unless the declaration imposes more stringent standards, the budget must include a budget for the daily operation of the association a budget for the reserves required by paragraph (b) of subsection 2.

> 2. Except for assessments under subsections 4 to 7, inclusive:

>> (a) **All common expenses, including the reserves,** must be assessed against all the units in accordance with the allocations set forth in the declaration pursuant to subsections 1 and 2 of NRS 116.2107.

>> (b) The association shall establish adequate reserves, funded on a reasonable basis, for the repair, replacement and restoration of the major components of the common elements and any other portion of the common-interest community that the association is obligated to

James C. Mahan
U.S. District Judge

- 6 -

1

> maintain, repair, replace or restore. The reserves may be used only for those purposes, including, without limitation, repairing, replacing and restoring roofs, roads and sidewalks, and must not be used for daily maintenance.

2

3

4   Nev. Rev. Stat. § 116.3115 (West 2011) (emphasis added).  SFR seizes on a small part of

5   subsection (2)(a)—"[a]ll common expenses, including the reserves, must be assessed against

6   all the units"—to argue that reserve assessments are included in common expenses, and thus,

7   in the superpriority portion. (ECF No. 151 at 4).  It argues that if the Nevada legislature wanted

8   to distinguish reserves from common expenses, it could have done so by stating "all common

9   expenses, *and* any reserves" instead of "*including* the reserves." (ECF No. 154 at 2).

10          SFR's reading of the statute brings too much to bear on an isolated provision.

11   Carrington offers a better reading.  (ECF No. 152 at 4).  The statutory scheme, taken as a

12   whole, distinguishes between common expense assessments and reserve assessments.  HOAs

13   have a "budget for the daily operation of the association"—an operating budget—and a

14   "budget to provide adequate funding for the reserves required by [NRS 116.3116(b))]"—a

15   reserves budget. Nev. Rev. Stat. § 116.31151(1)(a)-(b).  The operating budget is funded by

16   common expense assessments.  The reserve budget is funded by contributions from the

17   operating budget and "the levy of one or more special assessments."  Nev. Rev. Stat. §

18   116.31151(1)(a), (b)(3).  The Oak Park HOA's Rule 30(b)(6) deponent confirmed that the

19   HOA operated in this fashion.  (ECF No. 146-4 at 5–8).

20          In contrast to common expense assessments, reserve assessments "must not be used for

21   daily maintenance," Nev. Rev. Stat. § 116.3115(2)(b), "do not have to be made at least

22   annually," Nev. Rev. Stat. § 115.3115(1), and can only be assessed pursuant to a reserve study.

23   Nev. Rev. Stat. § 116.3115(2)(b).  At bottom, if reserve assessments were included in the

24   common expenses as SFR contends, there would be no need to distinguish between the two in

25   Nev. Rev. Stat. § 116.3115.  That is why the court finds that the $17 reserve assessments at

26   issue were not "common expense assessments" but rather special assessments levied pursuant

27   to Nev. Rev. Stat. § 116.31151(b)(3).  *Ikon*, 373 P.3d at 72.

28

**James C. Mahan**
**U.S. District Judge**

- 7 -

Therefore, the record shows without genuine controversy that Miles Bauer validly tendered more than the full superpriority portion of the HOA's lien. The HOA's ledger, authenticated by custodian of records Susan Moses, shows that for the relevant nine-month period, the HOA's monthly common expense assessment was $50.82 and there were no maintenance or nuisance abatement charges. (ECF No. 146-2; ECF No. 146-3 at 5). At $50.82 per month, nine months of common expense assessments totaled $457.38.

On February 25, 2011, Miles Bauer tendered $503.10 to NAS, stating it "represents the maximum 9 months worth of delinquent assessments recoverable by an HOA." (ECF No. 146-6 at 13). The tender was payment in full. Thus, barring any impermissible conditions attached to the tender, SFR, the buyer at the foreclosure sale, took the property subject to Carrington's deed of trust.

### c. Impermissibly Conditional Tender

"In addition to payment in full, valid tender must be unconditional, or with conditions on which the tendering party has a right to insist." *Diamond Spur*, 427 P.3d at 118. "The only legal conditions which may be attached to a valid tender are either a receipt for full payment or a surrender of the obligation." *Id.* (internal quotation marks omitted).

This court will follow the lead of the Ninth Circuit in *Bank of New York Mellon v. Mira Vista Homeowners Ass'n.*, 817 F. App'x 445, 446–47 (9th Cir. 2020) (unpublished), and other district courts to hold that Miles Bauer's tender was not impermissibly conditional. (ECF No. 151 at 5–6); *see also Bank of New York Mellon v. Sunrise Ridge Master Homeowners Ass'n*, No. 2:17-cv-00233-JAD-DJA, 2020 WL 2064065, at *4 (D. Nev. Apr. 28, 2020) ("Because the Nevada Supreme Court has found that the Miles Bauer form letter used in this case does not invalidate an otherwise proper tender of the superpriority portion of an HOA lien, SFR's arguments that this language was impermissible fail."); *Bank of New York Mellon v. SFR Investments Pool 1, LLC*, No. 2:15-cv-01078-APG-BNW, 2019 WL 6050720, at *4 (D. Nev. Nov. 15, 2019).

In *Mira Vista Homeowners Ass'n*, the Ninth Circuit held that "tender was not impermissibly conditional because it was accompanied by a letter that [ ] incorrectly stated

that the superpriority lien included only nine months of assessments, but not maintenance and nuisance abatement charges." *Mira Vista Homeowners Ass'n.*, 817 F. App'x at 446–47. Even if Mile Bauer's letter misstated the law, "it did not require the HOA to affirm any legal proposition to accept the tender. Instead, it stated that [Carrington's] financial obligations to the HOA would be paid in full—which was a permissible condition." *Id.* (citing *Diamond Spur*, 427 P.3d at 118 and *Arlington West*, 920 F.3d at 623)).

And as in this case, "there were no maintenance or nuisance abatement charges at issue, so the alleged misstatement did not render the tender invalid." *Id.* at 448.  SFR's reliance on *CitiMortgage, Inc. v. Corte Madera Homeowners Association*, 962 F.3d 1103 (9th Cir. 2020) is misplaced because the case "did not involve an actual tender of the superpriority amount" unlike the case at bar.  (ECF No. 153 at 2).

### d.  Futility of Tender

If the Oak Park HOA and its agent had "a known policy of rejecting any payment for less than the full lien amount," Miles Bauer's "obligation to tender the superpriority portion of the lien" would have been excused.  *7510 Perla Del Mar Ave Tr. v. Bank of Am., N.A.*, 458 P.3d 348, 350–51 (Nev. 2020) (en banc).  Because tender here was valid and covered the full superpriority portion of the HOA's lien, the court will not consider if tender was excused.

### e.  Outstanding Claims in SFR's Motion for Summary Judgment

SFR moves for summary judgment on Carrington's purported outstanding unjust enrichment claim.  (ECF No. 147 at 9).  Carrington makes no mention of unjust enrichment in any of its summary judgment papers let alone oppose SFR's motion.  Carrington alleged that "should [it] be successful in quieting title against [SFR] . . . and setting aside the HOA sale, [SFR], the HOA, and HOA Trustee will have been unjustly enriched by the HOA Sale and the usage of the Property." (Am. Compl., ECF No. 37 ¶ 134).  But this court previously dismissed Carrington's unjust enrichment claim because it was pleaded without sufficient factual support.  (ECF No. 91 at 10).  The record does not show that Carrington ever realleged or amended this claim.  Therefore, SFR's motion for summary judgment on Carrington's unjust enrichment claim is denied as moot.

1  SFR also asks the court to expunge Carrington's lis pendens recorded against the

2  property at issue because "Carrington does not state a viable claim for relief to quiet title."

3  (ECF No. 147).  Consistent with the foregoing, SFR's request is denied.

4      **f.   SFR's Motion for Default Judgment**

5  SFR moves for default judgment on its crossclaim against the foreclosed-upon

6  homeowner Samuel Juergens, (ECF No. 148), against whom the clerk has entered default (ECF

7  No. 42).  SFR's motion is granted but only as consistent with the foregoing findings on

8  Carrington's successful tender theory.  *Cf. Sunrise Ridge Master Homeowners Ass'n*, 2020

9  WL 2064065, at *6.

10 **IV.   CONCLUSION**

11  Accordingly,

12  IT IS HEREBY ORDERED, ADJUDGED, and DECREED that SFR's motion for

13  default judgment (ECF No. 148) be, and the same hereby is, GRANTED consistent with the

14  foregoing.

15  IT IS FURTHER ORDERED that Juergens, and any successors and assigns, have no

16  right, title, or interest in the property at issue and that SFR is the rightful title owner of the

17  property at issue consistent with the foregoing findings on Carrington's successful tender

18  theory.

19  IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Carrington's motion

20  for summary judgment (ECF No. 146) be, and the same hereby is, GRANTED and SFR's

21  motion for summary judgment (ECF No. 147) be, and the same hereby is, DENIED.

22  . . .

23  . . .

24  . . .

25  . . .

26  . . .

27  . . .

28  . . .

**James C. Mahan**
**U.S. District Judge**

1    IT IS FURTHER ORDERED that the clerk shall enter judgment in favor of Carrington,

2    declaring that SFR Investment Pool 1 LLC purchased the property at 909 Veranda View

3    Avenue, Las Vegas, NV 89123, Parcel No. 177-15-714-072, subject to Carrington Mortgage

4    Services, LLC's deed of trust, Instrument No. 20081103-0004546, and close this case.

5    IT IS SO ORDERED.

6    DATED December 18, 2020.

7    _____

8    UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

James C. Mahan
U.S. District Judge

- 11 -